**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., §<br>§<br>§<br>*Plaintiff,* §<br>§<br>v. §<br>§<br>OVERHEAD DOOR CORPORATION and §<br>GMI HOLDINGS INC., §<br>§<br>*Defendants.* §<br>§ | Case No. 2:21-cv-84 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff The Chamberlain Group, Inc. ("CGI" or "Plaintiff") files this Complaint for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendants Overhead Door Corporation ("Overhead Door") and GMI Holdings Inc. ("GMI") (collectively, "Defendants") and allege as follows:

**THE PARTIES**

1.      Plaintiff CGI is a corporation incorporated under the laws of the State of Connecticut, with its principal place of business at 300 Windsor Drive, Oak Brook, Illinois 60523.

2.      On information and belief, Defendant Overhead Door is a corporation incorporated under the laws of the State of Indiana, with its principal place of business at 2501 South State Highway 121, Suite 200, Lewisville, Texas 75067.

3.      On information and belief, Defendant GMI, doing business as The Genie Company, Genie Company, and/or Genie, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at One Door Drive, Mount Hope, OH 44660.

## JURISDICTION AND VENUE

4.      This is a civil action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*., including specifically 35 U.S.C. § 271, based on Defendants' willful infringement of U.S. Patent Nos. 8,587,404 ("the '404 patent"), 9,644,416 ("the '416 patent"), 7,852,212 ("the '202 patent"), and 8,144,011 ("the '011 patent") (collectively, "the Asserted Patents"), and inducement thereof and contribution thereto, by the unauthorized manufacture, use, offer for sale, sale, and/or importation of Defendants' infringing products accused herein ("the Accused Products").

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 271, *et seq*., 1331, and 1338.

6.      On information and belief, Defendants are subject to personal jurisdiction in the State of Texas, including the Eastern District of Texas, because they are doing and have done substantial business in this District, including business relating to the sale, distribution, use, installation, and repair of the Accused Products.  Defendants have continuous and systematic business contacts with the State of Texas and, directly or through subsidiaries and intermediaries such as retailers, conduct business in Texas by shipping, distributing, offering for sale, selling, advertising, using, installing, and repairing the Accused Products in the State of Texas, including the Eastern District of Texas.  Defendants, directly or through subsidiaries and intermediaries such as retailers, have purposefully and voluntarily placed the Accused Products into the stream of commerce with the intention and expectation that they will be purchased and used by consumers, including in the Eastern District of Texas.  Therefore, the exercise of jurisdiction over Defendants is appropriate under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b) because, among other reasons, Defendants have a regular and established place of business in this judicial district and have committed acts of infringement in this judicial district.

8.      For example, Overhead Door's principal place of business is located at 2501 South State Highway 121, Suite 200, Lewisville, Texas 75067, which constitutes a regular and established place of business within this judicial district.

9.      Upon information and belief Overhead Door also owns 100% of GMI's stock and GMI operates as a division of Overhead Door with a regular and established place of business in this District at 2501 South State Highway 121, Suite 200, Lewisville, Texas 75067.

10.     Moreover, Overhead Door and GMI have committed acts of infringement in this judicial district, including the sale, offer for sale, use, repair, distribution, and advertising of the Accused Products throughout the Eastern District of Texas.

## FACTUAL BACKGROUND

11.     CGI was founded in 1906 and is a global leader in designing and delivering innovative access control and movable barrier devices, including residential garage door openers, commercial door operators, gate access solutions, home connectivity products, and related accessories.  CGI's products protect most garages in America and are trusted by homeowners and businesses alike.  CGI's products combine the convenience of cutting-edge technology with a grounding in safety, security, connectivity, and reliability.

12.     Among its product offerings, CGI develops, manufactures, and sells the well-known LiftMaster® products, which have been recognized as the number-one brand of professionally installed garage door openers, as well as the acclaimed line of consumer-installed Chamberlain® branded products, which are present in most garages in America.  As an inventive company that is always seeking ways to better serve its customers with additional features and

functionality (in addition to safety and security), CGI also offers its MyQ® technology for remote monitoring and control of the home and business, including garage doors, lights, and gates, both as a retrofit for most major brands of garage door openers and on LiftMaster® and Chamberlain® MyQ®-enabled product lines.

13.     CGI has long been at the forefront of developing new technologies in the access control device market.  For example, as early as 2003—years before the era of smartphones and apps used today—CGI was the first company to invent technology allowing consumers to safely and securely control various entryways to their homes or businesses remotely over a wireless network.  To continually improve its product offerings for its customers and consumers, CGI invests substantial resources in research and development of access control products—including in developing products having new and improved functionality, quality, and security.  Over the years, CGI's pioneering and award-winning technology was the first to empower consumers to view, monitor, open, and close their garage doors when away from home—providing a degree of convenience and peace of mind not offered by any competitor.

14.     CGI's status as an industry leader in technological development is further reflected by the many patents granted to CGI by the United States Patent and Trademark Office ("USPTO"). CGI relies upon its patents to maintain and protect its reputation as the industry leader in access control technology, and to protect its customers and consumers from inferior and/or imitation devices that may suffer from safety, security, or other issues.

## ASSERTED PATENTS

15.     CGI's patents in this field include the '404 patent, which discloses and claims, among other embodiments, a movable barrier system with a moving-barrier imminent motion notification that includes a movable barrier and a movable barrier operator connected to control the movement of the movable barrier between a first position and a second position.

Communications to and within the system may include information to assist the system in determining whether to operate the moving-barrier imminent motion notification in combination with moving the door or to specifically command that the moving-barrier imminent motion notification operate or not.  The communication may include a signal or input separate from, and in addition to, a typical command signal or input to the operator.  The method of communication can provide information to the operator with respect to operation of the moving-barrier imminent motion notification, or a transmitter identifier can provide information with respect to operation of the moving-barrier imminent motion notification.

16.     The '404 patent's inventions provide many new and useful features.  For example, in some barrier operator systems, "[t]he operator or user of the movable barrier system may be located near the door such that delay in the operation of the movable barrier system can result in user frustration because the user will typically expect immediate operation of the movable barrier operator upon actuation by the user."  '404 patent at 1:43-48.  The claimed inventions of the '404 patent include specific technological modifications that provide a technical solution to this and other problems that customers faced when immediate operation of their movable barrier did not occur upon actuation by the user.

17.     In one embodiment that addresses this problem, the '404 patent describes a "movable barrier operator [] configured to receive a transmitter identification code from a transmitter as part of a communication from the transmitter."  *Id*. at 2:31-33.  This exemplary "movable barrier operator is configured to determine whether to move the movable barrier without operating the moving-barrier imminent motion notification based at least in part on the transmitter identification code.  Typically, the movable barrier operator is configured to move the movable barrier in combination with operating the moving-barrier imminent motion notification when the

transmitter identification code indicates that the transmitter is located remotely of the movable barrier." *Id*. at 2:39-47.

18.   The claims of the '404 patent are directed to novel, concrete, and specific technological solutions to technological problems in the prior art.  Moreover, the inventions claimed by the '404 patent improve the functioning of movable barrier systems.

19.   The claims of the '404 patent further recite limitations that, alone or in combination, are directed to inventive concepts that were unconventional and not well-known or routine.  As one non-limiting example, claim 4 recites that "the movable barrier operator [is] configured to determine whether to close the movable barrier without operating the moving-barrier imminent motion notification based at least in part on the transmitter identification code." '404 patent, claim 4.  As described in the patent, the inventive concepts described in claim 4 "reduce[d] user dissatisfaction with the moving barrier imminent motion notification." *Id*. at 1:61-62.  Indeed, the claims require an ordered combination of components operating in a manner that did not exist before, to close a movable barrier without operating the moving-barrier imminent motion notification.  Moreover, the asserted claims each recite an ordered combination of elements that itself was unconventional, not routine, and not well known in the industry.

20.   CGI's patents in this field also include the '416 patent, which discloses and claims, among other embodiments, a barrier operator feature enhancement device that provides one or more features found in modern barrier operator devices and incorporates those features into a previously installed barrier operator system that lacks such features.  To facilitate ease of use, the barrier operator feature enhancement device can communicate with a large variety of barrier operators.  Such communication may be wireless or wired, depending on the communication protocol implemented by a particular previously installed barrier operator.  To facilitate the ease

of installation, the device may be designed to configure itself to operate with the communication protocol of the previously installed barrier operator.  Once configured to be able to communicate with the previously installed barrier operator, the feature enhancement device works with the barrier operator to provide one or more additional features to enhance the capabilities of the previously installed barrier operator.

21.     The '416 patent's inventions provide many new and useful features.  For example, in some barrier operator systems, in order "[to] have access to features [including various safety features, lighting options, and network communication options such as remote operation of the barrier operator,] . . . typically a completely new barrier operator with a new motor and connection equipment must be purchased and installed for a user to have access to the new features."  '416 patent at 1:39-50.  The claimed inventions of the '416 patent include specific technological modifications that solved the problems customers faced when they wanted to incorporate new features found in modern barrier operator into their previously installed barrier operator systems.

22.     In one embodiment that addresses the technological problems in the prior art, the '416 patent describes a "feature enhancement device, [which] is designed to, in one approach, step through a variety of communication protocols and to receive feedback information from either the barrier operator or another device to indicate that the previously installed barrier operator performed an action in response to receipt of a communication from the feature enhancement device.  Based on that feedback, the feature enhancement device configures itself to operate going forward with the communication protocol that elicited the response from the previously installed barrier operator."  *Id*. at 1:58-2:9.  Once configured to be able to communicate with the previously installed barrier operator, this embodiment of the feature enhancement device works with the

barrier operator to provide one or more additional features to enhance the capabilities of the previously installed barrier operator.  *Id*. at 2:10-14.

23.     The claims of the '416 patent are directed to novel, concrete, and specific technological solutions to technological problems in the prior art.  Moreover, the inventions claimed by the '416 patent improve the functioning of movable barrier systems.

24.     The claims of the '416 patent further recite limitations that, alone or in combination, are directed to inventive concepts that were unconventional and not well-known or routine.  As one non-limiting example, claim 1 recites "a communication module configured to communicate with a communication module configured to communicate with a pre-installed barrier operator," "control circuitry configured to use the communication module to communicate with the pre-installed barrier operator," and "the control circuitry configured to use the barrier operator communication module to communicate to the pre-installed barrier operator."  '416 patent, claim 1.  As the patent describes, "[g]enerally speaking, sending a communication to a pre-installed barrier operator 100 to control operation can be considered effecting a change in function of the barrier operator 100."  *Id*. at 5:29-32.  Indeed, the claimed invention of the '416 patent achieved a technological solution to a technological problem specific to barrier operator systems.  Moreover, the asserted claims each recite an ordered combination of elements that itself was unconventional, not routine, and not well known in the industry.

25.     CGI's patents in this field also include the '212 and '011 patents (collectively, the "Alarm System Patents"), which disclose and claim, among other embodiments, connecting a movable barrier, *e.g.*, a garage door opener, to a home or business alarm or automation system to carry out a number of functions.  The Alarm System Patents' inventions provide many new and useful features.  For example, the technology of the Alarm System Patents makes it possible to

access the functionality of an alarm security system without illicit interference from unauthorized individuals, and expands the security system's capabilities to include monitoring and controlling a garage door opener.  The technology of the Alarm System Patents thus provides a material improvement to the real-world safety and security of users' homes and businesses.

26.     The claims of the Alarm System Patents are directed to novel, concrete, and specific technological solutions to technological problems in the prior art.  Moreover, the inventions claimed by the Alarm System Patents improve the functioning of movable barrier systems.

27.     The claims of the Alarm System Patents further recite limitations that, alone or in combination, are directed to inventive concepts that were unconventional and not well-known or routine.  As one non-limiting example, claim 1 of the '011 patent recites "a secure encrypted communication link interface operatively connected between the movable barrier operator and a peripheral alarm system."  This is one non-limiting example of how the '011 patent solves the problem in the prior art of "increasing the likelihood that an unauthorized individual may be able to take advantage of the necessarily expanded communication link(s)."  '011 patent at 1:63-2:2; '212 patent at 1:62-2:1. Moreover, the asserted claims each recite an ordered combination of elements that itself was unconventional, not routine, and not well known in the industry.

## DEFENDANTS' INFRINGING ACTIVITIES

28.     On information and belief, Defendants make, use, sell, offer for sale, and/or import at least the following Accused Products that infringe the Asserted Patents.  The Genie 7155 TKV and Overhead Door Destiny 1500 products are representative of Defendants' accused barrier openers, and the Aladdin Connect and Overhead Door Anywhere Wall Controller and Door Sensor Kit are representative of Defendants' accused non-integrated connectivity modules.

29.     The Accused Products are being offered for sale by Defendants and their affiliates nationwide, including in the State of Texas and this judicial district.  Continued sales of the

Accused Products will further damage CGI's hard-earned position and good reputation in the marketplace and irreparably harm CGI in other ways.

30.     Defendants' actions have caused CGI harm, and will cause further harm to CGI if they continue.  In addition, Defendants' knowing acts of infringement will frustrate CGI's ongoing strong business relationships, contracts, and potential contracts, with resulting lost sales and profits, and otherwise are causing or will cause substantial harm to CGI's business.

31.     As a result of Defendants' actions, CGI was forced to file this lawsuit to protect its patented innovations and its reputation as the leader in the access control industry.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,587,404

32.     CGI incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

33.     On November 19, 2013, the USPTO duly and legally issued the '404 patent, entitled "Movable Barrier Operator and Transmitter with Imminent Barrier Moving Notification," to inventor Edward T. Laird.  A true and correct copy of the '404 patent is attached as Exhibit A.

34.     CGI is the owner, by assignment, of all rights, title, and interest in the '404 patent, including the right to recover damages for past infringement.

35.     Defendants have infringed and continue to infringe the '404 patent under 35 U.S.C. § 271(a) in this District and throughout the United States by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, which practice one or more of the claims of the '404 patent.  The Accused Products satisfy each limitation of at least independent claim 4. For example, attached to the Complaint as Exhibit A1 is a representative chart that demonstrates how the Accused Products satisfy each limitation of independent claim 4. At the very least, on information and belief, Defendants are on notice that they could reasonably expect that discovery will reveal their liability for the infringement alleged.

36.     On information and belief, Defendants have induced and continue to induce infringement of one or more claims of the '404 patent under 35 U.S.C. § 271(b).  On information and belief, Defendants actively, knowingly, and intentionally induce, and will continue to actively, knowingly, and intentionally induce, infringement of the '404 patent by selling or otherwise supplying the Accused Products with the knowledge and intent that third parties will use the Accused Products to infringe the '404 patent, and with the knowledge and intent to encourage and facilitate third-party infringement through the importation and/or dissemination of the Accused Products and the creation or dissemination, through their websites and other sources, of promotional materials, instructions, product manuals, and/or technical information related to the Accused Products.

37.     On information and belief, Defendants have contributorily infringed, and continue to contributorily infringe, one or more claims of the '404 patent under 35 U.S.C. § 271(c).  On information and belief, Defendants have sold or offered to sell within the United States or imported into the United States the Accused Products, and Defendants continue to offer to sell or sell within the United States or import into the United States the Accused Products with the knowledge that the Accused Products are especially made or especially adapted for use in an infringement of the '404 patent.  On information and belief, the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

38.     On information and belief, Defendants are aware and specifically intend that the ordinary and customary use of the Accused Products infringes the '404 patent.  Defendants provide customers and other third parties with product manuals, technical information, and instructions that cause such customers and third parties to operate the Accused Products according to their ordinary and customary use.  On information and belief, Defendants' customers and other third

parties directly infringe the '404 patent through the normal and customary use of the Accused Products.

39.     As a result of Defendants' infringement of the '404 patent, CGI has suffered and will continue to suffer damages.  CGI is entitled to recover from Defendant the damages adequate to compensate for such infringement, in an amount to be determined at trial.

40.     Defendants' acts of infringement of the '404 patent herein have been committed and are being committed with full knowledge of CGI's rights in the patent.  On information and belief, Defendants monitor CGI's patent portfolio and have acted and are continuing to act despite an objectively high likelihood that their actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing of this Complaint.  Defendants' acts constitute willful and deliberate infringement, entitling CGI to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

41.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to CGI, for which there is no adequate remedy at law, entitling CGI to injunctive relief.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,644,416

42.     CGI incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

43.     On May 9, 2017, the USPTO duly and legally issued the '416 patent, entitled "Barrier Operator Feature Enhancement," to inventors James J. Fitzgibbon and Robert R. Keller, Jr.  A true and correct copy of the '416 patent is attached as Exhibit B.

44.     CGI is the owner, by assignment, of all rights, title and interest in the '416 patent, including the right to recover damages for past infringement.

45.     Defendants have infringed and continue to infringe the '416 patent in this District and throughout the United States under 35 U.S.C. § 271(a) by making, using, importing, offering

for sale, and/or selling one or more of the Accused Products, which practice one or more of the claims of the '416 patent.  The Accused Products satisfy each limitation of at least independent claim 1.  For example, attached to the Complaint as Exhibit B1 is a representative chart that demonstrates how the Accused Products satisfy each limitation of independent claim 1.  At the very least, on information and belief, Defendants are on notice that they could reasonably expect that discovery will reveal their liability for the alleged infringement.

46.    On information and belief, Defendants have induced and continue to induce infringement of one or more claims of the '416 patent under 35 U.S.C. § 271(b).  On information and belief, Defendants actively, knowingly, and intentionally induce, and will continue to actively, knowingly, and intentionally induce infringement of the '416 patent by selling or otherwise supplying the Accused Products with the knowledge and intent that third parties will use the Accused Products to infringe the '416 patent, and with the knowledge and intent to encourage and facilitate third-party infringement through the importation and/or dissemination of the Accused Products and the creation or dissemination, through their websites and other sources, of promotional materials, instructions, product manuals, and/or technical information related to the Accused Products.

47.    On information and belief, Defendants have contributorily infringed, and continue to contributorily infringe, one or more claims of the '416 patent under 35 U.S.C. § 271(c).  On information and belief, Defendants have sold or offered to sell within the United States or imported into the United States the Accused Products, and Defendants continue to offer to sell or sell within the United States or import into the United States the Accused Products with the knowledge that the Accused Products are especially made or especially adapted for use in an infringement of the

'416 patent.  On information and belief, the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

48.     On information and belief, Defendants are aware and specifically intend that the ordinary and customary use of the Accused Products infringe the '416 patent.  Defendants provide customers and other third parties with product manuals, technical information, and instructions that cause such customers and third parties to operate the Accused Products according to their ordinary and customary use.  On information and belief, Defendants' customers and other third parties directly infringe the '416 patent through the normal and customary use of the Accused Products.

49.     As a result of Defendants' infringement of the '416 patent, CGI has suffered and will continue to suffer damages.  CGI is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

50.     Defendants' acts of infringement of the '416 patent herein have been committed and are being committed with full knowledge of CGI's rights in the patent.  On information and belief, Defendants monitor CGI's patent portfolio and have acted and are continuing to act despite an objectively high likelihood that their actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing of this Complaint.  Defendants' acts constitute willful and deliberate infringement, entitling CGI to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs

51.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to CGI, for which there is no adequate remedy at law, entitling CGI to injunctive relief.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,852,212

52.     CGI incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

53.    On December 14, 2010, the USPTO duly and legally issued the '212 patent, entitled "Alarm System Interaction with a Movable Barrier Operator Method and Apparatus," to inventor James Joseph Fitzgibbon.  A true and correct copy of the '212 patent is attached as Exhibit C.

54.    CGI is the owner, by assignment, of all rights, title, and interest in the '212 patent, including the right to recover damages for past infringement.

55.    Defendants have infringed and continue to infringe the '212 patent under 35 U.S.C. § 271(a) in this District and throughout the United States by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, which practice one or more of the claims of the '212 patent.  The Accused Products satisfy each limitation of at least independent claim 1. For example, attached to the Complaint as Exhibit C1 is a representative chart that demonstrates how the Accused Products satisfy each limitation of independent claim 1.  At the very least, on information and belief, Defendants are on notice that they could reasonably expect that discovery will reveal their liability for the infringement alleged.

56.    On information and belief, Defendants have induced and continue to induce infringement of one or more claims of the '212 patent under 35 U.S.C. § 271(b).  On information and belief, Defendants actively, knowingly, and intentionally induce, and will continue to actively, knowingly, and intentionally induce, infringement of the '212 patent by selling or otherwise supplying the Accused Products with the knowledge and intent that third parties will use the Accused Products to infringe the '212 patent, and with the knowledge and intent to encourage and facilitate third-party infringement through the importation and/or dissemination of the Accused Products and the creation or dissemination, through their websites and other sources, of promotional materials, instructions, product manuals, and/or technical information related to the Accused Products.

57.     On information and belief, Defendants have contributorily infringed, and continue to contributorily infringe, one or more claims of the '212 patent under 35 U.S.C. § 271(c).  On information and belief, Defendants have sold or offered to sell within the United States or imported into the United States the Accused Products, and Defendants continue to offer to sell or sell within the United States or import into the United States the Accused Products with the knowledge that the Accused Products are especially made or especially adapted for use in an infringement of the '212 patent.  On information and belief, the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

58.     On information and belief, Defendants are aware and specifically intend that the ordinary and customary use of the Accused Products infringes the '212 patent.  Defendants provide customers and other third parties with product manuals, technical information, and instructions that cause such customers and third parties to operate the Accused Products according to their ordinary and customary use.  On information and belief, Defendants' customers and other third parties directly infringe the '212 patent through the normal and customary use of the Accused Products.

59.     As a result of Defendants' infringement of the '212 patent, CGI has suffered and will continue to suffer damages.  CGI is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

60.     Defendants' acts of infringement of the '212 patent herein have been committed and are being committed with full knowledge of CGI's rights in the patent.  On information and belief, Defendants monitor CGI's patent portfolio and have acted and are continuing to act despite an objectively high likelihood that their actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing

of this Complaint.  Defendants' acts constitute willful and deliberate infringement, entitling CGI to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

61.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to CGI, for which there is no adequate remedy at law, entitling CGI to injunctive relief.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,144,011

62.     CGI incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

63.     On March 27, 2012, the USPTO duly and legally issued the '011 patent, entitled "Alarm System Interaction with a Movable Barrier Operator Method and Apparatus," to inventor James Joseph Fitzgibbon.  A true and correct copy of the '011 patent is attached as Exhibit D.

64.     CGI is the owner, by assignment, of all rights, title, and interest in the '011 patent, including the right to recover damages for past infringement.

65.     Defendants have infringed and continue to infringe the '011 patent under 35 U.S.C. § 271(a) in this District and throughout the United States by making, using, importing, offering for sale, and/or selling one or more of the Accused Products, which practice one or more of the claims of the '011 patent.  The Accused Products satisfy each limitation of at least independent claim 1. For example, attached to the Complaint as Exhibit D1 is a representative chart that demonstrates how the Accused Products satisfy each limitation of independent claim 1.  At the very least, Defendants are on notice that they could reasonably expect that discovery will reveal their liability for the infringement alleged.

66.     On information and belief, Defendants have induced and continue to induce infringement of one or more claims of the '011 patent under 35 U.S.C. § 271(b).  On information and belief, Defendants actively, knowingly, and intentionally induce, and will continue to actively, knowingly, and intentionally induce, infringement of the '011 patent by selling or otherwise

supplying the Accused Products with the knowledge and intent that third parties will use the Accused Products to infringe the '011 patent, and with the knowledge and intent to encourage and facilitate third-party infringement through the importation and/or dissemination of the Accused Products and the creation or dissemination, through their websites and other sources, of promotional materials, instructions, product manuals, and/or technical information related to the Accused Products.

67.    On information and belief, Defendants have contributorily infringed, and continue to contributorily infringe, one or more claims of the '011 patent under 35 U.S.C. § 271(c).  On information and belief, Defendants have sold or offered to sell within the United States or imported into the United States the Accused Products, and Defendants continue to offer to sell or sell within the United States or import into the United States the Accused Products with the knowledge that the Accused Products are especially made or especially adapted for use in an infringement of the '011 patent.  On information and belief, the Accused Products are not a staple article or commodity of commerce suitable for substantial noninfringing use.

68.    On information and belief, Defendants are aware and specifically intend that the ordinary and customary use of the Accused Products infringes the '011 patent.  Defendants provide customers and other third parties with product manuals, technical information, and instructions that cause such customers and third parties to operate the Accused Products according to their ordinary and customary use.  On information and belief, Defendants' customers and other third parties directly infringe the '011 patent through the normal and customary use of the Accused Products.

69.     As a result of Defendants' infringement of the '011 patent, CGI has suffered and will continue to suffer damages.  CGI is entitled to recover from Defendants the damages adequate to compensate for such infringement, in an amount to be determined at trial.

70.     Defendants' acts of infringement of the '011 patent herein have been committed and are being committed with full knowledge of CGI's rights in the patent.  On information and belief, Defendants monitor CGI's patent portfolio and have acted and are continuing to act despite an objectively high likelihood that their actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing of this Complaint. Defendants' acts constitute willful and deliberate infringement, entitling CGI to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

71.     Defendants' acts of infringement have caused and will continue to cause irreparable harm to CGI, for which there is no adequate remedy at law, entitling CGI to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, CGI prays that this Court enter judgment and provide relief as follows:

A.     That Defendants have infringed and are infringing the Asserted Patents;

B.     That Defendants have induced, and are inducing, infringement of the Asserted Patents;

C.     That Defendants have contributed to, and are contributing to, infringement of the Asserted Patents;

D.     That Defendants have willfully infringed, and are willfully infringing, the Asserted Patents;

E.     That the Asserted Patents are valid and enforceable;

F.     That Defendants, their officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns, be

permanently enjoined from infringement of the Asserted Patents, including but not limited to an injunction against making, using, offering to sell, and selling within the United States, and importing, and importing into the United States, any products covered by the Asserted Patents;

G.    For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

H.    That Defendants be ordered to account for and pay to CGI the damages resulting from Defendants' infringement of the Asserted Patents, including lost profits, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

I.    That this action be adjudged an exceptional case and CGI be awarded its attorneys' fees, expenses, and costs in this action pursuant to 35 U.S.C. § 285; and

J.    That CGI be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## **JURY DEMAND**

CGI demands trial by jury on all issues so triable.

Date: March 10, 2021

Respectfully submitted,

**WINSTON & STRAWN LLP**

/s/ *Michael R. Rueckheim*
Katherine Vidal
(*Pro hac vice* to be filed)
KVidal@winston.com
Michael R. Rueckheim
(Texas State Bar No. 24081129)
MRuekheim@winston.com
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6559