**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC<br><br>　　　　　Plaintiff,<br>v.<br><br>OVERHEAD DOOR CORPORATION and<br>GMI HOLDINGS INC.,<br><br>　　　　　Defendants. | Case No. 2:21-cv-0084-JRG<br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY JURY INSTRUCTIONS[1][2]**

### I.    DUTY OF JURY

Ladies and Gentlemen, you have been sworn as the jurors in this case.  As the jury, you are the sole judges of the facts.  You will decide and determine what all the facts are in this case.  As the judge, I will give you instructions on the law.  I will decide questions of law that arise during the trial.  I am responsible for managing the flow of the trial and maintaining the decorum of the courtroom.

After the all of the evidence has been presented, I will give you detailed instructions about the law to apply in deciding this case and I will give you a list of questions that you are then to answer.  As I told you, this list of questions is called the verdict form.  Your answer to those

---

[1]　　Unless otherwise noted, instructions are adapted from *Optis Wireless Tech. LLC, et al. v. Apple Inc.*, 2:19-cv-0066-JRG, Trial Tr. at 174-205 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020).

[2]　　Competing proposals are included in brackets with proposals by Chamberlain highlighted in yellow and proposals by Overhead Door highlighted in green.  Portions to which both parties agree are not highlighted.

questions will need to be unanimous and those unanimous answers will constitute the verdict in this case.

## II.    PATENT LAW OVERVIEW

Before the parties present their case, I will briefly tell you what this case is about.  As you know, it involves a dispute regarding certain United States patents.  I know that each of you saw the video this morning produced by the Federal Judicial Center, but I need to give you some instructions on the record about a patent and how one is obtained.

Patents are granted or denied by the United States Patent and Trademark Office, often referred to, for short, simply as the USPTO or PTO.  A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application is filed to seek money damages from others making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.

A patent is a form of property called intellectual property.  Like other forms of property, a patent can be bought or sold.  A violation of a patent holder's rights is called "infringement."  A patent holder may enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court, and that is what we have in the case before us.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the United States Patent and Trademark Office.  The PTO is an agency of the United States government that employs trained examiners who review patents or patent applications.  The patent application includes what is called a "specification."  The specification within a patent application contains a written description of what the claimed invention is, how it works, how to make it, and how to use it.  The specification concludes, or ends, with one or more numbered sentences.  These numbered sentences are called patent "claims."

2

When a patent is granted by the PTO, it is the claims that determine what the patent covers. The claims define the boundaries of its protection and give notice to the public of those boundaries. Patent claims exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It is not necessary to look at any other claim to determine what an independent claim covers. On the other hand, a dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements or limitations of the claim from which it depends, as well as the additional limitations recited within the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim itself and the claim or claims from which it refers or from which it depends.

The claims of the patents-in-suit use the word "comprising." Comprising means including or containing. A claim that includes the word comprising is not limited to the methods or devices having only the elements that are recited in the claim but also covers other methods or devices that add additional elements. Let me give you an example. If you take, for example, a claim that covers a table, the claim recites a table comprising a tabletop, four legs, and glue. That claim will cover any table that contains a tabletop, four legs, and glue even if it contains other structures such as wheels that go on the end of the legs or leaves that go in the tabletop. Now, that is a simple example using the word comprising and what it means. In other words, it can have other features in addition to those that are covered by the patent.

After an applicant files an application with the PTO, an examiner is assigned by the PTO and that examiner reviews the application to determine whether or not the claims are patentable. That is to say, whether the claims are appropriate for patent protection and whether the specification adequately describes the invention that is claimed. In examining a patent application,

3

the examiner reviews certain information about the state of the technology — or state of the art — at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or that was submitted with the application. This type of information is called prior art.

The examiner reviews this prior art to determine whether the invention is truly an advance over the state of the art at the time. Prior art is defined by law and, at a later time, I will give you specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed. A patent contains a certain list of prior art that the examiner has considered. The items on this list of prior art, which the examiner has considered, are called cited references.

After the prior art search and an examination of the application, the PTO examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable, and thus, it would be allowed. This writing from the examiner to the applicant is called an Office Action. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has the chance to change or amend the claims or to submit new claims. The papers generated during these communications back and forth between the applicant and the examiner are called the prosecution history.

This prosecution history process may go back and forth between the applicant and the examiner for some time until the examiner is ultimately satisfied that the application meets the requirements for a patent. In that case, the patent is issued as a United States patent, or in the alternative, if the examiner ultimately concludes that the application should be rejected, then no

4

patent is issued.  Sometimes patents are issued after appeals within the Patent and Trademark Office or to a court.

An issued United States patent is presumed to be valid under the law.  That being said, a person accused of infringement has the right to argue in federal court that a claimed invention in a patent is invalid.

It is your job as the jury to consider the evidence presented by the parties and to determine whether the Defendants have proven that any patent is invalid.

## III.    CASE OVERVIEW

To help you follow the evidence, I will give you a brief summary of the positions of the parties.  As you know, the party that brings a lawsuit is called the Plaintiff.  The Plaintiff in this case is The Chamberlain Group, LLC.  You will hear the Plaintiff referred to simply as Chamberlain or the Plaintiff throughout the trial.  The parties against whom a lawsuit is filed are called the Defendants.  The Defendants in this case are Overhead Door Corporation and GMI Holdings Inc.  You will hear the Defendants referred to simply as Overhead Door or the Defendants.

As I mentioned to you during jury selection earlier today, this is a case of alleged patent infringement.  There are four separate United States patents that have been asserted by Chamberlain in this case against Overhead Door.

- The first patent at issue in this case is U.S. Patent No. 8,587,404.  As you may know, patents are commonly referred to by the last three digits of the patent number.  So this particular patent will be referred to as the '404 patent.

- The second patent at issue in this case is U.S. Patent No. 9,644,416, referred to as the '416 patent.

5

- The third U.S. patent at issue in this case is U.S. Patent No. 7,852,212, referred to as the '212 patent.

- The fourth U.S. patent at issue in this case is U.S. Patent No. 8,144,011, referred to as the '011 patent.

You will hear these four patents referred to collectively at various times throughout the trial as the patents-in-suit or asserted patents. Both of these things mean the same thing — that is, the four patents that I have just identified for you. Chamberlain claims that all four of these patents-in-suit generally relate to garage door operator technologies.

Chamberlain, contends that Overhead Door infringes certain claims of the patents-in-suit by making, using, importing, selling, or offering to sell in the United States certain (i) integrated Wi-Fi garage door operators (also called iDCM products); and (ii) retrofit kits (also called eDCM products), which allow a user to convert a traditional non-Wi-Fi garage door operator into a Wi-Fi enabled operator. The claims that Chamberlain accuses Overhead Door of infringing are called the asserted claims. Chamberlain further contents that Overhead Door willfully infringed these patent claims and induced infringement by others. As a result, Chamberlain contends that it is entitled to money damages as a result of that infringement.

Overhead Door denies that its accused products have infringed the asserted claims of the patents-in-suit. In other words, Overhead Door contends that it did not make, use, sell, or offer for sale within the United States, or import into the United States, any products that infringe any of the asserted claims of the patents-in-suit. Overhead Door denies that it has willfully infringed the patents-in-suit or that it has induced infringement. Overhead Door also denies that Chamberlain is entitled to any damages.

6

Overhead Door also contends that the asserted claims of the patents-in-suit are invalid because they are either anticipated or obvious in the light of prior art. Overhead Door also contends that the asserted claims of the patents-in-suit are invalid because the patent specifications do not contain a sufficient written description of the invention.

Finally, Overhead Door contends that, to the extent that any of the asserted claims are found to be valid and infringed, any damages awarded to Chamberlain should be limited because Chamberlain failed to provide Overhead Door with sufficient notice of the patents-in-suit required under the patent laws of the United States.

I know that there are lots of new words and concepts that have been thrown at you since you arrived for jury duty this morning. I am going to define a lot of those words and concepts for you as we go through these instructions. The attorneys are going to discuss them in their opening statements. And the witnesses are going to help you by going through their testimony to help understand these words and concepts. So please, do not feel overwhelmed at this stage. It will all come together as we go through the trial, I promise.

## IV.    <u>DUTIES</u>

One of your jobs in this case is to decide whether Chamberlain has proven that the asserted claims of the patents-in-suit have been infringed and whether Overhead Door has proven them to be invalid. If you decide that any claim of the patents-in-suit has been infringed by Overhead Door and is not invalid, then you will need to decide whether that infringement was willful and what amount of money damages should be awarded to Chamberlain as compensation for that infringement that you have found. My job in this case is to tell you what the law is, handle the rulings on evidence and procedure, and to oversee the trial effectively and efficiently. It is specifically my job to determine the meaning of any claim language from within the patents-in-suit that needs interpretation.

I have already determined the meanings of the claims of the patents-in-suit, and you must accept those meanings that I give you, which the lawyers sometimes call "constructions." You must use those meanings when you decide whether any particular claim has or has not been infringed and whether you decide any particular claim is or is not invalid. You will be given a document in a moment that reflects these meanings that I have already decided. For any claim term for which I have not provided you with a specific definition, you should apply the plain and ordinary meaning of the term. If, however, I provided you with a specific definition, you are to apply my definition to those terms throughout the case. However, my interpretation of the language of the claims should not be taken by you as an indication that I have a personal opinion or any opinion regarding issues such as infringement and invalidity. Those are your issues alone to decide.

I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and reach your verdict. In deciding the issues that are before you, you will be asked to consider specific legal rules, and I will give you an overview of those rules now. Then, at the conclusion of the case, I will give you much more detailed instructions.

## V.    <u>OVERVIEW OF ALLEGATIONS</u>

The first issue that you are asked to decide is whether the Overhead Door has infringed any of the asserted claims of the patents-in-suit. Infringement is assessed on a claim-by-claim basis. Since infringement is assessed on a claim-by-claim basis, there may be infringement as to one claim but no infringement as to another claim. The Plaintiff, Chamberlain, must show by a preponderance of the evidence that a claim has been infringed. A preponderance of the evidence means that the evidence persuades you that a fact is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. There are a few different ways that a patent can be infringed, and I will explain the requirements for each of these

types of infringement to you in detail at the conclusion of the case. But, in general, a defendant may infringe the asserted patent by making, using, or selling or offering for sale in the United States or importing into the United States a product meeting all the elements or requirements of a claim of the asserted patent.

The second issue that you will be asked to decide is whether any of the patents-in-suit are invalid. Invalidity is a defense to infringement. Therefore, even though the United States Patent and Trademark Office, or PTO, has allowed the asserted claims and even though a United States patent as issued by the PTO is presumed to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented during the trial of this case. Overhead Door must show by clear and convincing evidence that a claim is invalid. This is a higher standard than the preponderance of the evidence standard. To meet the clear and convincing evidence burden of proof, you must be left with an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

These two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence.

[To be entitled to patent protection an invention must be new, useful, and nonobvious. As I noted, a patent gives its owner the right to exclude other people from making, using, selling or offering for sale what is covered by the patent. Everyone, however, has the right to use existing knowledge and principles. A patent cannot legally take away from people their right to use what

9

was known or obvious from what was known before the invention was made.  Thus, a patent will not be valid if it deprives people of the right to use old or known products or processes, or products or processes that would have been obvious.  That which is already known is called the "prior art."  You will hear about the prior art relating to the asserted patents during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.][3] [4]

You may find a patent claim to be invalid for a number of reasons, including because it claims subject matter that is not patent eligible, it is not new, or it is obvious.  For a patent claim to be invalid because it is not new, Overhead Door must show that all of the elements of a claim are sufficiently described in a single item of prior art.  If a claim is not new, it is said to be anticipated by the prior art.  Another way that a claim can be found to be invalid is that it may have been obvious. Even though a claim is not anticipated because every element of a claim is not shown or sufficiently described in a single piece of prior art, the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant

---

[3]      Chamberlain objects to this language as cumulative of the discussion of invalidity in the paragraph immediately following and in Section II (Patent Law Overview), *supra* at 3-4.  Overhead Door is incorrect in its statement below that there is no Patent Law Overview section in these preliminary instructions.

Overemphasis and cumulative instructions related to the requirements for patenting is unduly prejudicial to Chamberlain.  Indeed, the model jury instructions from which Overhead Door obtained this instruction includes this paragraph in the section entitled "The Patent System, Generally," and not in the overview of allegations.

[4]      Overhead Door's proposal follows the ABA Model Patent Jury instructions.  *See* https://www.ded.uscourts.gov/sites/ded/files/chambers/ABAModelPatentJuryInstructions.pdf,  at 5.  The language is not duplicative of the following paragraph and provides helpful context for a jury to understand the conditions for patentability before getting into the specific requirements for anticipation, obviousness, and written description.  While Chamberlain notes that this language is found in the "Patent Law Overview" section of the ABA Model Patent Jury instructions, the parties did not include substantive discussion of invalidity in a separate patent law overview section in these preliminary instructions, so said instructions appropriately belong in the Overview of Allegations section, which also contains descriptions of the other relevant patent law concepts.

time.  You will need to consider a number of questions when deciding whether the inventions claimed in the patents-in-suit are obvious, and I will provide you with more detailed instructions on these questions at the conclusion of the trial.

Another way that a claim can be found to be invalid is that there may have been a lack of an adequate written description.  A patent may be invalid if its specification does not describe the claimed invention in sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the invention they are claiming.

If you decide that any claim of a patent has been infringed and is not invalid, you will need to decide whether the infringement of that claim by Overhead Door was willful.  I will explain the legal requirements in detail at the conclusion of the trial but, in short, infringement is willful if it was deliberate or intentional.

If you decide that any claim of a patent has been infringed and is not invalid, you will also need to decide what amount of money damages should be awarded to Chamberlain.  A damages award must be adequate to compensate the patent holder for the infringement.  This could be measured based on Chamberlain's lost profits or what Chamberlain would have received had it been paid a reasonable royalty.  Lost profits means any profits that Chamberlain would have made but for the infringing activities.  Reasonable royalty means what two reasonable people — in this case, the patent holder Chamberlain and the alleged infringer Overhead Door — would have negotiated for a license to the patents.  The damages you award, if any, are meant to compensate the patent holder, and are not meant to punish Overhead Door.  Additionally, damages cannot be speculative, and Chamberlain must prove what profits it lost or what two reasonable people would have negotiated by a preponderance of the evidence.

11

I will give you more detailed instructions on the calculation of damages at the conclusion of the case. However, please be aware that the fact I am instructing you on damages does not mean that Chamberlain is or is not entitled to recover damages.

## VI.    WITNESS TESTIMONY

Throughout the trial, you are going to be hearing from a number of different witnesses in this case, and I want you to keep an open mind while you are listening to the evidence and not decide any of the facts until you have heard all of the evidence. While the witnesses are testifying, remember that you will have to decide the degree of credibility and believability to allocate to the witness and to the evidence. So, while the witnesses are testifying, you should be asking yourselves things like this: Does the witness impress you as being truthful? Does he or she have a reason not to tell the truth? Does he or she have any personal interest in the outcome of the case? Does the witness seem to have a good memory? Did he or she have the opportunity and ability to observe accurately the things that they testified about? Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness's testimony differ from the testimony of any other witnesses? And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you are listening to each and every witness in this trial. I also want to talk to you briefly, ladies and gentlemen, about expert witnesses.

When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field — we call them an expert witness — is permitted to testify to you about his or her opinions on those technical matters. However, you are not required to accept an expert opinion or an expert witness or any other witness's opinions at all. It is up to you to decide whether an expert witness is correct or incorrect or whether or not you believe what they say. It is also up to you to determine whether or not any other witness in the

12

case is correct or incorrect or whether you believe what they have to say. Those kinds of decisions, judging the credibility and believability of each and every witness in the case, are particularly within your area of responsibility as the jury.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight. Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

During the course of the trial, it is possible that there will be testimony from one or more witnesses that are going to be presented to you through what we call a deposition. In trials such as this, it is tough to get every witness here in person at the same time. So prior to the trial, lawyers take the depositions of the witnesses. In the deposition, a court reporter is present, the witness is present and sworn and placed under oath, just as if he or she were in open court, and the lawyers ask those witnesses questions, and those questions and the answers are recorded and taken down. Portions of those questions and answers — often as video recordings — may be played back to you, the jury, as a part of this trial so you can see that witness and hear that testimony even though they are not physically present in the courtroom.

That deposition testimony is entitled to the same consideration, insofar as possible, and is to be judged as to the credibility, weight, and otherwise considered by you, the jury, in the same way as if the witness had been present and given that testimony in person from the witness stand in open court.

## VII.    **EXHIBITS & OBJECTIONS**

During the trial of the case, it is possible that the lawyers will make objections. If they do, I will give rulings on those objections. It is the duty of an attorney for each side of the case to

object when the other side offers testimony or other evidence that the attorney believes is not proper under the orders of the Court or the Rules of Evidence or Procedure.

Upon allowing the testimony or other evidence to be introduced over the objection of an attorney, I do not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence.  As I have said before, you, the jury, are the sole judges of the credibility and believability of all the witnesses and the weight and what effect to give to all the evidence.

If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if I had allowed them to answer the question.  On the other hand, if I overrule an objection addressed to a question to a witness, then you should consider the question and the witness's answer just as if no objection had ever been made.

You should know, that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in a case, but those comments from the judge may be disregarded by the jury in their entirety because, as I have told you, it is the jury that is the sole judges of the facts in the case, the credibility of the witnesses, and the amount of weight you want to give to each witness's testimony.

## VIII.   <u>JURY NOTEBOOKS</u>

In a moment, each of you are going to be given a juror notebook, and in the back of that notebook, you're going to find a legal pad that you can use to take notes on if you choose to throughout the course of the trial.  It will be up to each of you to decide whether you want to take notes about the witnesses or anything else regarding the trial and how detailed you want those notes to be if you decide to take notes.  Remember, those notes are for your own personal use. You still have to rely on your memory of the evidence, which is why you should be paying close attention to the testimony of each and every witness.

You should not abandon your own recollection because somebody else's notes indicate something different. Your notes, if you keep them, are to refresh your recollection only, and that is the only reason you should be keeping them.

I am now going to ask our Court Security Officer to pass out these juror notebooks to each of the members of the jury. In these notebooks, ladies and gentlemen, you will see that you have a copy of both of the patents-in-suit that are at issue in this case and that we've talked about.

You will also find in there that you have witness pages for each witness that might testify in the case with a picture of the witness at the top of the page, and the remainder of the page available for note-taking there if you choose to take notes. You will also see that you have a chart in there identifying the language from the asserted claims where I have already construed that language and given you a construction or definition to apply when answering the questions in the verdict form. As I have mentioned, in the back, you will find a legal pad for note-taking. In the front pocket, you should find both a highlighter and a pen that you can use for those purposes, as well. Each of these notebooks are just the same.

In the front cover please write your name so that you make sure to keep yours, and do not get it confused with anybody else's. You each need to keep your own notebook in your own possession. In that regard, you should either have that notebook with you in the jury box, just like you do now, or you should have it in the jury room with you. These are not to be left lying around where someone else can pick them up. Either have them with you in the jury box, or if you have left for the evening, leave them on the table in the jury room. You can find your notebook the next morning and have it with you when you come back into the courtroom.

Having said that, there may be times over the course of the trial where we take a recess or a quick break, and it may be a short recess. If it is, I may say, ladies and gentlemen, you can simply

15

close and leave your notebooks in your chair in the jury box. That means you are not going to be gone very long, and it is fine to leave it there rather than carry it back and forth to the jury room with you. Unless I give you those kind of specific instructions, it should be in your possession whenever you are here in court. When you go home in the evening, it should be in the jury room on the table where you can find it the next morning.

## IX.    OPENING STATEMENTS & PRESENTATION OF EVIDENCE

In a moment, we are going to hear opening statements from the lawyers. These opening statements are designed to give you a roadmap of what each side expects that the evidence will show in this case. You should remember throughout the trial, ladies and gentlemen, that what the lawyers tell you is not evidence. I want to say that again. What the lawyers tell you is not evidence.

The evidence is the sworn testimony that will be presented from the witness stand under oath and subject to cross-examination, whether it is through a live witness or through a deposition witness, as I have already described to you. The evidence will include the admitted exhibits in this case.

That is the totality of the evidence in this case. What the lawyers tell you is not evidence. What they tell you, in fact, is their impression of what the evidence should be. They have a duty to point out to you where they believe the evidence is. But, remember, what they tell you is not evidence.

After the opening statements are given by each side, Chamberlain will have the opportunity to call their witnesses and put on their evidence. This is called Chamberlain's case-in-chief. When Chamberlain has finished putting on its witnesses and evidence, it will rest its case-in-chief, and then Overhead Door has the opportunity to call its witnesses and put on its evidence. That is called Overhead Door's case-in-chief. After Overhead Door rests its case-in-chief, then Chamberlain has

the opportunity, if it chooses, to call what are called rebuttal witnesses to address the evidence that Overhead Door has put on.

After Chamberlain puts on any rebuttal witnesses, if they choose to, then you will have heard all the evidence in this case. When you have heard all the evidence in this case I will give you written instructions on the law that we have talked about and that you are to apply to the evidence that you have heard, and you will have your own individualized printed copy of those written instructions on the law that I am going to give you. And you may take that copy from me with you back to the jury room when you retire to deliberate.

These instructions that I will give you at that point in written form, and I will give them to you orally as well, those are called the final instructions to the jury. After these instructions are given by me to you, the lawyers will present their closing arguments, which are designed to point out what they believe they have proved over the course of the trial and through the evidence that has come in during the trial. Once you have heard the lawyers' closing arguments, you will retire to the jury room to consider the questions in the verdict form and reach a unanimous decision as to those questions. Those unanimous answers to those questions, as I have told you, will constitute your verdict in this case.

## X.    **CONDUCT OF JURY**

Let me repeat my earlier instruction to you. You are not to discuss this case among yourselves or with anyone else during the trial. When I said not discuss the case, I mean not communicate about it in any way. That applies to anybody outside this courtroom. Until you have heard all the evidence in this case, ladies and gentlemen, it applies to all of you with each other. During the course of the trial, at lunch breaks and recesses, you are not to discuss the evidence among yourselves.

Only when you have heard all the evidence and only when I instruct you to retire to the jury room and deliberate on your verdict after I have given you my final instructions and you have heard closing arguments from the attorneys, then is the first time that you are to discuss the evidence among yourselves.

And when you have heard all the evidence and when you retire at my instruction to the jury room to deliberate on the verdict, it becomes your duty to discuss the evidence that is presented over the course of the trial in your effort to reach a unanimous decision as to the questions that are presented in the verdict form.  I also want to remind you that over the course of the trial, these lawyers and their staff and the witnesses and the representatives of the competing companies that are the parties are not going to talk to you if they see you in close proximity.  If you run into one of them on the front steps coming into the courthouse one morning and they are not friendly and they do not speak, do not consider them to be rude or unfriendly.  Do not hold it against them. They are simply doing what I have instructed them to do.

With these instructions, we are now going to proceed to hear opening statements from the parties.

**FINAL JURY INSTRUCTIONS**

Ladies and Gentlemen of the Jury:[5]

You have now heard the evidence in this case.  I will now instruct you as to the law that you must apply.  Each of you will have a copy of these final jury instructions that I am about to give you orally.  You will have these for your review when you retire to deliberate in a few minutes.  Accordingly, there is no need for you to take written notes unless you particularly want to do so.

## I.    GENERAL DUTY TO APPLY LAW AND FIND FACTS

It is your duty to follow the law as I explain it to you.  On the other hand — as I have said — you, the jury, are the sole judges of the facts in this case.  Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.  Likewise, statements and arguments by the attorneys are not evidence, and they are not instructions on the law.  You are about to hear closing arguments from the attorneys for both of the parties.  They are intended only to assist you, the jury, in understanding the evidence and the parties' contentions.

## II.    VERDICT FORM

A verdict form has been prepared for you.  You will take this form to the jury room and answer the questions as directed in the verdict form from the facts as you find them.  Do not decide who you think should win the case and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.  When you have reached a unanimous decision as to your verdict, you will have your foreperson fill in the blanks in that form and then date and sign the form.

---

[5]    Unless otherwise noted, all jury instructions are adapted from *Gree, Inc. v. Supercell Oy*, Nos. 2:19-cv-00237-JRG-RSP, 2:19-cv-00310-JRG-RSP, 2:19-cv-00311-JRG-RSP, Dkt. No. 276 (Final Jury Instructions) (E.D. Tex. May 7, 2021).

### III.    FACT FINDING

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and you may consider all of the exhibits received and admitted into evidence, regardless of who may have introduced them.  You, the jurors, are the sole judges of the weight and effect of each and every witness in this case.  Likewise, you are the sole judges of the weight and effect to be given to the evidence in this case.

#### A.    Appropriate Sources of Facts

##### 1.    Witness Testimony

###### a.    General

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You alone are to determine the questions of credibility or truthfulness of the witnesses.

In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, in the light of the circumstances.  Has the witness been contradicted by other evidence?  Has he or she made statements at other times and places contrary to what he or she said on the witness stand?  You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind that a simple mistake does not mean that a witness is not telling the truth.  You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, if after considering all of the evidence you believe that single witness.  This may be the case even if a greater number of witnesses may have testified to the contrary.

### b.    Deposition

Certain testimony in this case has been presented to you through recorded depositions.  A deposition is the sworn, recorded answers to questions asked of a witness in advance of the trial.

If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition.  Before this trial, attorneys questioned these deposition witnesses under oath.  A court reporter was present and recorded the testimony.  Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.  Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

### c.    Expert Testimony

During the trial you heard from certain witnesses with special training and experience in particular fields that you may have heard called "expert witness."  As I explained before the trial began, you are not required to accept an expert opinion or an expert witness or any other witness's opinions at all.  It is up to you to weigh their qualifications, the opinions they gave, and the bases for those opinions, and then evaluate to what degree, if any, that you want to give their testimony weight.  Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

21

### 2.    Documents

In deciding the facts in this case, you will also have to decide the weight and effect of documents or other things admitted as exhibits into evidence. You alone are to determine the questions of credibility and importance of exhibits. Unless I instruct you otherwise, you may properly determine that a single exhibit is sufficient to prove any fact, even if other exhibits point to the contrary, if after considering all of the evidence, you believe that is the appropriate weight and effect of the exhibit.

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

During the course of the trial, you may have been shown documents with some portions redacted. In those situations, you should not speculate about what may have been redacted or why. Those redactions were approved by the Court prior to when the trial began.

### 3.    Stipulations

The parties may have stipulated or agreed to some facts in the case. When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

### B.    Evidence, Inferences, and Fact Finding

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One type is direct evidence, such as the testimony of an eyewitness. The

other type is indirect — or circumstantial — evidence that is proof of a chain of circumstances that indicates the existence or non-existence of certain facts. As a general rule, the law makes no distinction between direct or circumstantial evidence. You must find the facts based on the evidence presented, both direct and circumstantial.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case, including your own personal experience with any products.

### C.    <u>Inappropriate Evidence and Inferences</u>

As I have told you previously, the attorneys in this case are advocates for their competing clients and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely. You may not draw any inferences from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench and outside of your hearing or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not

involve the jury.  You should not speculate about what was said during such discussions that took place outside of your presence.

## IV.      **<u>BURDENS OF PROOF</u>**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on the Plaintiff for some issues, and is on Defendants for other issues.

There are two burdens of proof that you will apply in this case.  One is the preponderance of the evidence, and the other is clear and convincing evidence.  A preponderance of the evidence means that the evidence persuades you that a fact is more probably true than not true.  Sometimes this is talked about as being the greater weight and degree of credible testimony.  To meet the other burden of proof — clear and convincing evidence — you must be left with an abiding conviction that the truth of the party's factual contentions is highly probable.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

These two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this.  Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

V.      **CASE OVERVIEW**

A.      **The Parties**

The plaintiff, The Chamberlain Group, LLC, who I will refer to as Plaintiff or Chamberlain, has the burden of proving patent infringement and associated damages by a preponderance of the evidence.

The defendants in this case are Overhead Door Corporation and GMI Holdings Inc., who I will refer to collectively as the Defendants or Overhead Door.  Overhead Door has the burden of proving patent invalidity by clear and convincing evidence.

B.      **The Parties' Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

This is an action for patent infringement.  As a patent holder, Chamberlain has the right to file a suit in a United States District Court, like this one, and the right to a trial by jury, if it believes its patent rights are being infringed.

The case concerns four United States patents:  U.S. Patent No. 8,587,404, which you have heard referenced throughout the trial as the '404 patent; U.S. Patent No. 9,644,416, which you have heard referenced throughout the trial as the '416 patent; U.S. Patent No. 7,852,212, which you have heard referenced throughout the trial as the '212 patent; and U.S. Patent No. 8,144,011, which you have heard referenced throughout the trial as the '011 patent.  I will refer to these collectively as the "patents-in-suit" or the "asserted patents."

Chamberlain contends that Overhead Door has infringed the following claims of the patents-in-suit:

25

- For the '404 patent, claims 4, 6–9, 11, 16–20;

- For the '416 patent, claims 1–14;

- For the '212 patent, claims 1, 2, 15, 16, 19; and

- For the '011 patent, claims 1, 2, 4.

These are the "Asserted Claims." Chamberlain contends that these claims generally relate to garage door operator technologies.

Chamberlain contends that Overhead Door infringes the Asserted Claims of the Patents-in-Suit by making, using, importing, selling, and/or offering for sale in the United States certain products that practice the asserted claims. These include (i) integrated Wi-Fi garage door operators (for the '404, '011, and '212 patents); and (ii) retrofit kits (for the '416 patent), which allow a user to convert a traditional non-Wi-Fi garage door operator into a Wi-Fi enabled operator. These are the "Accused Products." Chamberlain further contents that Overhead Door willfully infringed these patent claims and induced infringement by others. Chamberlain contends that it is entitled to money damages as a result of that infringement.

Overhead Door denies that its Accused Products have infringed the Asserted Claims of the patents-in-suit. In other words, Overhead Door contends that it did not make, use, sell, or offer for sale within the United States, or import into the United States, any products that infringe any of the asserted claims of the patents-in-suit. Overhead Door denies that it has willfully infringed the patents-in-suit or that it has induced infringement of the patents-in-suit. Overhead Door also denies that Chamberlain is entitled to any damages.

Overhead Door also contends that the Asserted Claims of the Patents-in-Suit are invalid because they are either anticipated or obvious in the light of prior art. Overhead Door also contends

26

that the asserted claims of the Patents-in-Suit are invalid because the patent specifications do not contain a sufficient written description of the invention.

Finally, Overhead Door contends that, to the extent that any of the Asserted Claims are found to be valid and infringed, any damages awarded to Chamberlain should be limited because Chamberlain failed to provide Overhead Door with sufficient notice of the Patents-in-Suit required under the patent laws of the United States.

Your job is to decide whether Chamberlain has proven that Overhead Door has infringed any of the Asserted Claims.  If you decide that any asserted claim has been infringed, then you will then need to decide whether Overhead Door has proved that infringed claim to be invalid.  If you decide that the claim was infringed and was valid, then you must decide the amount of money damages to be awarded to Chamberlain to compensate for the infringement.  Additionally, if you decide that Overhead Door has infringed any of the asserted claims, then you must also decide whether that infringement was willful.  However, your decision on willfulness should not affect any damages award you make.  I will take willfulness into account later.

## VI.    PATENT CLAIMS

### A.    General

Before you can decide many of the issues in this case, you will need to understand the role of patent claims.  The patent claims are the numbered sentences at the end of each patent.  The claims define the patent owner's rights under the law.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the inventions in the patent.  The figures and text, sometimes referred to as the specification, provide context for the claims, but it is the claims that define the breadth of the patent's coverage.

27

Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims individually covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim. The law says that it is my role to define certain terms of the claims and it is your role to apply my definitions — sometimes called my constructions — to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have already determined the construction of certain claim terms in this case and provided you with the constructions of those terms in your juror notebooks. You should refer to these in your deliberations. You must accept my constructions of these words in the claims as being correct. It is your job to take these constructions and apply them to the issues that you are deciding, including the issue of infringement.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions that I have given you. My interpretation of the claim terms should not be taken by you as an indication that I have any view regarding the issue of infringement. The decisions regarding infringement are yours to make. For claim limitations that I have not construed — that is, limitations that I have not interpreted or defined — you are to use the plain and ordinary meaning of the limitations as understood by a person of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention of that patent.

**B.    Claim Scope**

You have been provided with copies of the patents-in-suit, which are inside your juror notebooks, and you may use them in your deliberations. I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device satisfies each of these requirements, then it is covered by and infringes the claim.  There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed on a claim-by-claim basis.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim.  In other words, a claim covers a product where each of the claim elements or limitations is present in that product.  If a product is missing even one limitation or element of a claim, the product is not covered by the claim.  If the product is not covered by the claim, that product does not infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed.  This is true even if the accused product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves that would go in the tabletop or wheels that would go on the ends of the legs.

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim, and the claim(s) to which it refers, is covered by that dependent claim.

- For the '404 patent, claims 4, 7, 11, 16, 19, and 20 are independent claims; claims 6, 8, 9, 17, and 18 are dependent claims.

- For the '416 patent, claims 1 and 7 are independent claims; claims 2–6, and 8–14 are dependent claims.

- For the '212 patent, claims 1 and 15 are independent claims; claims 2, 16, and 19 are dependent claims.

- For the '011 patent, claim 1 is an independent claim; claims 2 and 4 are dependent claims.

## VII.   <u>INFRINGEMENT</u>

I will now instruct you on infringement in more detail.

### A.   <u>General</u>

If a person or corporation makes, uses, sells, or offers to sell within the United States, or imports into the United States, what is covered by a patent claim without the patent owner's permission, that person is said to infringe the patent.

#### 1.   <u>Focus on Claims</u>

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have construed each of them,

to the accused products, and determine whether or not there is infringement.  You should not compare the accused products with any specific examples set out in the patents in reaching your decision on infringement.  The only correct comparison is between the Accused Products and the limitations of the claims as the Court has construed them.  You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

[You have heard evidence about both Chamberlain's commercial products and Overhead Door's accused products.  However, in deciding the issue of infringement you may not compare the Overhead Door accused products to the Chamberlain commercial products.  Rather, you must compare the Overhead Door accused products to the claims of the asserted patents when making your decision regarding infringement.][6] [7]

## 2. Must Practice Each Limitation

I will now instruct you on the specific rules you must follow to determine whether Chamberlain has proven that Overhead Door has infringed one or more of the patent claims involved in this case.  In order to prove infringement of a patent claim, Chamberlain must show by a preponderance of the evidence that the accused product includes each and every limitation of the claim.

---

[6]    Chamberlain objects to this language as cumulative of the discussion in the immediately preceding and following paragraphs and therefore unduly prejudicial to Chamberlain.

[7]    Overhead Door: This instruction follows the AIPLA model jury instructions.  See *See* AIPLA's   Model   Patent   Jury   Instructions   (2019)   at   §   3.0,   available   at https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0.    Moreover,   contrary   to Chamberlain's assertions, the preceding and following paragraphs do not include an explicit instruction to the jury to not compare Chamberlain's commercial products with Overhead Door's commercial products, and thus the instructions are not cumulative or prejudicial.

The issue of infringement is assessed on a claim-by-claim basis within each patent. Therefore, there may be infringement of a particular patent as to one claim even if there is no infringement as to other claims in the patent.

## B.    Direct Infringement

In this case, Chamberlain contends that Overhead Door both directly and indirectly infringes the asserted claims. In order to directly infringe a patent claim, an accused product must include or perform each and every element of the claim. Thus, in determining whether Overhead Door infringes Chamberlain's asserted claims, you must determine if the accused products contain or perform each and every element recited in a claim of an asserted patent. If a particular sequence is required by the claims, the accused products must follow that sequence.

A claim element is literally present if it exists in or is performed by an accused product just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by its plain and ordinary meaning to a person of ordinary skill in the art. If an accused product omits any element recited in a claim, then you must find that that particular product does not infringe that claim.

A patent can be infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be infringed even though the accused infringer believed in good faith that what it was doing was not infringement of the patent.

You must determine, separately for each asserted claim, whether there is infringement. However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets additional requirements of any claims that depend from the independent claim,

32

and thus, whether those claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

### 1.  Method Claims

Some of the asserted patent claims are "method" claims.

- For the '404 patent, claims 7–9 and 16–20 are method claims.

- For the '416 patent, claims 7–10 and 14 are method claims.

- For the '212 patent, claims 1, 2, 15, 16, and 19 are method claims.

- For the '011 patent, there are no method claims.

Direct infringement of a method claim occurs where all steps of the claimed method are performed by or are attributable to a single party.  [Direct infringement of a method claim can occur where the defendant performs certain steps of the method and others are performed by equipment that the defendant controls but that is in the hands of a third party.][8]  [If a defendant does not itself practice every step in the patent claim, that defendant cannot be liable for direct infringement merely

---

[8]     Chamberlain's proposal reflects Federal Circuit jurisprudence that Overhead Door can directly infringe a method claim where it performs certain steps of the method and controls others' performance of the remaining steps or where it controls others' performance of all steps of the method.  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement. We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance . . . .").

In contrast, Overhead Door's proposal introduces irrelevant and potentially confusing instructions.  For example, Overhead Door presents instructions on lack of business relationship when there is no theory of noninfringement on that basis.  Overhead Door's summary judgment motion concerning divided infringement contains no discussion of that theory either.  *See* Dkt. No. 168 at 3.  Contrary to Overhead Door's suggestion that Chamberlain is "obfuscate[ing]" the law, Chamberlain's instructions provide the jury with guidance on the legal issues actually before them. The Court should prevent this prejudice to ensure that the jury is not be misled by additional confusing and tangential instructions.

because other parties supplied the missing elements, unless the defendant directed or controlled the acts by those parties.  Directing or controlling others' performance includes circumstances in which an actor: (1) conditions participation in an activity or receipt of a benefit upon others' performance of one or more steps of a patented method, and (2) establishes the manner or timing of that performance.  A defendant does not direct or control someone else's action merely because the defendant entered into a business relationship with that person.  Instead, the defendant must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to the defendant as controlling party.][9]

## 2. Doctrine of Equivalents

If you decide that an accused product does not literally infringe an asserted patent claim, you must then decide whether that product infringes the asserted claim under what is called the "Doctrine of Equivalents."  Under the Doctrine of Equivalents, the product can infringe an asserted

---

[9]    Defendants object to Chamberlain's proposed instructions for this section.  Chamberlain's proposal omits the Federal Circuit's explanation regarding what conduct satisfies direction or control, providing the jury with no guidance on how to determine when a defendant may be found liable for direct infringement under these situations.  Chamberlain's proposal is highly prejudicial because without an explanation of what types of conduct rises to the level of "direction or control," the jury may incorrectly infer that a mere business relationship with a third party may be sufficient to find direct infringement.

While Chamberlain argues that these instructions are irrelevant because there have been no allegations of a relevant business relationship or any other evidence of direction or control only undermines the importance of including these instructions.  As discussed in Overhead Door's motion for summary judgment of no infringement of the '212 patent, Chamberlain has not proffered evidence to establish divided infringement, and Chamberlain cannot now fill the gap in its burden of proof by hiding the relevant standard from the jury.

Moreover, Defendants' proposal follows the plain language of the Federal Circuit's decision in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, explaining the circumstances in which a defendant may be found to direct or control a third party's actions such that the defendant may be liable for direct infringement.  797 F.3d 1020, 1022-23 (Fed. Cir. 2015); *see also Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), *abrogated on other grounds by Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380 (Fed. Cir. 2017).

patent claim if it includes components or method steps that are equivalent to those elements of the claim that are not literally present in the product. Thus, in making your decision under the Doctrine of Equivalents, you must look at each individual element of the asserted patent claim and decide whether the accused product has an equivalent component or method step to each individual claim element that is not literally present in the accused product.

An equivalent of an element is a component or step that is insubstantially different from the claimed element. One way of showing that an element is insubstantially different is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.

In deciding whether any difference between a claim requirement and the accused product is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the art would have known of the interchangeability of the component or step with the claimed requirement. However, known interchangeability between the claim requirement and the component or step is not necessary to find infringement under the Doctrine of Equivalents.

### 3. Limitations on Doctrine of Equivalents

[In this case, the Doctrine of Equivalents can be applied to certain elements of the asserted claims. Specifically, you may apply the Doctrine of Equivalents to the following elements of the asserted claims:

- '404 patent: "the processor configured to effect the closing of the movable barrier without operating the moving-barrier imminent motion notification in response to determining that the received command for the closing was received from at least one of the direct wireless connection to the transmitter and the local wired connection"

- '416 patent: "control circuitry configured to use the communication module to communicate with the pre-installed barrier operator, the control circuitry configured to use the barrier operator communication module to communicate to the pre-installed barrier operator to control movement of a barrier operated by the pre-installed barrier operator"

- '416 patent: "an input/output module operatively in communication with the control circuitry, the input/output module configured to communicate with at least one wireless door position sensor configured to provide information regarding movement of a barrier operated by the pre-installed barrier operator, and at least one mobile computing device configured to effect operation of the pre-installed barrier operator"

- '416 patent: "a communication module configured to communicate with a preinstalled barrier operator by sending communication signals by wired communication protocol, the communication module comprising a wired

communication port configured to be connected through one or more wires to the barrier operator"][10] [11]

---

[10]    The parties agree that it is appropriate to instruct the jury as to how to apply the Doctrine of Equivalents ("DOE"). Their disagreement is whether to list the limitations for which it may apply or to list the limitations for which it does not apply. Chamberlain proposes the former because enumerating the limitations for which DOE is applicable would be less confusing to the jury. The list of limitations where DOE is potentially applicable is not long. As a result, the jury could easily identify where DOE might apply and where it may not apply. Under Defendants' proposal, the jury would be forced to wade through a long list of limitations. It would be difficult for the jury to determine whether DOE could apply to any particular limitation. Likewise, Defendants' proposal, which instructs the jury only on what they cannot do, is more likely to lead to jury confusion as to what DOE application is permissible. Chamberlain's proposal limits jury confusion by affirmatively identifying the limited instances where the jury may apply the DOE.

Defendants' counter-arguments are unpersuasive. *First*, Chamberlain's proposal mirrors the model instructions cited by both parties, but lists the relevant limitations affirmatively to limit juror confusion as described above. *See* AIPLA's Model Patent Jury Instructions (2018) at § 3.7, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0. *Second*, Chamberlain's proposal accurately reflects the section subheading because it lists the *limited* instances where DOE can apply.

[11] Defendants' object to Chamberlain's inclusion of this instruction. While Chamberlain cites to the AIPLA model rules, the model rules do not include a listing of the limitations that should be considered under DOE, particularly not in the section dedicated to *limitations* on the doctrine of equivalents. The preceding section already discusses the doctrine of equivalents standard, and the "limitations" section necessarily should only include the list of elements the court has found *cannot* be satisfied under the doctrine of equivalents.

Defendants' proposal actually follows the AIPLA's model patent jury instructions. *See* AIPLA's Model Patent Jury Instructions (2018) at § 3.7.1, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0.

Moreover, it is improper and prejudicial to include a list of limitations that may be considered under the doctrine of equivalents before the Court has decided both the issue of prosecution history estoppel and Defendants' motion to strike Chamberlain's untimely equivalents theories. To the extent that the Court allows CGI to include these instructions, only the limitations that the Court determines are appropriate to analyze under the doctrine of equivalents should be included.

[In this case, I have determined, as a matter of law, that the Doctrine of Equivalents cannot be applied to certain elements of the asserted claims; specifically, I am instructing you that the Doctrine of Equivalents cannot be applied to the following elements of the asserted claims:

[LIST ELEMENTS ON A CLAIM-BY-CLAIM BASIS]

Consequently, each of the elements above must be literally present within Overhead Door's products for there to be infringement of the claim.  Unless you find that each of the elements of the claims is literally present in Overhead Door's products, you must find that there is no infringement.  As for the remaining elements of the asserted claims not listed above, you are permitted to find these elements with the Doctrine of Equivalents analysis that I instructed you on earlier.]

### C.      Indirect Infringement

Chamberlain also alleges that Overhead Door is liable for induced infringement.  Induced infringement can occur when Overhead Door induces accused product users to directly infringe the asserted claims.  As with direct infringement, you must determine whether there has been induced infringement on a claim-by-claim basis.

Overhead Door is liable for induced infringement of a claim if Chamberlain proves by a preponderance of the evidence that:

1.      The actions taken by users of the accused products directly infringe that claim;

2.      Overhead Door has taken action intending to cause the infringing acts by its users; and

3.      Overhead Door has been aware of the patents-in-suit and has either known that the acts of its users constitute infringement of the asserted patent claims or was willfully blind to that infringement.

38

For willful blindness to be established: Overhead Door must have (1) subjectively believed that there was a high probability that a patent existed covering the accused method, and (2) taken deliberate actions to avoid learning of the patent.[12]

### D.    Willful Infringement

In this case, Chamberlain also contends that Overhead Door has willfully infringed the asserted claims.  If you decide that Overhead Door has infringed an asserted claim, you must go on and address the additional issue of whether or not this infringement was willful.  Chamberlain must prove willfulness by a preponderance of the evidence.

You may find that Overhead Door willfully infringed if you find that the acts performed by Overhead Door to infringe were deliberate or intentional.  [While knowledge of the existence of a patent may be relevant to the question of willful infringement, you may not determine that the infringement was willful just because Overhead Door knew of the asserted patents and infringed them.  You may find that Overhead Door's actions were willful if Overhead Door acted in reckless or callous disregard of or with indifference to the rights of Chamberlain. A defendant is indifferent

---

[12]    *Global-Tech Appliances, Inc. v. SEB S.A.5*, 131 S. Ct. 2060 (2011).

to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.][13] [14]

To determine whether Overhead Door acted willfully, consider all of the facts and assess Overhead Door's knowledge at the time of the challenged conduct.  Facts that may be considered include whether or not Overhead Door reasonably believed it did not infringe or that the asserted patents were invalid. You may find that Overhead Door's actions were deliberate or intentional if Overhead Door was willfully blind to Chamberlain's patent rights.

[Knowledge of the existence of a patent can be relevant to the question of willful infringement.  You need not find that Overhead Door's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith in order to find that they willfully

---

[13]    Chamberlain objects to Overhead Door's instruction because it emphasizes an incorrect and inappropriate standard for willful infringement that the Federal Circuit has expressly rejected. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021) ("[W]e clarify that it was not our intent to create a heightened requirement for willful infringement.  Indeed, that sentence from *Halo* refers to 'conduct warranting enhanced damages,' not conduct warranting a finding of willfulness." (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016))). While it is true that the jury can consider Overhead Door's behavior — including recklessness — emphasizing these inappropriate characteristics is likely to confuse the jury and mislead them into believing that the standard for willfulness is higher than it is.  The Court should instead instruct the jury, as Chamberlain has proposed, that such behavior are not necessary to find willful infringement.

[14]    Defendants instruction here appropriately lays out the standard for willful infringement, and as Chamberlain concedes, the jury can consider Overhead Door's behavior — including recklessness.

Moreover, Defendants' instruction does not discuss the "wanton, malicious, and bad-faith behavior" that the Court in *SRI Int'l* cautioned was the heightened conduct "warranting enhanced damages."  Finally these instructions follow prior jury instructions used by this Court on the issue of willful infringement.  *See, e.g., Bright Data v. Teso*, No. 2:19-cv-00395-JRG.

<mark>infringed.</mark>][15] [16]    Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial.  Willfulness can be established by circumstantial evidence.

If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

## VIII.    <u>INVALIDITY</u>

If you decide Chamberlain has proven that any of the asserted claims are infringed by the accused products, then you must next determine whether Defendant has proven any of those asserted claims to be invalid.  I will now instruct you on the rules that you must follow in deciding whether Overhead Door has proven by clear and convincing evidence that the asserted claims of the patents-in-suit are invalid.

---

[15]    Chamberlain:  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021). Similar to the above, Chamberlain objects to Overhead Door's proposed instruction as it is incomplete and misleading in light of Federal Circuit jurisprudence regarding the standard for willful infringement.  The parties agree that knowledge of the existence of the patents is relevant and therefore instructing the jury on this is not prejudicial.  The Federal Circuit has also affirmatively stated that, to be willful, an actor need not be malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith.  Chamberlain's proposal accurately reflects this precedent.

[16]    Defendants' object to the inclusion of this instruction as cumulative with prior instructions, and confusing and unduly prejudicial.  Defendants' proposed instruction already notes that "knowledge of the existence of a patent may be relevant to the question of willful infringement." Chamberlain's instruction just repeats this statement, while omitting the crucial explanation that "you may not determine that the infringement was willful just because Overhead Door knew of the asserted patents and infringed them."  Allowing in Chamberlain's instruction while omitting Overhead Door's would risk the jury inferring willful infringement just because Overhead Door was aware of the patents.

Moreover, there is no need to introduce the concepts of malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith conduct, as there are no prior instructions that this type of conduct is necessary to find willful infringement, and raising these issues would only serve to confuse the jury.

### A.    Presumption of Validity

An issued patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patent.  You have heard the United States Patent and Trademark Office referenced throughout this trial as the USPTO, PTO, or the Patent Office.  This presumption of validity extends to all issued United States patents. That being said, a person accused of infringement has the right to argue in federal court that a claimed invention in a patent is invalid. In order to overcome this presumption, Overhead Door must establish by clear and convincing evidence that a particular claim in Chamberlain's patents is not valid.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

### B.    Anticipation & Obviousness

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before it, which is referred to as the prior art.

### 1.    Prior Art

Prior art is considered in determining whether the asserted claims are not "new" or are obvious.  Overhead Door contends that each asserted claim of the '404 and '416 patents are invalid as being not "new" and/or because they are "obvious."  Overhead Door contends that each asserted claim of the '212 and '011 patents is invalid as being "obvious."

### a.    Types of Prior Art

In patent law, a previous device, system, method, publication, or patent that is proven to predate the claimed invention is generally called a "prior art reference."  Prior art may include any of the following items:

1.    Any product or system that was known or used by others in the United States before the patented inventions were made;

42

2.      Any patent that issued, or any printed publication that was published and proven to be publically available, anywhere in the world before the patents-in-suit were filed;

3.      Any product or system that was in public use or on sale in the United States more than one year before the application for an asserted patent was filed;

4.      Any patent that issued or any printed publications that were published and proven to be publically available anywhere in the world more than one year before the application for an asserted patent was filed;

5.      Any patent application that was filed in the United States by someone other than the inventors of an asserted patent before the invention was made; and

6.      Any product or system conceived by another person before the invention was made and was communicated to the named inventor in a manner sufficient to enable him to construct and successfully operate the prior conception.

An electronic publication, including an online database, digital video, or Internet publication can be a "printed publication." However, in order to be considered as prior art, the electronic publication reference must have been proven to be available to the public before the priority date of an asserted patent. The date that a patent issued is not relevant to the invalidity analysis.

### b.      Priority Dates

The Parties disagree on the appropriate priority date of the '404 patent but agree as to the priority date of the other patents-in-suit.

- For the '404 patent, Chamberlain contends that the priority date is June 7, 2007; Overhead Door contends that it is March 24, 2009.

- For the '416 patent, the Parties agree that the priority date is November 8, 2012.

43

- For the '212 and '011 patents, the Parties agree that the priority date is January 27, 2005.

Because Chamberlain is asserting that the '404 patent has a priority date that is earlier than the March 24, 2009 filing date of the patent, Chamberlain bears the burden of establishing that the claimed invention of the '404 patent Asserted Claims are entitled to the June 7, 2007 priority date. Chamberlain can meet this burden by proving that the '404 patent's inventor conceived of the invention before the effective filing date of the reference and was diligent in reducing his invention to practice after that date. This proof must include corroborative evidence that goes beyond the inventor's own statements.

### 2.    **Invalidity Analysis Generally**

You have heard evidence of prior art that the Patent Office may or may not have evaluated. The fact that any particular reference was or was not considered by the Patent Office does not change Overhead Door's burden of proof. However, in making your decision whether Overhead Door has met its burden of proof by clear and convincing evidence as to a particular patent claim, you may take into account the fact that the prior art was not considered by the Patent Office. The ultimate responsibility for deciding whether the claims of an asserted patent is valid is up to you, the members of the jury.

Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. Claim terms are construed in the same way for determining infringement as for determining invalidity.

If one asserted claim is invalid, then this does not mean that any other asserted claim is necessarily invalid. However, if a dependent claim is invalid, then the independent claim from which it depends is also invalid.

44

### 3.   Anticipation

A patent may be invalid if it is not "new."  If a patent is not "new," it is said to be "anticipated" by the prior art.  Anticipation must be determined on a claim-by-claim basis. Overhead Door must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim.  If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

### 4.   Obviousness

#### a.   General

Additionally, even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention also must not have been obvious to a person of ordinary skill in the art of the patent at the time the invention was made or before the filing date of the patent.

In order to prove a claim is invalid as obvious, Overhead Door is required to establish, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made or the patent was filed.  In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made or the patent was filed, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight.  In other words, you should not consider what a person of ordinary skill in the art would know now, or what has been learned from the teachings of the patents-in-suit.

### b.    <u>Reason To Combine</u>

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most inventions, if not all, rely on building blocks of prior art. To find a claimed invention obvious, you must find that, at the time of the claimed invention or the patent's filing date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the way that the claimed invention does. This reason to combine must be proven by clear and convincing evidence.

In considering whether there was a motivation to combine elements, you may consider the following factors:

1.    Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

2.    Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.    Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention, such as where there is a motivation to combine;

4.    Whether the prior art teaches away from combining elements in the claimed invention; and

5.    Whether it would have been obvious to try the combinations of elements in the claimed invention, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions; however, obvious to try is not sufficient in unpredictable technologies.

To find that it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success.

46

### c.    <u>**Objective Indicia of Nonobviousness**</u>

In making these assessments, you should take into account any objective evidence (sometimes called "objective indicia" or "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

1.    Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

2.    Whether the invention satisfied a long-felt need in the art;

3.    Whether others had tried and failed to make the claimed invention;

4.    Whether others invented the claimed invention at roughly the same time;

5.    Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

6.    Whether others in the field praised the claimed invention;

7.    Whether others sought or obtained rights to the patent from the patent holder;

8.    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

9.    Whether the inventor proceeded contrary to accepted wisdom in the field.

No factor alone is dispositive, and you must consider the obviousness or non-obviousness of the inventions as a whole.  These factors are relevant only if there is a connection, or nexus, between the factor and the asserted claims of the patents-in-suit.

Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether Overhead Door has proven that the claimed invention would have been obvious.  In determining whether the claimed invention was obvious, consider each claim separately, but understand that if

a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

### d. Person of Ordinary Skill in the Art

Now, several times in my instructions, I have referred to a person of ordinary skill in the art. A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of the relevant prior art at the time of the claimed invention. The parties agree that a person of ordinary skill in the art is a person who is familiar with radio frequency transmission and reception, particularly with respect to physical actuation of devices. The parties also agree that a person of ordinary skill in the art would hold at least the equivalent of a bachelor's degree in a technical field such as electrical engineering, computer engineering, or computer science, or the equivalent through relevant practical experience. More work experience can compensate for less education, and vice versa.

### C. Written Description

Another way that a patent may be invalid is if there is an inadequate written description of the claimed invention. In this case, Overhead Door contends that claims 1–14 of the '416 patent are invalid because the '416 patent does not contain an adequate written description of the claimed invention.

As I previously explained, to obtain a patent, one must first file an application with the United States Patent and Trademark Office. The process of obtaining a patent is called "patent prosecution." The application submitted to the USPTO includes within it what is called a "specification." The specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's effective filing date.

48

To show that the '416 patent is invalid for lack of written description, Overhead Door must show, by clear and convincing evidence, that a person having ordinary skill in the art as of the effective filing date would not have understood that the patent specification describes the full scope of the invention as it is claimed. If the '416 patent claims lack adequate written description they are invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the effective filing date. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the effective filing date would have understood that the element is necessarily present in what the specification discloses.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention. However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the scope and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter. And a patent owner cannot show written description support for a particular claim by picking and choosing claim elements from different embodiments that are never linked together in the specification.

49

D.    **Eligibility**

A patent may also be proven to be invalid for lack of patent-eligible subject matter if Overhead Door shows by clear and convincing evidence that the patent is directed to an abstract idea, and apart from the abstract idea the other elements of the asserted claims involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the time of invention. Whether a particular technology was well-understood, routine, and conventional must go beyond what was known in the prior art. The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional. However, statements in the patent itself can provide evidence that the additional claim elements are well-understood, routine, and conventional. In addition, the novelty or non-obviousness of any element in a claim, or even the claim as a whole, is a separate inquiry from whether the claim lacks patent-eligible subject matter. Therefore, a patent claim can be invalid for lack of patent-eligible subject matter even if the claim is novel or not obvious in light of prior art.

E.    **Inventorship**

A patent may also be proven to be invalid if Overhead Door proves, by clear and convincing evidence, that there is improper inventorship. In this case, Overhead Door contends that the '404 patent is invalid because of improper inventorship. To prove this, Overhead Door must show that not all of the actual inventors of the '404 patent were named on the patent as inventors. If Overhead Door proves improper inventorship for any of the '404 patent claims, all of the '404 patent claims are deemed invalid.

To be an inventor, a person must make a significant contribution to the conception of at least one or more of the specific claims of the patent [, even if that claim has not been alleged to

50

be infringed].[17] [18]  Whether the contribution is significant is measured against the scope of the full invention.  If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.  What is required is some significant contribution to the invention that is claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.  Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.

In making the determination of the whether the '404 patent is invalid for lack of inventorship, you must consider the patent in its entirety and any related evidence and testimony.  However, testimony alone is insufficient to support a claim for improper inventorship.[19]  A claim for improper inventorship must be supported by corroborating evidence.  This corroborating evidence includes physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the interested party.

**F.    Derivation**

A patent may also be proven to be invalid if Overhead Door proves, by clear and convincing evidence, that a person named as the inventor on a patent is not the true inventor because he "derived" the invention from others.  An invention is said to be "derived" from another person or group if that person or group conceived of the patented invention and communicated

---

[17]    Chamberlain objects to this instruction as irrelevant and unnecessary as it does not intend to drop any claims in advance of trial.

[18]    Given that a finding that a single claim is invalid under 102(f) renders all claims invalid, Overhead Door's proposal is relevant in the event that Chamberlain drops certain Asserted Claims before trial for which Overhead Door intends to present evidence of improper inventorship.

[19]    *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005).

that conception to the inventor named on the patent.  Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for further inventive effort.  To support derivation, the communication must have been sufficient to enable one of ordinary skill to make the patented invention. If an inventor derived the patented invention from another, then the patent claims covering the invention are invalid.

## IX.   DAMAGES

### A.   General

If you find that Chamberlain has proven that Overhead Door has infringed any of the asserted claims and that Overhead Door has failed to show that those asserted claims are invalid, you must then consider what amount of damages to award to Chamberlain.  The damages you award must be adequate to compensate Chamberlain for any infringement you may find.  Specifically, the patent laws provide that damages for infringement may not be less than a reasonable royalty.

Chamberlain has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Chamberlain establishes that it more likely than not suffered as a result of Overhead Door's alleged infringement.  While Chamberlain is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  Chamberlain is not entitled to damages that are remote or that are only speculative.

In this case, Chamberlain seeks damages in the form of lost profits and a reasonable royalty.

52

**B.    Lost Profits[20]**

Lost profits are the additional profits that Chamberlain would have made if Overhead Door had not infringed.  This includes any and all reduction in business profits that Chamberlain suffered as a result of Overhead Door's infringement of the patents-in-suit. Lost profits can include not only the profits the Chamberlain would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the Chamberlain lost from being unable to sell related products.

**1.    *Panduit* Factors**

To prove lost profits, Chamberlain must show that, "but-for" Overhead Door's infringement, Chamberlain would have made additional profits [through the sale of all or a portion of the sales of Overhead Door's allegedly infringing products].[21] [22]  Chamberlain must prove this by a preponderance of evidence, more likely than not.  Part of your job is to determine what the parties who purchased the accused products from Overhead Door would have done if the alleged infringement had not occurred.  It is important to remember that the profits I have been referring

---

[20]    AIPLA's Model Patent Jury Instructions (2018) at §§ 10.2.1-10.2.4, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0.

[21]    Chamberlain objects to this instruction as unduly narrowing and prejudicial.  As explained in Section IX.B, lost profits can incorporate "not only the profits the Chamberlain would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the Chamberlain lost from being unable to sell related products." *See* § IX.B *supra* (agreed portion of jury instructions).  Limiting lost profits to just making sales that Overhead Door captured is inconsistent with this standard, likely to confuse the jury as to the appropriate analysis, and prejudicial to Chamberlain.

[22]    Defendants' proposal follows the AIPLA model jury instructions. *See* AIPLA Model Jury Instructions (2019), at § 10.2.1.1, available at https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0.  Moreover, as Chamberlain notes, the jury instructions already include instructions related to potential convoyed sales in considering lost profits, so there is no prejudice in including the current instruction.

to are the profits allegedly lost by Chamberlain, not the profits, if any, made by Overhead Door on the allegedly infringing sales.

Chamberlain has proven its lost profits if you find that Chamberlain has proven each of the following factors:

1.      Demand for the patented product;

2.      Absence of acceptable noninfringing substitutes;

3.      Manufacturing and marketing capability to exploit the demand; and

4.      The amount of profit that Chamberlain would have made.

You may have heard these four factors referred to during the trial as the *Panduit* factors.

### 2.      Application of the *Panduit* Factors

#### a.      Demand

The first factor asks whether there was demand for the patented product or method in the relevant market.  In determining whether Chamberlain has proven demand for its patented product or method, you may consider a showing of significant sales of Chamberlain's own patented product or method.  You may also consider a showing of significant sales of Overhead Door's products that you have found are covered by one or more of the asserted claims.  To use sales of Overhead Door's products as proof of this demand, however, Chamberlain's and Overhead Door's products or methods must be sufficiently similar to compete against each other in the same market or market segment.

#### b.      Noninfringing Substitutes

The second factor asks whether there were noninfringing, acceptable substitutes for Chamberlain's patented products or methods that competed with Overhead Door's accused products in the marketplace.  As part of this analysis, you may consider  the impact of such substitutes on the marketplace absent the sale of Overhead Door's products.  If the realities of the

marketplace are that competitors other than Chamberlain would likely have captured some or all of the sales made by Overhead Door, even despite a difference in the products, then Chamberlain may not be entitled to lost profits on those sales.

To be an acceptable substitute, it must have had one or more of the advantages of the patented invention that were important to the actual buyers of the accused products, not the public in general. The acceptable substitutes also must not infringe the patent either because they were licensed under the patent or they did not include all the features required by the patent. A noninfringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of at least one limitation from the patent claim.

The acceptable substitutes, in addition to being either licensed or noninfringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. If the acceptable substitute was not sold during the damages period, then Overhead Door must show by a preponderance of the evidence that, during the damages period, a competitor or Overhead Door had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute.

[If you determine that some of Overhead Door's customers would just as likely have purchased an acceptable noninfringing substitute, then Chamberlain has not shown it lost those sales "but-for" Overhead Door's sales.

Even if you find that Chamberlain's and Overhead Door's products were the only ones with the advantages of the patented invention, Chamberlain is nonetheless required to prove to you that it, in fact, would have made Overhead Door's infringing sales.][23] [24]

If you find that there were other acceptable noninfringing substitutes in the market, then Chamberlain may be entitled to lost profits on a portion of Overhead Door's infringing sales. [The burden is on Chamberlain to show][25] [Chamberlain must show][26] by a preponderance of the

---

[23]     Chamberlain objects to these proposed instructions. Both paragraphs unnecessarily impose the requirement that Chamberlain would have captured the actual sales made by Overhead Door. To the contrary, Chamberlain need only show that it lost profits as a result of Overhead Door's sales. This could occur, for example, as a result of decreased prices forced by Overhead Door's improper competition. *See, e.g.*, *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 71 F.3d 1573 (Fed. Cir. 1995); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1157 (6th Cir.1978) ("The right to damages caused by price reduction stands on the same ground as that to damages caused by lost sales.").

While Chamberlain does not disagree that Mr. Britven has not offered opinions relating to Lost Profits based on a theory of price erosion, Overhead Door's proposal is still a misstatement of the law that will cause confusion to jurors.

[24]     Overhead Door's proposal follows the AIPLA Model Patent Jury instructions verbatim. *See* AIPLA Model Patent Jury Instructions, available at  https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0;  *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331–32 (Fed. Cir. 2009)

Moreover, the Lost Profits jury instructions already clarify that "under certain circumstances, profits that the Chamberlain lost from being unable to sell related products or from being forced to reduce the price for its products to compete."

Finally, Chamberlain's damages expert Mr. Britven presented no evidence in his expert report regarding any Lost Profits based on a theory of price erosion, so Chamberlain's objection is entirely irrelevant.

[25]     Overhead Door's proposal follows the AIPLA Model Patent Jury instructions which clearly recites that "The burden is on [the Plaintiff]…." *See* AIPLA Model Patent Jury Instructions, available         at         https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0.

Moreover, there is simply no legal bases to support Chamberlain's argument that merely stating that fact that Chamberlain has the burden of proof is "unnecessarily argumentative."

[26]     Chamberlain objects to Overhead Door's unnecessarily argumentative proposed language.

evidence that its product competed in the same market as Overhead Door's accused products, and that Chamberlain would have made a portion of the infringing sales equal to at least Chamberlain's share of that market but for Overhead Door's infringement.  It is not necessary for the Plaintiff to prove that the Plaintiff and Overhead Door were the only suppliers in the market.

### c.    Capacity

The third factor asks whether Chamberlain had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Overhead Door's infringement.  You must determine whether Chamberlain has shown, by a preponderance of the evidence, that it could have supplied the additional products needed to make the sales that it lost, or that someone working with Chamberlain could have supplied the additional products.  Chamberlain also must prove that it more likely than not had the ability to market and sell these additional products.

### d.    Amount of Lost Profits

If you determine that lost profits are appropriate, you must determine the amount of lost profits to award.  The amount of lost profits includes the amount of lost revenues from the accused products, subtracting from that any costs or expenses that Chamberlain would have had to pay to make the lost revenues.  This might include additional costs for making the products, additional sales costs, additional packaging costs, additional shipping costs, etc.  Any costs that do not change when more products are made, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost sales amount.  The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty

In determining whether lost profits have been proven by Chamberlain by a preponderance of the evidence, you may consider expert testimony as well as any other testimony or exhibits relevant to the inquiry.

C.      **Reasonable Royalty**[27]

If you find that Chamberlain has not proven its claim for lost profits, or if you find that it has proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty.  In addition, Chamberlain is also proposing only a reasonable royalty on certain of Overhead Door's allegedly infringing products.

A royalty is a payment made to a patent holder in exchange for the right to make, use, sell, or import the claimed invention.  A reasonable royalty is the royalty payment that a patent holder (such as Chamberlain) and alleged infringer (such as Overhead Door) would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

[The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product and no more.][28] [29]

---

[27]    AIPLA's Model Patent Jury Instructions (2018) at § 10.2.5, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0.

[28]    Chamberlain objects to this proposed instruction as unnecessarily cumulative of Section IX.C.1.a, *infra* at 58.  Over emphasizing this instruction is likely to prejudice the jury to reducing any damage award.

[29]    Overhead Door's proposed language tracks both the language in the 2018 AIPLA Model Patent Jury Instructions as well as the more recent 2019 AIPLA Model Patent Jury Instructions verbatim. *See* AIPLA's Model Patent Jury Instructions (2019) at § 10.2.5.1, available at https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0

Moreover, this language is not duplicative of Section IX.C.1.a as Chamberlain suggests, and merely clarifies the standard to ensure that the jury only awards Chamberlain damages based on the incremental value that the patented invention adds to the end product, as required by law.

### 1.    Hypothetical Negotiation

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patents-in-suit were valid and infringed and that both parties were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

### a.    Value from Patented Features

The law requires that the reasonable royalty correspond to the value of the alleged inventions within the accused products. If unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. Chamberlain bears the burden to establish the amounts attributable to the patented feature.

### b.    Amount of Reasonable Royalty (*Georgia-Pacific* Factors)

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. The parties to this hypothetical negotiation are Chamberlain and Overhead Door at the time infringement began. Some of the kinds of factors that you may consider in making your determination are:

59

1.      The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2.      The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.  Comparable license agreements include those covering the use of the claimed invention or similar technology;

3.      The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business;

6.      The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.      The duration of the patent and the term of the license;

8.      The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.      The utility and advantages of the patented invention over the old modes or devices that had been used for achieving similar results;

10.      The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts;

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying reasonably and voluntarily to reach an agreement; that is, the amount which a prudent licensee — who desired, as a business proposition, to obtain a license to the patented invention — would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license;

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license

You may have heard these factors referred to as the *Georgia-Pacific* factors during testimony. None of these factors are dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

### c.    [Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Overhead Door's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the

royalty rate and the royalty base must reflect the value attributable to the patented technology. In

other words, the royalty base must be closely tied to the invention][30] [31]

### d.    Appropriate Evidence

When determining a reasonable royalty, you may consider evidence concerning the

amounts that other parties have paid for rights to the patent in question, or for rights to similar

technologies.  Thus, comparable license agreements are one factor that may inform your decision

as to the proper amount and form of the reasonable royalty award, similar to the way in which the

value of a house is determined relative to comparable houses sold in the same neighborhood.  Such

licenses may indicate the patented invention's economic value in the marketplace, and they may

indicate the proper form of the royalty structure, such as a lump sum or a running royalty.

A license agreement need not be perfectly comparable to a hypothetical license that would

be negotiated between the patent owner and the alleged infringer in order for you to consider it.

However, if you choose to rely upon evidence from any other license agreements, you must

account for any differences between those licenses and the hypothetically negotiated license, in

---

[30]    Chamberlain objects to this proposed instruction as cumulative of the instructions given in Section IX.C.1.a (Value from Patented Features), *supra* at 56 ("The law requires that the reasonable royalty correspond to the value of the alleged inventions within the accused products. If unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features.  You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.").

Over emphasizing this instruction is likely to prejudice the jury to reducing any damage award.

[31]    Overhead Door's proposed language tracks both the language in the 2018 AIPLA Model Patent Jury Instructions as well as the more recent 2019 AIPLA Model Patent Jury Instructions verbatim. *See* AIPLA's Model Patent Jury Instructions (2019) at § 10.2.5.4, available at https://www.aipla.org/docs/default-source/student-and-public-resources/publications/2019-11-13---aipla-model-patent-jury-instructions.pdf?sfvrsn=1787faa5_0

Moreover, this language is not duplicative of Section IX.C.1.a as Chamberlain suggests, and merely clarifies the standard to ensure that the jury only awards Chamberlain damages based on the incremental value that the patented invention adds to the end product, as required by law.

terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

For purposes of determining a reasonable royalty, you may consider whether, at the time of the hypothetical negotiation, there were any acceptable noninfringing alternatives to taking a license.

### D.    Damages Period[32]

The date that Chamberlain first notified Overhead Door of its claim for patent infringement is the date for the start of damages.  The parties do not agree on that date, and it is up to you to determine what that date is.  Chamberlain must prove by a preponderance of the evidence that Overhead Door was put on notice of the claim for patent infringement as of the date alleged by the Plaintiff, May 9, 2017.

Chamberlain can give notice in either of two ways.  The first way is to give notice to the public in general.  This can be done by marking substantially all products it sold which included the patented invention, or by including on the labeling of substantially all products the word "patent" or the abbreviation "PAT" with the number of the patent. Chamberlain also may give notice by marking substantially all products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number.  [This type of notice to the public in general starts from the date Chamberlain began to mark substantially all of its

---

[32]    AIPLA's Model Patent Jury Instructions (2018) at § 10.1.2, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0.

products that use the invention.]33 34   [If Chamberlain did not mark substantially all of those products with the patent number, then Chamberlain did not provide notice in this way]. [Chamberlain must further prove by a preponderance of evidence that its marking was continuous throughout the damages period.]35 36

A second way that Chamberlain can give notice of its patents is to directly notify Overhead Door with a specific claim that the accused products infringe the patents-in-suit.  This type of notice starts from the date Overhead Door received the notice.

## X.    CLOSING STATEMENTS

With those instructions, we are ready to hear closing arguments from the attorneys in this case.

[*Attorneys Present Closing Statements*]

---

33     Chamberlain's instructions are from the AIPLA's model patent jury instructions.  AIPLA's Model Patent Jury Instructions (2018) at § 10.1.2, *available at* https://www.aipla.org/docs/default-source/default-document-library/2018-07-23-clean---aipla-model-patent-jury-instructions.pdf?sfvrsn=8664a8dd_0.  Chamberlain's proposal includes the proof necessary for Chamberlain to meet the notice requirement.  It necessarily follows that failure to meet this standard would be insufficient to establish notice.  Defendants' proposal restates the same sentence but in the negative.  This cumulative emphasis is unnecessary and prejudicial.

34     Defendants object to the inclusion of Chamberlain's instruction unless the following disputed sentence is included.  Defendant's following sentence follows the AIPLA model instructions Chamberlain is citing.  Chamberlain cannot include only a portion of the instructions that it finds favorable, while omitting the limiting instructions explaining to the jury when Chamberlain has not met its burden.

35     Chamberlain objects to this instruction as cumulative and prejudicial in light of the preceding instructions.

36     *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

## XI.    <u>CONCLUDING INSTRUCTIONS</u>

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect his rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Officer, and I will send that exhibit or exhibits to you. Once you retire, you should select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form such that it reflects your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, you should give a message or question written by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question. After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

I will now hand the verdict form and eight copies of these instructions to the Court Security Officer to deliver to the jury room.

Ladies and Gentlemen, you may now retire to the jury room to deliberate. We await your verdict.

Date:   January 31, 2022                          Respectfully submitted,


                                          By:   */s/ Benjamin C. Elacqua*
                                                Ruffin Cordell
                                                cordell@fr.com
                                                Texas Bar Number 04820550
                                                Daniel Gopenko
                                                Virginia Bar Number 83932
                                                gopenko@fr.com
                                                **FISH & RICHARDSON P.C.**
                                                1000 Maine Ave SW, Suite 1000
                                                Washington, DC 20024
                                                Telephone: 202-783-5070
                                                Facsimile: 202-783-2331

                                                Benjamin C. Elacqua
                                                Texas Bar Number 24055443
                                                elacqua@fr.com
                                                Kathryn Quisenberry
                                                Texas Bar Number 24105639
                                                quisenberry@fr.com
                                                **FISH & RICHARDSON P.C.**
                                                1221 McKinney Street, Suite 2800
                                                Houston, TX 77010
                                                Telephone: 713-654-5300
                                                Facsimile: 713-652-0109

                                                Aamir A. Kazi
                                                Georgia Bar Number 104235
                                                kazi@fr.com
                                                **FISH & RICHARDSON P.C.**
                                                1180 Peachtree Street, 21st Floor
                                                Atlanta, GA 30309
                                                Telephone: (404) 724-2811


                                                Jared A. Smith *(Pro Hac Vice)*
                                                California Bar Number 306576
                                                jasmith@fr.com
                                                **FISH & RICHARDSON P.C.**
                                                12860 El Camino Real, Suite 400
                                                San Diego, CA 92130
                                                Telephone: (858) 678-5070

Scott M. Flanz (*Pro Hac Vice*)
New York Bar Number 5423801
flanz@fr.com
**FISH & RICHARDSON P.C.**
Times Square Tower, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**COUNSEL FOR PLAINTIFF**
**THE CHAMBERLAIN GROUP LLC**

*/s/ David C. Callahan*

David K. Callahan
IL Bar No. 6206671
Kenneth G. Schuler
IL Bar No. 6226036
Marc N. Zubick
IL Bar No. 6308239
Raj Patel
IL Bar No. 6321274
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
kenneth.schuler@lw.com
david.callahan@lw.com
marc.zubick@lw.com
raj.patel@lw.com

S. Giri Pathmanaban
TX Bar No. 24074865
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Fax: (650) 463-2600
giri.pathmanaban@lw.com
Susan Y. Tull
D.C. Bar No. 992644
Gabriel K. Bell
D.C. Bar No. 987112
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
susan.tull@lw.com
gabriel.bell@lw.com

Bradley A. Hyde
CA Bar No. 301145
**LATHAM & WATKINS LLP**
650 Town Center Dr., 20th Floor
Costa Mesa, CA 92843
Telephone: (714) 755-8041
Fax: (714) 755-8290
bradley.hyde@lw.com

Stephen A. Maniscalco
NY Bar No. 5387063
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
stephen.maniscalco@lw.com

Michael C. Smith
TX Bar No. 18650410
**SCHEEF & STONE, LLP**
113 East Austin Street
Marshall, TX 75670
Telephone: (903) 938-8900
michael.smith@solidcounsel.com

Scott W. Breedlove
TX Bar No. 00790361
Nathan Cox
TX Bar No. 24105751
**CARTER ARNETT PLLC**
8150 N. Central Expy, 5th Floor
Dallas, TX 75206
Telephone (214) 550-8188
Fax: (214) 550-8185
sbreedlove@carterarnett.com
ncox@carterarnett.com

**ATTORNEYS FOR DEFENDANTS
OVERHEAD DOOR CORPORATION
AND GMI HOLDINGS INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via email on this 31st day of January, 2022.

*/s/ Benjamin C. Elacqua*
Benjamin C. Elacqua