IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC, § <br> § <br> *Plaintiff*, § <br> § <br> § <br> v. § <br> § CIVIL ACTION NO. 2:21-CV-00084-JRG <br> § <br> OVERHEAD DOOR CORPORATION, § <br> GMI HOLDINGS INC., § <br> § <br> § <br> *Defendants*. § | |

# ORDER

Before the Court is Plaintiff's Motion to Reinstate Claim 19 of the '404 Patent Based on Defendants' Material Misrepresentation (the "Motion") filed by Plaintiff The Chamberlain Group, LLC ("Chamberlain"). (Dkt. No. 332). In the Motion, Chamberlain asks the Court to reconsider its previous summary judgment ruling with respect to claim 19 of U.S. Patent No. 8,587,404 (the "'404 Patent"). Having considered the Motion and subsequent response (Dkt. No. 341), the Court finds that the Motion should be and hereby is **DENIED**.

## I.    BACKGROUND

Chamberlain asserted claims 4, 6–9, 11, and 16–20 of the '404 Patent against certain garage door openers (the "Accused Products") sold by Defendants Overhead Door Corporation and GMI Holdings, Inc. (collectively, "Defendants"). (Dkt. No. 164 at 4). The '404 Patent teaches selectively providing a notification that a movable barrier (*e.g.*, a garage door) is about to move. (Dkt. No. 164-1 at 1:40–52). Since this decision may depend on where the signal to open or close the garage door originated from—*i.e.*, whether the operation is "attended" or "unattended"—the '404 Patent further teaches providing a notification for unattended closes (*e.g.*, where the

command comes from a user closing the door using her smart phone out of sight of the barrier) while not providing a notification for attended closes (*e.g.*, where the command comes from a car-based "clicker"). (*Id.*). Each asserted claim, either expressly or in view of the Court's Claim Construction Order, requires "determining" whether to close a movable barrier in combination with operating an "imminent motion notification" (*i.e.*, an alarm), based on some aspect of a transmitted signal. (*Id.* at 5–6). The Accused Products can be operated by a wall console, a radio frequency ("RF") remote, or a mobile device application. (*Id.* at 6). The overhead unit of the Accused Products contains a motor and motor control circuit board (together, the garage door opener, or "GDO") and an integrated door control module (the "iDCM"). (*Id.* at 7). The GDO and iDCM are connected by a wire. (*Id.*). As illustrated in the figure below, the GDO receives inputs from the wall console and the RF remote, while the iDCM receives inputs from mobile applications over the internet (*e.g.*, through a cellular network or Wi-Fi). (*Id.* at 10–11).



When the GDO receives signals from the wall console and RF remote, the GDO immediately opens the garage door. (*Id.* at 7). On the other hand, when the iDCM receives signals from the mobile application, it flashes and sounds an alarm to provide a warning (also called a "UL alert").

(*Id*.). Then, after a delay, the iDCM sends a signal to the GDO via a wire to open the garage door. (*Id*.).

Defendants moved for summary judgment of non-infringement of all asserted claims of the '404 Patent. (Dkt. No. 164). Defendants argued that the Accused Products do not infringe because they do not "determine" whether to close a moveable barrier in combination with operating an imminent motion notification (*i.e.*, an alarm). (*Id*. at 10). Defendants contended that, instead, the GDO and iDCM in the Accused Products receive either local or internet-based commands, but cannot receive both, and thus the Accused Products do not contain any processing or logic that determines whether to alarm for attended and unattended closes. (*Id*. at 15). In this way, Defendants analogized the GDO and iDCM to separate railroad "tracks," where local signals received from the RF remote or wall console originate and travel exclusively down the GDO track, while the internet-based signals received from the mobile application originate and travel exclusively down the iDCM track. (Dkt. No. 241 at 8).

Chamberlain's principal response was that Defendants engage in a box-drawing exercise to isolate components of the claimed "movable barrier operator" and allege that "none of the boxes alone can practice the full scope of the claims." (Dkt. No. 219 at 12–13). Under Chamberlain's view, the entire head unit of the Accused Products is the "moveable barrier operator," and it is improper to focus on the functions of separate subsystems—*i.e.*, the GDO and iDCM—rather than the head unit as a whole. (*Id*.). Chamberlain claimed that the opinions of its expert, Dr. Villasenor, create a material question of fact because the Accused Products perform the "determining" requirement because they receive commands from a mobile app as a "JSON" [JavaScript Object Notation] message on a pre-established communication path, and then generate a

3

"DCM_SET_PARAMETER" message indicating the garage door should be closed and the alarm should operate. (Dkt. No. 219-2 ¶ 137).

The Court granted Defendants' motion with respect to claims 4, 6–9, and 16–20, finding Chamberlain had failed to identify a factual dispute as to whether the Accused Products make any determination regarding whether to alarm or not alarm in combination with opening the garage door. (Dkt. No. 331 at 3). The Court denied the motion with respect to claim 11, however, finding that Chamberlain's infringement theory presents a genuine issue of material fact that is appropriately decided by a jury. (*Id.*). Specifically, the Court found that claim 11's recitation of "processor"—which was not construed at claim construction and is thus governed by its plain and ordinary meaning—creates a material question of fact as to whether some processing or logic in the head unit of the Accused Products performs the "determining" step. (Dkt. No. 322 at 107:5–108:5). The Court allowed leave to each party to serve a supplemental expert report to opine as to whether the plain and ordinary meaning of "processor" in the context of claim 11 encompasses the recited "determining" step. (*Id.*).

Chamberlain now seeks reconsideration of the grant of summary judgment with respect to claim 19 of the '404 Patent.[1] It argues that during the pretrial hearing, counsel for Defendants "made material misrepresentations to the Court about the functioning of [the Accused Products], which resulted in summary judgment of noninfringement of claims 4, 6–9, and 16–20." (Dkt. No. 332 at 2).

---

[1] Chamberlain contends that Defendants' alleged misrepresentations affect all the claims subject to the grant of summary judgment, however "[t]o avoid burdening the Court with the full impact of OHD's misrepresentations, Chamberlain requests that the Court reinstate only claim 19." (Dkt. No. 332 at 2).

## II.     DISCUSSION

Chamberlain asserts that during the pretrial conference, Defendants "affirmatively and repeatedly represented that its products would always alarm if a signal was received over its Wi-Fi interface, and that is demonstrably untrue." (*Id*. at 5). Chamberlain identifies repeated statements of Defendants' counsel stating that "the accused iDCM products make no decision as to whether to alarm." (*Id*. at 6) (citing Dkt. No. 322 at 80:25-81:2 ("And if that source or if that signal is coming from your remote phone, it sounds an alarm a hundred percent of the time, always. It never decides to do anything else but sound the alarm.")); *see also* Dkt. No. 322 at 81:14–15, 84:24–25, 83:11–12.

After the pretrial conference, Chamberlain requested renewed inspection of Defendants' source code. (*Id*. at 2). Chamberlain contends that during this renewed inspection, it "confirmed that the accused products contain a function called 'IsItOkToMoveDoor' that determines whether or not to alarm in response to a received Wi-Fi command, which directly contradicts [Defendants'] repeated statements during the pretrial conference." (*Id*. at 2). Chamberlain now submits a supplemental declaration from its expert, Dr. Villasenor, in which he analyzes the "IsItOkToMoveDoor" function in the source code of the Accused Products. (Dkt. No. 332-1). Dr. Villasenor identifies specific lines of source code which allegedly illustrate that "[t]he function 'IsItOkToMoveDoor' makes a decision of whether to alarm by processing a series of 'if-then' statements, which drive a determination either to issue or not to issue an imminent motion notification alarm." (*Id*. at 4–5). Chamberlain argues that as part of this process in the source code, the movable barrier operator will only issue an alarm if none of the failure outcomes set forth in the source code are returned. (Dkt. No. 332 at 4). For example, Chamberlain contends an alarm will not issue if the iDCM determines that (1) the received JSON message from the remote Wi-Fi

server does not contain a valid command on the Wi-Fi pathway, (2) the movement of the door is being blocked by a signal from the GDO, (3) the door is already stopped at the requested position, or (4) the door is already moving. (*Id*. at 3–4). In Chamberlain's view, this series of functions shows that Defendants' "affirmative argument and purported evidence … was demonstrably false and fundamentally misleading." (*Id*. at 9). In addition, Chamberlain argues the source code "shows that the iDCM does consider information received from the GDO board," contrary to Defendants' representations. (*Id*. at 5).

Defendants respond that the alleged misrepresentations were not new, as Chamberlain was on notice for months of Defendants' contention that signals from a mobile app to the iDCM via Wi-Fi always result in an alarm. (Dkt. No. 341 at 1). Defendants further argue that the alleged misrepresentations were not inaccurate and Chamberlain's request for a "do over" should be rejected because it fails to show that the Accused Products make any determination as to whether to alarm or not based on the signal's origin. (*Id*. at 6, 15). Defendants submit a supplemental declaration from their source code expert, Mr. Baer, in which he confirms his previous analysis with respect to the "IsItOkToMoveDoor" function. (Dkt. No. 341-2). Mr. Baer states that, "[a]s the name suggests, the function IsItOKToMoveDoor checks whether it is 'OK' to move the door," and "[i]f it is not OK to move the door, the iDCM will do nothing." (*Id*. at 5). Mr. Baer goes on to assert that "Dr. Villasenor's suggestion that the source code will ever execute a Wi-Fi command to move the door without providing the pre-movement warning is wrong." (*Id*.).

As to the issue of earlier access to the source code, Defendants argue that "Chamberlain had access to [Defendants'] source code since June 18, 2021, and began inspecting said source code on July 12, 2021—more than seven months before the filing of its Motion—and reviewed it 18 times prior to the Pretrial Hearing." (Dkt. No. 341 at 14). Defendants also contend that Dr.

Villasenor was aware of the specific source code file he cites in support of its Motion because he relied the very same module of code in his opening expert report. (*Id.*) (citing Dkt. No. 341-2 ¶¶ 129, 151, 153-155, 167). In Defendants' view, Chamberlain could have and should have cited this evidence in its expert reports and briefing regarding the motion for summary judgment, however the time for doing so has come and gone.

The Court agrees with Defendants that Chamberlain effectively seeks a "do over" to present entirely new evidence—or, more generously, to present existing evidence more cogently. Chamberlain has failed to point to any new facts or any manifest change in the law which would justify reconsideration of the Court's summary judgment order. Rather, the evidence raised in the Motion was available to Chamberlain for months before the pretrial conference. Indeed, Chamberlain had access to Defendants' source code since June 18, 2021, and began inspecting that source code on July 12, 2021. (Dkt. No. 341 at 14). Chamberlain even acknowledges in its Motion that it "address[ed] this issue in its expert reports and declarations submitted in opposition to summary judgment." (Dkt. No. 322 at 8). Chamberlain further acknowledges that in his expert report, "Dr. Villasenor cited the [specific] source code [raised in the Motion] and opined that this code confirms infringement." (*Id.* at 10).

Chamberlain's attempted explanations do not justify its lack of diligence. Far from discovering at the pretrial conference Defendants' contention that internet-based signals to the iDCM always result in an alarm, Chamberlain was on notice of the same for several months. Defendants filed their motion for summary judgment on December 9, 2021 (almost three months before Chamberlain filed its Motion), wherein Defendants repeatedly stated their view that the iDCM always issues an alarm when it receives a signal from a mobile app. (Dkt. No. 164, Statement of Undisputed Material Facts, ¶ 9–10; *see also id.* at 11). Chamberlain had the

opportunity to rebut—and did rebut—this assertion in its briefing related to the summary judgment motion. (Dkt. No. 219 at 12–13). This chain of events shows extensive notice with respect to Defendants' position—rather than a lack thereof.

Finally, rather than responding to unanticipated representations from Defendants, it appears that Chamberlain through its Motion seeks to revive an argument made during the pretrial conference. Chamberlain's Motion asserts that the claimed "determining" step occurs because the system validates "whether the validated JSON message originating from a remote Wi-Fi server (i.e., the out-of-sight receive path) contains a valid command." (*Id*. at 3). However, Chamberlain's counsel made this exact argument when explaining how the head unit validates JSON messages. (Dkt. No. 322 at 87:4–11). Thus, this argument was aired in open court during the oral argument, and did not "le[ad] the Court to resolve the dispute" in Defendants' favor, as Chamberlain suggests. (Dkt. No. 332 at 10). In any event, the time for reviewing source code, analyzing the same, and presenting such analysis through fulsome, detailed opinions has come and gone. It appears that Chamberlain failed to present its strongest evidence and arguments through its expert reports and summary judgment briefing, and now seeks an eleventh-hour opportunity to supplement the same. The Court declines such request. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2016 WL 3475325, at *1 (E.D. Tex. Jan. 26, 2016) ("[L]itigants are expected to present their strongest case when the matter is first considered.") (citation omitted). Accordingly, the Court further instructs the parties that expert declarations submitted as part of the briefing on the Motion are not properly considered as expert disclosures to be relied upon at trial.

### III.   CONCLUSION

For the reasons stated above, Plaintiff's Motion to Reinstate Claim 19 of the '404 Patent Based on Defendants' Material Misrepresentation (Dkt. No. 332) is **DENIED**.

**So ORDERED and SIGNED this 4th day of March, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE