**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC<br><br>    Plaintiff,<br> v.<br><br>OVERHEAD DOOR CORPORATION and<br>GMI HOLDINGS INC.,<br><br>    Defendants. | Case No. 2:21-cv-0084-JRG<br><br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY JURY INSTRUCTIONS[1] [2]**

## I. DUTY OF JURY

Ladies and Gentlemen, you have been sworn as the jurors in this case. As the jury, you are the sole judges of the facts. You will decide and determine what all the facts are in this case. As the judge, I will give you instructions on the law. I will decide questions of law that arise during the trial. I am responsible for managing the flow of the trial and maintaining the decorum of the courtroom.

After the all of the evidence has been presented, I will give you detailed instructions about the law to apply in deciding this case and I will give you a list of questions that you are then to answer. As I told you, this list of questions is called the verdict form. Your answer to those

---

[1] Unless otherwise noted, instructions are adapted from *Optis Wireless Tech. LLC, et al. v. Apple Inc.*, 2:19-cv-0066-JRG, Trial Tr. at 174-205 (Preliminary Jury Instructions) (E.D. Tex. Aug. 3, 2020).

[2] Competing proposals are included in brackets with proposals by Chamberlain highlighted in yellow and proposals by Overhead Door highlighted in green. Portions to which both parties agree are not highlighted.

questions will need to be unanimous and those unanimous answers will constitute the verdict in this case.

## II.     <u>**PATENT LAW OVERVIEW**</u>

Before the parties present their case, I will briefly tell you what this case is about. As you know, it involves a dispute regarding certain United States patents. I know that each of you saw the video this morning produced by the Federal Judicial Center, but I need to give you some instructions on the record about a patent and how one is obtained.

Patents are granted or denied by the United States Patent and Trademark Office, often referred to, for short, simply as the USPTO or PTO. A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application is filed to seek money damages from others making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.

A patent is a form of property called intellectual property. Like other forms of property, a patent can be bought or sold. A violation of a patent holder's rights is called "infringement." A patent holder may enforce a patent against persons it believes to be infringers by filing a lawsuit in federal court, and that is what we have in the case before us.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the United States Patent and Trademark Office. The PTO is an agency of the United States government that employs trained examiners who review patents or patent applications. The patent application includes what is called a "specification." The specification within a patent application contains a written description of what the claimed invention is, how it works, how to make it, and how to use it. The specification concludes, or ends, with one or more numbered sentences. These numbered sentences are called patent "claims."

When a patent is granted by the PTO, it is the claims that determine what the patent covers. The claims define the boundaries of its protection and give notice to the public of those boundaries. Patent claims exist in two forms referred to as independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It is not necessary to look at any other claim to determine what an independent claim covers. On the other hand, a dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements or limitations of the claim from which it depends, as well as the additional limitations recited within the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim itself and the claim or claims from which it refers or from which it depends.

The claims of the patents-in-suit use the word "comprising." Comprising means including or containing. A claim that includes the word comprising is not limited to the devices having only the elements that are recited in the claim but also covers other devices that add additional elements. Let me give you an example. If you take, for example, a claim that covers a table, the claim recites a table comprising a tabletop, four legs, and glue. That claim will cover any table that contains a tabletop, four legs, and glue even if it contains other structures such as wheels that go on the end of the legs or leaves that go in the tabletop. Now, that is a simple example using the word comprising and what it means. In other words, it can have other features in addition to those that are covered by the patent.

After an applicant files an application with the PTO, an examiner is assigned by the PTO and that examiner reviews the application to determine whether or not the claims are patentable. That is to say, whether the claims are appropriate for patent protection and whether the specification adequately describes the invention that is claimed. In examining a patent application,

the examiner reviews certain information about the state of the technology — or state of the art — at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or that was submitted with the application. This type of information is called prior art.

The examiner reviews this prior art to determine whether the invention is truly an advance over the state of the art at the time. Prior art is defined by law and, at a later time, I will give you specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed. A patent contains a certain list of prior art that the examiner has considered. The items on this list of prior art, which the examiner has considered, are called cited references.

After the prior art search and an examination of the application, the PTO examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable, and thus, it would be allowed. This writing from the examiner to the applicant is called an Office Action. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims. The applicant also has the chance to change or amend the claims or to submit new claims. The papers generated during these communications back and forth between the applicant and the examiner are called the prosecution history.

This prosecution history process may go back and forth between the applicant and the examiner for some time until the examiner is ultimately satisfied that the application meets the requirements for a patent. In that case, the patent is issued as a United States patent, or in the alternative, if the examiner ultimately concludes that the application should be rejected, then no

patent is issued.  Sometimes patents are issued after appeals within the Patent and Trademark Office or to a court.

An issued United States patent is presumed to be valid under the law.  That being said, a person accused of infringement has the right to argue in federal court that a claimed invention in a patent is invalid.

It is your job as the jury to consider the evidence presented by the parties and to determine whether the Defendants have proven that any patent is invalid.

## III.    <u>CASE OVERVIEW</u>

To help you follow the evidence, I will give you a brief summary of the positions of the parties.  As you know, the party that brings a lawsuit is called the Plaintiff.  The Plaintiff in this case is The Chamberlain Group, LLC.  You will hear the Plaintiff referred to simply as Chamberlain or the Plaintiff throughout the trial.  The parties against whom a lawsuit is filed are called the Defendants.  The Defendants in this case are Overhead Door Corporation and GMI Holdings Inc.  You will hear the Defendants referred to simply as Overhead Door or the Defendants.

As I mentioned to you during jury selection earlier today, this is a case of alleged patent infringement.  There are three separate United States patents that have been asserted by Chamberlain in this case against Overhead Door.

- The first patent at issue in this case is U.S. Patent No. 8,587,404.  As you may know, patents are commonly referred to by the last three digits of the patent number.  So this particular patent will be referred to as the '404 patent.

- The second patent at issue in this case is U.S. Patent No. 9,644,416, referred to as the '416 patent.

- The third U.S. patent at issue in this case is U.S. Patent No. 8,144,011, referred to as the '011 patent.

You will hear these three patents referred to collectively at various times throughout the trial as the patents-in-suit or asserted patents. Both of these things mean the same thing — that is, the three patents that I have just identified for you. Chamberlain claims that all three of these patents-in-suit generally relate to garage door operator technologies.

Chamberlain, contends that Overhead Door infringes certain claims of the patents-in-suit by making, using, importing, selling, or offering to sell in the United States certain (i) integrated Wi-Fi garage door operators (also called iDCM products); and (ii) retrofit kits (also called eDCM products), which allow a user to convert a traditional non-Wi-Fi garage door operator into a Wi-Fi enabled operator. The claims that Chamberlain accuses Overhead Door of infringing are called the asserted claims. Chamberlain further contents that Overhead Door willfully infringed these patent claims. As a result, Chamberlain contends that it is entitled to money damages as a result of that infringement.

Overhead Door denies that its accused products have infringed the asserted claims of the patents-in-suit. In other words, Overhead Door contends that it did not make, use, sell, or offer for sale within the United States, or import into the United States, any products that infringe any of the asserted claims of the patents-in-suit. Overhead Door denies that it has willfully infringed the patents-in-suit. Overhead Door also denies that Chamberlain is entitled to any damages.

Overhead Door also contends that the asserted claims of the patents-in-suit are invalid because they are obvious in the light of prior art. Overhead Door also contends that the asserted claims of the '404 patent are invalid because the inventions of the '404 patent were derived from

6

another person or group and/or all of the actual inventors of the '404 patent were not named on the patent as inventors.

Finally, Overhead Door contends that, to the extent that any of the asserted claims are found to be valid and infringed, any damages awarded to Chamberlain should be limited because Chamberlain failed to provide Overhead Door with sufficient notice of the patents-in-suit required under the patent laws of the United States.

I know that there are lots of new words and concepts that have been thrown at you since you arrived for jury duty this morning. I am going to define a lot of those words and concepts for you as we go through these instructions. The attorneys are going to discuss them in their opening statements. And the witnesses are going to help you by going through their testimony to help understand these words and concepts. So please, do not feel overwhelmed at this stage. It will all come together as we go through the trial, I promise.

## IV.    <u>**DUTIES**</u>

One of your jobs in this case is to decide whether Chamberlain has proven that the asserted claims of the patents-in-suit have been infringed and whether Overhead Door has proven them to be invalid. If you decide that any claim of the patents-in-suit has been infringed by Overhead Door and is not invalid, then you will need to decide whether that infringement was willful and what amount of money damages should be awarded to Chamberlain as compensation for that infringement that you have found. My job in this case is to tell you what the law is, handle the rulings on evidence and procedure, and to oversee the trial effectively and efficiently. It is specifically my job to determine the meaning of any claim language from within the patents-in-suit that needs interpretation.

I have already determined the meanings of the claims of the patents-in-suit, and you must accept those meanings that I give you, which the lawyers sometimes call "constructions." You

must use those meanings when you decide whether any particular claim has or has not been infringed and whether you decide any particular claim is or is not invalid. You will be given a document in a moment that reflects these meanings that I have already decided. For any claim term for which I have not provided you with a specific definition, you should apply the plain and ordinary meaning of the term. If, however, I provided you with a specific definition, you are to apply my definition to those terms throughout the case. However, my interpretation of the language of the claims should not be taken by you as an indication that I have a personal opinion or any opinion regarding issues such as infringement and invalidity. Those are your issues alone to decide.

I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and reach your verdict. In deciding the issues that are before you, you will be asked to consider specific legal rules, and I will give you an overview of those rules now. Then, at the conclusion of the case, I will give you much more detailed instructions.

## V.     <u>OVERVIEW OF ALLEGATIONS</u>

The first issue that you are asked to decide is whether the Overhead Door has infringed any of the asserted claims of the patents-in-suit. Infringement is assessed on a claim-by-claim basis. Since infringement is assessed on a claim-by-claim basis, there may be infringement as to one claim but no infringement as to another claim. The Plaintiff, Chamberlain, must show by a preponderance of the evidence that a claim has been infringed. A preponderance of the evidence means that the evidence persuades you that a fact is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. There are a few different ways that a patent can be infringed, and I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. But, in general, a defendant may infringe the asserted patent by making, using, or selling or offering for sale in the United

States or importing into the United States a product meeting all the elements or requirements of a claim of the asserted patent.

A claim can also be infringed under what is called the "Doctrine of Equivalents." A patent claim is infringed under the Doctrine of Equivalents if there is an equivalent part in Overhead Door's product for each element of the patent claim that is not literally present in Overhead Door's product. An equivalent of an element is a component that is only insubstantially different from the claimed element. One way of showing that an element infringes under the Doctrine of Equivalents is to show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product.

The second issue that you will be asked to decide is whether any of the patents-in-suit are invalid. Invalidity is a defense to infringement. Therefore, even though the United States Patent and Trademark Office, or PTO, has allowed the asserted claims and even though a United States patent as issued by the PTO is presumed to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented during the trial of this case. Overhead Door must show by clear and convincing evidence that a claim is invalid. This is a higher standard than the preponderance of the evidence standard. To meet the clear and convincing evidence burden of proof, you must be left with an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

These two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil

case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence.

[To be entitled to patent protection an invention must be new, useful, and nonobvious. As I noted, a patent gives its owner the right to exclude other people from making, using, selling or offering for sale what is covered by the patent. Everyone, however, has the right to use existing knowledge and principles. A patent cannot legally take away from people their right to use what was known or obvious from what was known before the invention was made. Thus, a patent will not be valid if it deprives people of the right to use old or known products or processes, or products or processes that would have been obvious. That which is already known is called the "prior art." You will hear about the prior art relating to the asserted patents during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.][3] [4]

---

[3]     Chamberlain objects to this language as cumulative of the discussion of invalidity in the paragraph immediately following and in Section II (Patent Law Overview), *supra* at 3-4. Overhead Door is incorrect in its statement below that there is no Patent Law Overview section in these preliminary instructions.

Overemphasis and cumulative instructions related to the requirements for patenting is unduly prejudicial to Chamberlain. Indeed, the model jury instructions from which Overhead Door obtained this instruction includes this paragraph in the section entitled "The Patent System, Generally," and not in the overview of allegations. Moreover, Overhead Door has withdrawn its anticipation defenses and so emphasizing defenses no longer at issue in the case is likely to confuse the jury and prejudice Chamberlain.

[4]     Overhead Door's proposal follows the ABA Model Patent Jury instructions. *See* https://www.ded.uscourts.gov/sites/ded/files/chambers/ABAModelPatentJuryInstructions.pdf, at 5. The language is not duplicative of the following paragraph and provides helpful context for a jury to understand the conditions for patentability before getting into the specific requirements for anticipation, obviousness, and written description. While Chamberlain notes that this language is found in the "Patent Law Overview" section of the ABA Model Patent Jury instructions, the parties did not include substantive discussion of invalidity in a separate patent law overview section in these preliminary instructions, so said instructions appropriately belong in the Overview of Allegations section, which also contains descriptions of the other relevant patent law concepts.

You may find a patent claim to be invalid for a number of reasons, including because it is obvious. For a patent claim to be invalid because it is obvious, Overhead Door must show that all of the elements of a claim would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions when deciding whether the inventions claimed in the patents-in-suit are obvious, and I will provide you with more detailed instructions on these questions at the conclusion of the trial.

Another way that a claim can be found invalid is if not all of the actual inventors were named on the patent as inventors or if the person named as the inventor on the patent is not he true inventor because they "derived" the invention from others. An invention is said to be "derived" from another person or group if that person or group conceived of the patented invention and communicated that conception to the inventor named on the patent.

If you decide that any claim of a patent has been infringed and is not invalid, you will need to decide whether the infringement of that claim by Overhead Door was willful. I will explain the legal requirements in detail at the conclusion of the trial but, in short, infringement is willful if it was deliberate or intentional.

If you decide that any claim of a patent has been infringed and is not invalid, you will also need to decide what amount of money damages should be awarded to Chamberlain. A damages award must be adequate to compensate the patent holder for the infringement. This could be measured based on Chamberlain's lost profits or what Chamberlain would have received had it been paid a reasonable royalty. Lost profits means any profits that Chamberlain would have made but for the infringing activities. Reasonable royalty means what two reasonable people — in this case, the patent holder Chamberlain and the alleged infringer Overhead Door — would have negotiated for a license to the patents. The damages you award, if any, are meant to compensate

11

the patent holder, and are not meant to punish Overhead Door.  Additionally, damages cannot be speculative, and Chamberlain must prove what profits it lost or what two reasonable people would have negotiated by a preponderance of the evidence.

I will give you more detailed instructions on the calculation of damages at the conclusion of the case.  However, please be aware that the fact I am instructing you on damages does not mean that Chamberlain is or is not entitled to recover damages.

## VI.    <u>WITNESS TESTIMONY</u>

Throughout the trial, you are going to be hearing from a number of different witnesses in this case, and I want you to keep an open mind while you are listening to the evidence and not decide any of the facts until you have heard all of the evidence.  While the witnesses are testifying, remember that you will have to decide the degree of credibility and believability to allocate to the witness and to the evidence.  So, while the witnesses are testifying, you should be asking yourselves things like this:  Does the witness impress you as being truthful?  Does he or she have a reason not to tell the truth?  Does he or she have any personal interest in the outcome of the case?  Does the witness seem to have a good memory?  Did he or she have the opportunity and ability to observe accurately the things that they testified about?  Did the witness appear to understand the questions clearly and answer them directly?  And, of course, does the witness's testimony differ from the testimony of any other witnesses?  And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you are listening to each and every witness in this trial. I also want to talk to you briefly, ladies and gentlemen, about expert witnesses.

When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field — we call them an expert witness — is permitted to testify to you about his or her opinions on those technical matters.  However, you are

not required to accept an expert opinion or an expert witness or any other witness's opinions at all. It is up to you to decide whether an expert witness is correct or incorrect or whether or not you believe what they say. It is also up to you to determine whether or not any other witness in the case is correct or incorrect or whether you believe what they have to say. Those kinds of decisions, judging the credibility and believability of each and every witness in the case, are particularly within your area of responsibility as the jury.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give it weight. Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

During the course of the trial, it is possible that there will be testimony from one or more witnesses that are going to be presented to you through what we call a deposition. In trials such as this, it is tough to get every witness here in person at the same time. So prior to the trial, lawyers take the depositions of the witnesses. In the deposition, a court reporter is present, the witness is present and sworn and placed under oath, just as if he or she were in open court, and the lawyers ask those witnesses questions, and those questions and the answers are recorded and taken down. Portions of those questions and answers — often as video recordings — may be played back to you, the jury, as a part of this trial so you can see that witness and hear that testimony even though they are not physically present in the courtroom.

That deposition testimony is entitled to the same consideration, insofar as possible, and is to be judged as to the credibility, weight, and otherwise considered by you, the jury, in the same

way as if the witness had been present and given that testimony in person from the witness stand in open court.

## VII.   <u>EXHIBITS & OBJECTIONS</u>

During the trial of the case, it is possible that the lawyers will make objections.  If they do, I will give rulings on those objections.  It is the duty of an attorney for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not proper under the orders of the Court or the Rules of Evidence or Procedure.

Upon allowing the testimony or other evidence to be introduced over the objection of an attorney, I do not, unless expressly stated, indicate an opinion as to the weight or effect of such evidence.  As I have said before, you, the jury, are the sole judges of the credibility and believability of all the witnesses and the weight and what effect to give to all the evidence.

If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if I had allowed them to answer the question.  On the other hand, if I overrule an objection addressed to a question to a witness, then you should consider the question and the witness's answer just as if no objection had ever been made.

You should know, that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in a case, but those comments from the judge may be disregarded by the jury in their entirety because, as I have told you, it is the jury that is the sole judges of the facts in the case, the credibility of the witnesses, and the amount of weight you want to give to each witness's testimony.

## VIII.   <u>STIPULATIONS</u>

The parties have agreed or "stipulated" to the following facts.  You must accept these as true in your consideration of the facts and issues in the case.

(1) The Chamberlain Group LLC owns all rights to the Patents-in-Suit.

(2) The '404 patent was filed on March 24, 2009. The '404 patent issued November 19, 2013. The effective filing date of the '404 patent is March 24, 2009.

(3) The '416 patent was filed on March 24, 2014, as a continuation of a family of patents that begins with application No. 13/671,601, filed on November 8, 2012, now U.S. Patent No. 9,122,254. The '416 patent issued May 9, 2017. The '416 patent has an effective filing date of November 8, 2012.

(4) The '011 patent was filed on December 14, 2010. It claims priority as a continuation application to application No. 11/044,928, filed on January 28, 2005, now U.S. Patent No. 7,482,923. The '011 patent issued on March 27, 2012. The '011 patent has an effective filing date of May 5, 2009.

(5) The Chamberlain Group LLC is a limited liability company organized under the laws of Delaware, with its principal place of business at 300 Windsor Drive, Oak Brook, Illinois 60523.

(6) Overhead Door is a corporation incorporated under the laws of the State of Indiana, with its principal place of business at 2501 South State Highway 121, Suite 200, Lewisville, Texas 75067.

(7) Defendant GMI, doing business as The Genie Company, Genie Company, and/or Genie, is a corporation incorporated under the laws of the State of Delaware, with its principal place of business at One Door Drive, Mount Hope, OH 44660.

(8) The inventions disclosed in U.S. Patent No. 8,587,404 are not the only way to comply with the UL 325 standard.

## IX.  JURY NOTEBOOKS

In a moment, each of you are going to be given a juror notebook, and in the back of that notebook, you're going to find a legal pad that you can use to take notes on if you choose to throughout the course of the trial.  It will be up to each of you to decide whether you want to take notes about the witnesses or anything else regarding the trial and how detailed you want those notes to be if you decide to take notes.  Remember, those notes are for your own personal use.  You still have to rely on your memory of the evidence, which is why you should be paying close attention to the testimony of each and every witness.

You should not abandon your own recollection because somebody else's notes indicate something different.  Your notes, if you keep them, are to refresh your recollection only, and that is the only reason you should be keeping them.

I am now going to ask our Court Security Officer to pass out these juror notebooks to each of the members of the jury.  In these notebooks, ladies and gentlemen, you will see that you have a copy of both of the patents-in-suit that are at issue in this case and that we've talked about.

You will also find in there that you have witness pages for each witness that might testify in the case with a picture of the witness at the top of the page, and the remainder of the page available for note-taking there if you choose to take notes.  You will also see that you have a chart in there identifying the language from the asserted claims where I have already construed that language and given you a construction or definition to apply when answering the questions in the verdict form.  As I have mentioned, in the back, you will find a legal pad for note-taking.  In the front pocket, you should find both a highlighter and a pen that you can use for those purposes, as well.  Each of these notebooks are just the same.

In the front cover please write your name so that you make sure to keep yours, and do not get it confused with anybody else's.  You each need to keep your own notebook in your own

possession.  In that regard, you should either have that notebook with you in the jury box, just like you do now, or you should have it in the jury room with you.  These are not to be left lying around where someone else can pick them up.  Either have them with you in the jury box, or if you have left for the evening, leave them on the table in the jury room. You can find your notebook the next morning and have it with you when you come back into the courtroom.

Having said that, there may be times over the course of the trial where we take a recess or a quick break, and it may be a short recess.  If it is, I may say, ladies and gentlemen, you can simply close and leave your notebooks in your chair in the jury box.  That means you are not going to be gone very long, and it is fine to leave it there rather than carry it back and forth to the jury room with you.  Unless I give you those kind of specific instructions, it should be in your possession whenever you are here in court.  When you go home in the evening, it should be in the jury room on the table where you can find it the next morning.

X.    **OPENING STATEMENTS & PRESENTATION OF EVIDENCE**

In a moment, we are going to hear opening statements from the lawyers.  These opening statements are designed to give you a roadmap of what each side expects that the evidence will show in this case.  You should remember throughout the trial, ladies and gentlemen, that what the lawyers tell you is not evidence.  I want to say that again.  What the lawyers tell you is not evidence.

The evidence is the sworn testimony that will be presented from the witness stand under oath and subject to cross-examination, whether it is through a live witness or through a deposition witness, as I have already described to you.  The evidence will include the admitted exhibits in this case.

That is the totality of the evidence in this case.  What the lawyers tell you is not evidence. What they tell you, in fact, is their impression of what the evidence should be.  They have a duty

17

to point out to you where they believe the evidence is. But, remember, what they tell you is not evidence.

After the opening statements are given by each side, Chamberlain will have the opportunity to call their witnesses and put on their evidence. This is called Chamberlain's case-in-chief. When Chamberlain has finished putting on its witnesses and evidence, it will rest its case-in-chief, and then Overhead Door has the opportunity to call its witnesses and put on its evidence. That is called Overhead Door's case-in-chief. After Overhead Door rests its case-in-chief, then Chamberlain has the opportunity, if it chooses, to call what are called rebuttal witnesses to address the evidence that Overhead Door has put on.

After Chamberlain puts on any rebuttal witnesses, if they choose to, then you will have heard all the evidence in this case. When you have heard all the evidence in this case I will give you written instructions on the law that we have talked about and that you are to apply to the evidence that you have heard, and you will have your own individualized printed copy of those written instructions on the law that I am going to give you. And you may take that copy from me with you back to the jury room when you retire to deliberate.

These instructions that I will give you at that point in written form, and I will give them to you orally as well, those are called the final instructions to the jury. After these instructions are given by me to you, the lawyers will present their closing arguments, which are designed to point out what they believe they have proved over the course of the trial and through the evidence that has come in during the trial. Once you have heard the lawyers' closing arguments, you will retire to the jury room to consider the questions in the verdict form and reach a unanimous decision as to those questions. Those unanimous answers to those questions, as I have told you, will constitute your verdict in this case.

**XI.** **CONDUCT OF JURY**

Let me repeat my earlier instruction to you. You are not to discuss this case among yourselves or with anyone else during the trial. When I said not discuss the case, I mean not communicate about it in any way. That applies to anybody outside this courtroom. Until you have heard all the evidence in this case, ladies and gentlemen, it applies to all of you with each other. During the course of the trial, at lunch breaks and recesses, you are not to discuss the evidence among yourselves.

Only when you have heard all the evidence and only when I instruct you to retire to the jury room and deliberate on your verdict after I have given you my final instructions and you have heard closing arguments from the attorneys, then is the first time that you are to discuss the evidence among yourselves.

And when you have heard all the evidence and when you retire at my instruction to the jury room to deliberate on the verdict, it becomes your duty to discuss the evidence that is presented over the course of the trial in your effort to reach a unanimous decision as to the questions that are presented in the verdict form. I also want to remind you that over the course of the trial, these lawyers and their staff and the witnesses and the representatives of the competing companies that are the parties are not going to talk to you if they see you in close proximity. If you run into one of them on the front steps coming into the courthouse one morning and they are not friendly and they do not speak, do not consider them to be rude or unfriendly. Do not hold it against them. They are simply doing what I have instructed them to do.

With these instructions, we are now going to proceed to hear opening statements from the parties.

Date: March 6, 2022

Respectfully submitted,

By: /s/ Benjamin C. Elacqua

Ruffin Cordell
cordell@fr.com
Texas Bar Number 04820550
Daniel Gopenko
Virginia Bar Number 83932
gopenko@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
Kathryn Quisenberry
Texas Bar Number 24105639
quisenberry@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Aamir A. Kazi
Georgia Bar Number 104235
kazi@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309
Telephone: (404) 724-2811

Jared A. Smith *(Pro Hac Vice)*
California Bar Number 306576
jasmith@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070

Scott M. Flanz (*Pro Hac Vice*)
New York Bar Number 5423801
flanz@fr.com
**FISH & RICHARDSON P.C.**
Times Square Tower, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**COUNSEL FOR PLAINTIFF
THE CHAMBERLAIN GROUP LLC**

*/s/ David K. Callahan*
David K. Callahan
IL Bar No. 6206671
Kenneth G. Schuler
IL Bar No. 6226036
Marc N. Zubick
IL Bar No. 6308239
Raj Patel
IL Bar No. 6321274
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
kenneth.schuler@lw.com
david.callahan@lw.com
marc.zubick@lw.com
raj.patel@lw.com

S. Giri Pathmanaban
TX Bar No. 24074865
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Fax: (650) 463-2600
giri.pathmanaban@lw.com
Susan Y. Tull
D.C. Bar No. 992644
Gabriel K. Bell
D.C. Bar No. 987112
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
susan.tull@lw.com
gabriel.bell@lw.com

Bradley A. Hyde
CA Bar No. 301145
**LATHAM & WATKINS LLP**
650 Town Center Dr., 20th Floor
Costa Mesa, CA 92843
Telephone: (714) 755-8041
Fax: (714) 755-8290
bradley.hyde@lw.com

Stephen A. Maniscalco
NY Bar No. 5387063
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
stephen.maniscalco@lw.com

Michael C. Smith
TX Bar No. 18650410
**SCHEEF & STONE, LLP**
113 East Austin Street
Marshall, TX 75670
Telephone: (903) 938-8900
michael.smith@solidcounsel.com

Scott W. Breedlove
TX Bar No. 00790361
Nathan Cox
TX Bar No. 24105751
**CARTER ARNETT PLLC**
8150 N. Central Expy, 5th Floor
Dallas, TX 75206
Telephone (214) 550-8188
Fax: (214) 550-8185
sbreedlove@carterarnett.com
ncox@carterarnett.com

**ATTORNEYS FOR DEFENDANTS
OVERHEAD DOOR CORPORATION
AND GMI HOLDINGS INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via email on this 6th day of March, 2022.

*/s/ Benjamin C. Elecqua*
Benjamin C. Elacqua