# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC<br>    Plaintiff,<br>v.<br><br>OVERHEAD DOOR CORPORATION and<br>GMI HOLDINGS INC.,<br><br>    Defendants. | Case No. 2:21-cv-0084-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>**<u>FILED UNDER SEAL</u>** |

## <u>MOTION FOR SANCTIONS</u>

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. OHD's Sole Noninfringement Argument Relates to "Two Boards" | 3 |
| | B. OHD's Witnesses Concealed Development of a New Single-Board Product | 6 |
| | C. Jury Selection Starts in a Few Hours | 7 |
| III. | LEGAL STANDARD | 8 |
| IV. | ANALYSIS | 9 |
| | A. OHD's Willful Concealment Is Accompanied by a Clear Record of Delay or Contumacious Conduct | 9 |
| | B. OHD's Violation Is Attributable to the Client Instead of the Attorneys | 11 |
| | C. OHD's Misconduct Substantially Prejudices Chamberlain | 12 |
| | D. No Less Drastic Sanction Would Substantially Achieve the Desired Deterrent Effect | 13 |
| V. | CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. IDT, Corp.*,
  No. 2:07-cv-00420-RSP, Dkt. 364 (E.D. Tex.), *affirmed Alexsam, Inc. v. IDT Corp.*,
  715 F.3d 1336 (Fed. Cir. 2013) ................................................................................................9

*Balancecxi, Inc. v. Int'l Consulting*,
  No. 1:19-CV-0767-RP, 2020 WL 6886258 (W.D. Tex. Nov. 24, 2020), *report and
  recommendation adopted sub nom. BalanceCXI, Inc. v. Int'l Consulting & Rsch. Grp., LLC*,
  No. 1:19-CV-767-RP, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021) ...............................12, 13

*Batson v. Neal Spelce Assocs.*,
  765 F.2d 511 (5th Cir. 1985) .................................................................................................13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...................................................................................................................8

*Chilcutt v. U.S.*,
  4 F.3d 1313 (5th Cir. 1993) .....................................................................................................9

*Moore v. CITGO Ref. & Chemicals Co., L.P.*,
  735 F.3d 309 (5th Cir. 2013) .............................................................................................8, 10

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
  685 F.3d 486 (5th Cir. 2012) ...................................................................................................8

*Woodson v. Surgitek, Inc.*,
  57 F.3d 1406 (5th Cir. 1995) ...................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................................8, 9

I.     **INTRODUCTION**

On the literal eve of trial and less than four hours after the parties exchanged opening demonstratives and exhibits, Overhead Door Corporation and GMI Holdings Inc. (collectively, "OHD") revealed the following to both the Court and The Chamberlain Group LLC ("Chamberlain") simultaneously:



Ex. 1 (Email from D. Callahan to C. Cole of Mar. 6, 2022 at 5:25 p.m.) at 1 (emphasis added). During the parties' evening meet-and-confer several hours later, OHD still could not provide the model number of the new product, identify the specific witness who revealed the information, or inform Chamberlain what time counsel learned about this new garage door opener model.

This development is profoundly material and severely prejudicial, as it extinguishes OHD's sole noninfringement defense on U.S. Patent No. 8,587,404 (the "'404 patent"). For example, in seeking summary judgment, OHD asserted that there are two circuit boards in the accused products, what OHD calls the iDCM and GDO boards, that these boards are separate and independent, and that such separate boards therefore do not meet the "processor" element recited by the claims. *See* Dkt. 164 (Mot. for Summ. J. re Noninfringement of '404 patent) ¶ 7 ("The overhead unit of the Accused Products contains the motor and a motor control printed circuit board (together, the garage door operator or GDO) and an integrated Door Control Module (iDCM). The iDCM is a ***separate printed circuit board*** and is connected to the GDO by a wire." (emphasis added)).

During pretrial, OHD decided to double down by seeking to even preclude a doctrine of equivalents argument that the two boards are substantially equivalent to the "processor" element, with the following arguments:

- "First, the fact that the accused products utilized multiple processors is not some arbitrary box drawing defense that Defendants withheld until the end of discovery to manifest non-infringement positions. It's simply a fact." *See* Ex. 11 (Feb. 14, 2022 Pretrial Hr'g) at 121:13–16.

- "Defendants further produced schematics of the relevant iDCM components well in advance of the substantial completion of fact discovery, unambiguously disclosing multiple processors. See Hyde Decl. ¶ 8 . . . ." Dkt. 150 (Mot. to Strike Doctrine of Equivalents Theories) at 9.

OHD's email to the Court reveals that the statements above were untrue, both procedurally and substantively. Procedurally, it turns out that OHD did, in fact, withhold information until well beyond the completion of fact discovery. Substantively, it turns out OHD finally admits that two boards are indeed equivalent to the "processor" element, as OHD's counsel now concedes that the new product (with the same mechanical board) "operates in the same way as the products at issue in the case." Ex. 1 at 1. If any of this had been disclosed during discovery, the entire litigation landscape would be different. Instead, Chamberlain must enter trial without any details regarding the new product, any information as to how OHD intends to adjust its defense (as it must necessarily abandon its current one), or any material to cross-examine the OHD witnesses with the new product.

Perhaps most troubling is the fact that in order for new single-board products to have been sold in the United States late last year, manufacturing must have preceded this date by several months (the products are made in Mexico). Moreover, engineering, design, and testing work must have preceded manufacturing by many more months, perhaps even years. Yet, Chamberlain has scoured the discovery produced by OHD in this case and can find no mention

of this design. OHD produced a 30(b)(6) witness, OHD President Michael Kridel, to respond to the specific topic of whether OHD had made any design changes during the litigation.[1] Mr. Kridel testified unequivocally that there have been *no* changes to the accused products. Ex. 2 (Kridel Dep.) at 111:24–112:2. And none of OHD's other witnesses testified about new single-board product despite being asked for identification of any other "residential Overhead Door garage door or gate operators that are able to selectively activate an imminent motion notification alert." *See* Ex. 3 (Krupke Dep.) at 75:2–5.

This willful concealment of evidence until less than 24 hours before jury selection irreparably changes the landscape of this case. Chamberlain thus respectfully requests that this Court issue sanctions in the form of: a) a finding of infringement of the '404 patent; b) an Order for an immediate Show Cause Hearing; and c) an instruction that allows Chamberlain to explain the instant set of events, including OHD's litigation misconduct, to the jury.

## II.   FACTUAL BACKGROUND

### A.   OHD's Sole Noninfringement Argument Relates to "Two Boards"

OHD has consistently argued that the '404 patent accused products do not infringe because they incorporate two separate processing boards, the iDCM board and the GDO board. The record is replete with statements that the separation of the boards and the functions they accomplish demonstrate that there is no infringement of the '404 patent. *See, e.g.*, Ex. 4 (Leeb Rebuttal Rpt.) ¶ 318 ("[T]he iDCM resides on a separate, standalone circuit board — just one

---

[1]   *See* Ex. 5 (Objection and Response to 30(b)(6) Deposition Notice) Topic No. 35 ("Your future plans for implementation and/or use of the Accused Products and Accused Functionalities"). "Accused Products" is defined to include "[a]ny product or service that operates in materially the same manner are included within the scope of the Accused Products, regardless whether listed above." Ex. 6 (Chamberlain's L. Pat. R. 3-1 and 3-2 Disclosures) at 3.

3

reason why [Chamberlain's expert] Dr. Villasenor fails to show infringement of the Asserted Claims.").

Even until as recently 2:00 p.m. the day before trial, OHD circulated opening demonstratives emphasizing the separate iDCM and GDO processor boards:



Ex. 7 (March 6, 2022 OHD Opening Demonstratives Exchange).

Indeed, much of OHD's experts Steven Leeb and Nikolaus Baer's substantive opinions rely on the division between the iDCM and GDO boards to suggest to the jury that there is no infringement.

<u>Dr. Leeb's Reports:</u>

- "I also observed that ***the iDCM is*** physically and operationally ***separate from the GDO***."  Ex. 4 (Leeb Rebuttal Rpt.) ¶ 83 (emphasis added).

- "As my examination of the accused products confirmed, the ***iDCM is separate from the GDO***."  Id. ¶ 148 (emphasis added).

- "The accused products include an iDCM printed circuit board and a GDO printed circuit board.  The iDCM and GDO are manufactured separately and function independently."  Id. ¶ 153.

4

- "As discussed above, the GDO is manufactured separately from the iDCM." *Id.* ¶ 314.

- "[T]he ***iDCM resides on a separate, standalone circuit board*** — just one reason why Dr. Villasenor fails to show infringement of the Asserted Claims." *Id.* ¶ 318.

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As explained in detail in my Rebuttal Report, I tested the independence of these components in the accused products." Ex. 8 (Leeb Feb. 16 Suppl. Rpt.) ¶ 15 (citation omitted) (emphasis added).

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The ***iDCM and GDO are implemented on distinct PCB boards***. ***They are separate apparatus*** that perform unique functions independently of each other. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* (citation omitted) (emphasis added).

- "***OHD designed its products to have a separate iDCM*** including separate processors to handle internet commands, ***so that OHD did not need to change the existing GDO*** designs or the existing GDO source code. By design, OHD's use of two devices creates separate paths for internet and local commands, employing no determination whether to operate the UL alert. This design allowed OHD to recreate the functionality of OHD's External DCM (which Dr. Villasenor has not accused of infringing the '404 patent), as an Internal DCM. This is thus substantially different, and does not perform substantially the same function in substantially the same way, as a design that determines whether to operate the UL alert." Ex. 9 (Leeb Feb. 21 Suppl. Rpt.) ¶ 30 (emphasis added).

- "[H]aving the ***iDCM processors separate on a separate board means that if the iDCM stops working for any reason, the GDO will continue to work*** as it always has for decades, opening and closing the garage door for RF and wall console commands." *Id.* ¶ 31 (emphasis added).

Mr. Baer's Reports.

- "[A]n ***iDCM*** is an integrated DCM provided on a ***separate standalone printed circuit board that is separate from*** and integrated or linked to ***a GDO board***." Ex. 10 (Baer Rpt.) ¶ 21 (emphasis added).

- "[T]he light and buzzer are actuated, and the iDCM does not close the garage door barrier but issues a separate electric signal to a separate GDO board." *Id.* ¶ 26.

5

███████████████

- "The ***GDO and DCM are distinct printed circuit boards*** ('PCB') performing distinct operations." *Id.* ¶ 106 (emphasis added).

- ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  *Id.* ¶ 107.

OHD's motions and representations to the Court likewise rely on the division between the iDCM and GDO boards to support their noninfringement defense. *See* Ex. 11 (Feb. 14, 2022 Pretrial Hr'g) at 121:13–16 ("First, the fact that the accused products utilized multiple processors is not some arbitrary box drawing defense that Defendants withheld until the end of discovery to manifest non-infringement positions. It's simply a fact."); Dkt. 150 (Mot. to Strike Doctrine of Equivalents Theories) at 9 ("Defendants further produced schematics of the relevant iDCM components well in advance of the substantial completion of fact discovery, unambiguously disclosing multiple processors."); *id.* ("Defendants also made source code available for inspection in June of 2021, further revealing that the iDCM component utilizes two processors.").

    **B.**    **OHD's Witnesses Concealed Development of a New Single-Board Product**

OHD fact witnesses and corporate representatives testified under oath that there had been no changes to OHD's products and that there was no new single-board product. *See* Ex. 2 (Kridel Dep.) at 111:24–112:2 ████████████████████████████████

████████████████████████████████████████████████████████

████████████; Ex. 3 (Krupke Dep.) at 74:25–75:10 ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

6

### C. Jury Selection Starts in a Few Hours

Fact discovery closed on November 1, 2021. Chamberlain's expert, Dr. Villasenor, served his expert report on infringement of the '404 patent on November 4, 2021, which considered OHD's infringement of the '404 patent's processor element. OHD's expert, Dr. Leeb, responded with his noninfringement report for the '404 patent on November 25, 2021, which discussed OHD's separate processor theory. OHD filed its Motion To Strike Doctrine of Equivalents Theories on December 8, 2021, which directly addressed the scope of infringement of the '404 patent related to this issue. Dkt. 150. OHD filed its Motion for Summary Judgment of Noninfringement of the '404 patent on December 9, 2021, detailing OHD's two-processor noninfringement argument. Dkt. 164. This Court heard arguments on infringement of the '404 patent, including OHD's two-processor theory, on February 14, 2022. And with less than twenty-four hours until jury selection, Chamberlain still has no information on the new garage door model — not even a product number — or even an identification of which OHD witness finally identified the new single-board product.

### III.     LEGAL STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure grants courts broad power to impose sanctions for "fail[ing] to obey an order to provide or permit discovery."[2] Fed. R. Civ. P. 37(b)(2)(A); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488–89 (5th Cir. 2012).

Sanctions under FRCP 37(b) include any remedies necessary to deter the misconduct, and can be as severe as dismissal of a case.[3] *Id.* at 488. Several factors must be present for a district court to dismiss a case with prejudice as a sanction for violating a discovery order: 1) the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; 2) the violation of the discovery order must be attributable to the client instead of the attorney; 3) the violating party's misconduct must substantially prejudice the opposing party; and 4) a less drastic sanction would not substantially achieve the desired deterrent effect. *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir. 2013) (quotation marks and citations omitted).

For sanctions less severe than dismissal, such as those requested in the instant Motion, the Fifth Circuit applies a less-rigorous standard, requiring only that the sanction be "[j]ust and

---

[2]     The Court also has inherent power to impose sanctions when other rules do not provide an adequate remedy. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Under its inherent power to sanction, the Court may dismiss a case (when the plaintiff has engaged in sanctionable conduct) or impose default judgment (when the defendant has engaged in sanctionable conduct) when necessary to deter "bad faith or willful abuse of the judicial process." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (internal quotation marks and citation omitted).

[3]     Indeed, OHD argued at the Pretrial Conference that parties should be penalized for failing to disclose necessary information. Ex. 11 (Pretrial Hr'g) at 109:2–6 ("CGI failed to disclose theories and compliance with patent local rule 3-1; never supplemented its contentions or sought leave to supplement during fact discovery. The *Tyco* factors weigh in favor of excluding CGI's untimely disclosures.").

[f]air," that it have a "substantial relationship" to the facts sought to be established by the discovery, and that it meet Rule 37's goals of punishment and deterrence. *See Chilcutt v. U.S.*, 4 F.3d 1313, 1319–21 (5th Cir. 1993) (citations omitted). For example, where a party failed to comply with an order compelling identification of accused products, this Court deemed those products to be infringed at trial. *Alexsam, Inc. v. IDT, Corp.*, No. 2:07-cv-00420-RSP, Dkt. 364 (E.D. Tex.), *affirmed Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1344 (Fed. Cir. 2013).

## IV.  ANALYSIS

Each of the factors considered by the Fifth Circuit favor the relief sought by Chamberlain: a) a finding of infringement of the '404 patent; b) an Order for an immediate Show Cause Hearing; and c) and an instruction that allows Chamberlain to explain the instant set of events to the jury.

### A.  OHD's Willful Concealment Is Accompanied by a Clear Record of Delay or Contumacious Conduct

OHD could not have waited any longer to tell Chamberlain about its new single-board product. Despite having sold thousands of the new product as of December 2021, which was undoubtedly predated by many months of design, development, testing, and manufacturing, OHD finally unveiled its new single-board product after the parties had already disclosed opening statement demonstratives. This is four days short of a year after the complaint was filed, three months after the close of expert discovery, and three months after the product first shipped. OHD's delay in providing this material information is clear, willful, and contumacious.

In *Alexsam*, No. 2:07-cv-00420-RSP, Dkt. 364 at 1, this Court issued a finding of infringement as a discovery sanction after the defendant untimely disclosed documents, which caused a continuance of the trial date. The Fifth Circuit has also upheld district courts'

9

"infer[ence]" of willfulness based on the party's conduct, which resulted in terminating sanctions. *See Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir. 2013) ("Plaintiffs were aware of the Court's rulings, and nevertheless failed to conduct themselves in accordance with them. This failure evidences a blatant disregard for the judicial process, and constitutes willful and contumacious conduct.")

The timeline of facts here strongly suggests that concealment of the new single-board product was the result of willfulness and bad faith by OHD. Less than *two months* before the product began shipping, Chamberlain asked OHD's witnesses point blank during their 30(b)(6) depositions for identification of any products like the newly-identified product; each said "not to the best of my knowledge" or "none." *See* Ex. 2 (Kridel Dep.) at 111:24–112:2; Ex. 3 (Krupke Dep.) at 74:25–75:10. Yet Mr. Krupke testified that the new product development process at OHD is lengthy and complex:



10



Ex. 3 (Krupke. Dep.) at 41:20–42:23.  Mr. Krupke further testified that the "legal team is involved with the design team" with the design of a new product:



Ex. 3 (Krupke Tr.) at 52:4–20.  To be sure, Mr. Krupke was aware of the patents at issue in the case, had read the asserted claims, and was attuned to the OHD products that might be implicated.  Ex. 3 (Krupke Tr.) at 38:1–5.

OHD simply cannot excuse its willful disregard for its discovery obligations, particularly given that its corporate representative admits that it monitors Chamberlain's patents, has read Chamberlain's patents, and involves its legal team in the lengthy new product design process.

**B.     OHD's Violation Is Attributable to the Client Instead of the Attorneys**

Counsel for OHD's email makes clear that the concealment of this evidence is attributable to OHD and OHD alone.  Indeed, lead counsel for OHD stated in his e-mail that the day before trial ███████████████████████████████████████████████ ███████████████████████████ Ex. 1 at 1. ████████████████████████████ ██████████████████████████████████████████ Ex. 3 (Krupke Tr.) at 52:4–20.

### C. OHD's Misconduct Substantially Prejudices Chamberlain

Chamberlain is substantially prejudiced by OHD's concealment of the new-single-board product. OHD's email to the Court makes plain the importance of this new disclosure, and the undeniable impact of its withholding.

Chamberlain contends that OHD's two-board design infringes the '404 patent, both literally and under the doctrine of equivalents. After fighting this very issue throughout the case, including in pretrial briefings and its most recent opposition to Chamberlain's Motion to Reinstate, Dkt. 341 at 15 ("[T]he two board's processors are completely independent, perform distrinct operations, and use distinct source code."), Mr. Callahan now explains in his email to the Court that the new single-board products ▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬ Ex. 1 at 1 (emphasis added). Chamberlain has been deprived of the ability to examine the facts associated with this design change, to develop evidence revealing OHD's current single-board design, and adduce appropriate infringement arguments. *See Balancecxi, Inc. v. Int'l Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *13 (W.D. Tex. Nov. 24, 2020) (granting terminating sanctions where inaccessibility of evidence prevented the party from "gather[ing] the evidence it need[ed] to prove its case"), *report and recommendation adopted sub nom. BalanceCXI, Inc. v. Int'l Consulting & Rsch. Grp., LLC*, No. 1:19-CV-767-RP, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021).

Chamberlain must also begin presenting its infringement case to the jury in a mere few hours when its case has been premised on OHD's sole noninfringement argument that has now been gutted by OHD's admission. The Fifth Circuit has stated that a factor in determining whether terminating sanctions is appropriate includes whether "the other party's preparation for

trial was substantially prejudiced." *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985). The prejudice to Chamberlain is substantial.

### D. No Less Drastic Sanction Would Substantially Achieve the Desired Deterrent Effect

Chamberlain fully intends to seek a permanent injunction against OHD's products if it were to obtain a favorable jury verdict. A permanent injunction against OHD is necessary to curb its improper seizure of market share that it has obtained from exploiting Chamberlain's patented inventions. OHD perhaps understood the risk of an impending permanent injunction on the horizon, and was thus encouraged to withhold information on its new single-board product. Regardless, any continuance of a trial would play into OHD's hand and reward any willful litigation misconduct by providing it with yet further time in the marketplace.

Moreover, the parties' litigation history has the potential to exacerbate OHD's unfair seizure of market share. In August 4 2020, Overhead Door filed a Complaint for patent infringement before the International Trade Commission and obtained a final determination on February 9, 2022. Though Chamberlain fully intends to appeal the decision, an injunction may issue against Chamberlain in approximately a month that would bar importation of certain Chamberlain products. Thus, if this litigation is continued in response to OHD's litigation misconduct, OHD will continue to exploit Chamberlain's patented inventions in the marketplace with limited competition from Chamberlain. This has the potentially to irreparably and unfairly harm Chamberlain's business relationships and reputation to OHD's advantage. Anything other than strong sanctions against OHD would unfairly reward it for its litigation misconduct. *See Balancecxi, Inc.*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *13 (where a Defendants' actions have made it nearly impossible to gather the evidence necessary for the Plaintiff to prove its case, "any lesser sanction [than dismissal] would reward the Defendants' actions.").

## V. CONCLUSION

Chamberlain thus respectfully requests that this Court issue sanctions in the form of:

a) A finding of infringement of the '404 patent;

b) An Order for an immediate Show Cause Hearing; and

c) An instruction that allows Chamberlain to explain the instant set of events, including OHD's litigation misconduct, to the jury.

Date: March 7, 2022

Respectfully submitted,

By: */s/ Ruffin B. Cordell*
Ruffin B. Cordell
cordell@fr.com
Texas Bar Number 04820550
Daniel R. Gopenko
Virginia Bar Number 83932
gopenko@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
Kathryn Quisenberry
Texas Bar Number 24105639
quisenberry@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Aamir A. Kazi
Georgia Bar Number 104235
kazi@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309
Telephone: (404) 724-2811

14

Betty H. Chen
Texas Bar Number 24056720
bchen@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070

Jared A. Smith *(Pro Hac Vice)*
California Bar Number 306576
jasmith@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070

Scott M. Flanz (*Pro Hac Vice*)
New York Bar Number 5423801
flanz@fr.com
**FISH & RICHARDSON P.C.**
Times Square Tower, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Michael R. Rueckheim
(Texas State Bar No. 24081129)
MRuekheim@winston.com
Eimeric Reig-Plessis
(admitted Pro Hac Vice)
EReigPlessis@winston.com
**WINSTON & STRAWN LLP**
275 Middlefield Road,
Suite 205 Menlo Park, CA
94025 Telephone: (650)
858-6500
Facsimile: (650) 858-6559

M Brett Johnson
(Texas Bar No. 00790975)
MBJohnson@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Ste. 900
Dallas, TX 75201
Telephone: (214) 453-6416
Facsimile: (214) 453-6400

15

James Winn
(admitted Pro Hac Vice)
JWinn@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Dillon S. Kellerman
(admitted Pro Hac Vice)
DKellerman@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**COUNSEL FOR PLAINTIFF THE CHAMBERLAIN GROUP LLC**

## CERTIFICATE OF CONFERENCE

During the Parties' 8:30 p.m. meet-and-confer on March 6, 2022, counsel for Chamberlain requested additional detail regarding the disclosures in Mr. Callahan's email of 5:25 p.m. to the Court.  Counsel for Defendants was unable to provide additional detail.  Counsel for Chamberlain notified Defendants in their email of 9:38 p.m. to Mr. Cole that it would be filing a motion for sanctions.  Defendants did not respond.  Given the impending start of trial and the necessity to resolve this issue prior to the beginning of trial tomorrow morning, the Parties did not have a further opportunity to meet-and-confer prior to filing this motion.

*/s/ Scott M. Flanz*
Scott M. Flanz

## CERTIFICATE OF AUTHORIZATION TO SEAL

Per CV-5(a)(7)(B), the court already has granted authorization to seal confidential documents, and Chamberlain is filing under seal pursuant to the protective order entered in the case.

*/s/ Scott M. Flanz*
Scott M. Flanz

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via email on this 7th day of March, 2022.

*/s/ Scott M. Flanz*
Scott M. Flanz