# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC<br><br>        Plaintiff,<br>v.<br><br>OVERHEAD DOOR CORPORATION and<br>GMI HOLDINGS INC.,<br><br>        Defendants. | Case No. 2:21-cv-0084-JRG<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

# CHAMBERLAIN'S REPLY
# IN SUPPORT OF ITS MOTION FOR SANCTIONS

## **TABLE OF CONTENTS**

I.    TRIAL AND POST-TRIAL FACTUAL BACKGROUND ............................................. 4

       A.    OHD's Trial Strategy: Two-Board Defense and an Attack on Credibility.............. 4

       B.    OHD's Actions Since the Eve-of-Trial Disclosure.................................................. 4

II.    ANALYSIS ................................................................................................................. 4

       A.    OHD's Willful Concealment Is Accompanied by a Clear Record of Delay .......... 5

       B.    OHD's Violation Is Attributable to at Least the Client .......................................... 8

       C.    OHD's Misconduct Substantially Prejudices Chamberlain ..................................... 9

       D.    No Less Drastic Sanction Would Achieve the Desired Deterrent Effect .............. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ..................................................................................................3

*Maxwell v. Bexar Cty Hospital Dist.*,
  Civ. No. SA-06-CA-368, 2007 WL 9710495 (W.D. Tex. June 20, 2007) ................................8

*Monsanto Co. v. Ralph*,
  382 F.3d 1374 (Fed. Cir. 2004) ................................................................................................10

*Moore v. CITGO Ref. & Chemicals Co., L.P.*,
  735 F.3d 309 (5th Cir. 2013) .....................................................................................................8

*RooR Int'l BV v. Stinky's Smoke Shop, LLC*,
  2020 WL 7863545 (E.D. Tex. Dec. 30, 2020) ..........................................................................8

**Statutes**

35 U.S.C. § 102(f) ...........................................................................................................................3

**Other Authorities**

Rule 37 .........................................................................................................................................7, 8

OHD's opposition is predicated on the unreasonable notion that "Chamberlain did know, or should have known," about OHD's concealed single-board product. Dkt. 364 at 1. OHD's self-serving revisionist history is not credible. Roughly fifteen hours prior to the start of trial, Mr. Callahan (OHD's lead counsel) notified this Court and Chamberlain: "***today, we learned for the first time*** that Overhead Door introduced a new garage door opener model . . . . This was ***the first time this information was communicated to Latham & Watkins, Scheef & Stone or Carter Arnett***."[1] Dkt. 348, Ex. 1 at 1. OHD's counsel confessed they "do not have any detailed technical information about this product, . . . but wanted to make this disclosure as soon as the information came to our attention." *Id.* Just before jury selection, Mr. Callahan explained how OHD lawyers reacted to this revelation: "[W]e began calling client representatives outside of Marshall who are not here for trial, including Mr. Kridel, and we asked him to look into this and explain to us exactly what had happened." Day 1 Hr'g Tr. at 12:24-13:8.

Now, OHD's counsel blames the victim for not having deduced the existence of the single-board product even though OHD's counsel admitted that they were entirely unaware of it. This "should have known" accusation rings particularly hollow in light of OHD's interrogatory and deposition responses, none of which mention the single-board product. OHD concedes that "every one of [OHD's] 30(b)(6) and fact witnesses were custodians or authors" of single-board product materials, Dkt. 364 at 1, and yet no OHD witness identified the product during deposition. Similarly, in response to interrogatories served throughout discovery—including in May 2021 (seeking identification of products that can connect a GDO to a peripheral alarm), Aug. 2021 (seeking description of the design and development of accused products), and Sep. 2021 (seeking description of how source code implemented the accused features)—OHD never breathed a word about the single-board product or cited any related document now in OHD's opposition. Chamberlain had no way of knowing what the

---

[1] Emphasis is added unless stated otherwise.

1

"combo board" project was or how it might be relevant. OHD has a problem with the truth: OHD affirmatively misrepresented the structure and function of their accused devices, and did so repeatedly.

The impact of this misconduct cannot be overstated. OHD's core noninfringement defense to the '404 patent at trial was that OHD's products use two boards, rather than one. Had OHD identified the truth in a timely manner, Chamberlain would have exposed the contradiction between its defense and reality—undercutting the credibility of OHD's expert and corporate witnesses, and compelling the jury to reject OHD's trial positions. Chamberlain would also have asserted additional doctrine of equivalence theories given OHD's counsel's concession that the single-board and two-board products "operate[] in the same way." Dkt. 348, Ex. 1. Chamberlain could have further exposed OHD's repeated summary judgment misrepresentations to this Court that "the GDO and iDCM are separate printed circuit boards and function independently." Dkt. 164 at 6.

OHD's trial strategy centered on advancing this two-board noninfringement theory and attacking the credibility of Chamberlain's witnesses. *See* Ex. 12 (Latham Press Release) at 1 ("[O]ur theme was 'we don't infringe,' and that Chamberlain had stolen the invention from an industry standards committee."). As to the latter, the crux of OHD's invalidity defense at trial was centered on credibility of the parties—that Chamberlain lied in naming Mr. Laird as the inventor of the '404 patent and that he was somehow manipulated by Chamberlain:

> "You know, listening at this trial, . . . [t]his is fake news. . . . What you've seen in this case is deception, dishonesty, and deceit by the largest garage door manufacturer in the world. . . . You know the person that I feel sorry for in this trial is Mr. Laird. . . . He had nothing whatsoever to do, nothing to do with this patent.

Day 5 Hr'g Tr. at 96:12-97:4. OHD argued that "Mr. Laird didn't have one piece of paper," *id.* at 97:18, and instead, the patent "ought to have all the names from the folks on the DASMA committee on it," *id.* at 87:25-88:2. OHD argued that Chamberlain created the "patent from nothing," *id.* at 85:4, and that while "that sounds kind of weird," "at Chamberlain, it's not. Not at the patent factory that Mr.

Fitzgibbon runs," *id.* at 85:3-11. OHD did this while hiding its clear deception that would have forestalled this inflammatory rhetoric in the first instance.

OHD did not focus on the legally-required evidence for non-joinder under 35 U.S.C. § 102(f)—showing a particular communication of the invention.[2] Far from it. OHD resorted to a pure credibility attack, arguing that the lawsuit was "frivolous," that Chamberlain was a "bully," and that Chamberlain "filed this suit in Marshall, Texas, because [Chamberlain] think[s] we are yahoos in East Texas." *Id.* at 98:15-17, 100:1-5. The jury heard relentless and unfounded credibility attacks against Chamberlain and its employees. For example, OHD's expert called the two-board design "ingenious," Day 3 Hr'g Tr. at 301:11-302:4, and devoted a significant amount of his trial testimony to attacking Mr. Laird's credibility, Day 4 Hr'g Tr. at 8:17-9:9, 21:14-22:18. Chamberlain, however, was foreclosed from exposing OHD's misrepresentations that hid their infringement of and supported the validity of the same patent. OHD took advantage of the Court's instruction to preclude discussion of the single-board product, doubling down in aspects of the case where it knew Chamberlain was not allowed to respond. Chamberlain could not impeach OHD's witnesses with their statements concealing the single-board products.

Chamberlain thus respectfully requests (i) immediate vacatur of the verdict with fees and costs to Chamberlain, (ii) a full evidentiary hearing to determine what OHD and its counsel knew and when they knew it, (iii) a new trial, and (iv) any additional relief the Court deems appropriate.

---

[2] Undisputedly, communication of information in the prior art to the named inventor is legally irrelevant to inventorship "because it is not a contribution to conception." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362 (Fed. Cir. 2004); Jury Instructions at 26 ("If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor.").

## I. TRIAL AND POST-TRIAL FACTUAL BACKGROUND

### A. OHD's Trial Strategy: Two-Board Defense and an Attack on Credibility

Throughout trial, OHD continuously and unambiguously argued that its products do not infringe the '404 patent because its products comprise two boards rather than a single board. A collection of this testimony is presented in **Appendix A**. OHD also repeatedly attacked the credibility of Chamberlain's witnesses to undermine Mr. Laird's inventorship.[3] A collection of this testimony is presented in **Appendix B**. The obvious counterbalance to OHD's credibility assault would have been the facial contradiction of OHD's repeated two-board statements with its single-board reality.

### B. OHD's Actions Since the Eve-of-Trial Disclosure

To date, OHD has done nothing to address its discovery abuses other than to point to a search for "single board" and "combo board" documents. Ex. 13 (Mar. 7, 2022 Callahan E-mail) at 1. The majority of such documents mention "single board" or "combo board" as a single line item among hundreds of spreadsheet entries without any context to identify its relevance. OHD produced more than 450,000 pages of documents in this case, yet OHD's Opposition cites just six documents as relevant to the "combo board"—none of which were identified in response to Chamberlain's interrogatories. Exs. 14, 15, 16, 17. Nor has OHD attempted to argue that it substantially complied with this Court's document production rules with respect to the single board product—it has not.

## II. ANALYSIS

OHD's conduct, as cemented by its trial tactics and the materially false representations of its attorneys, satisfies the requirements for imposition of severe sanctions.

---

[3] The slim evidentiary basis for OHD's inventorship argument was laid bare in Chamberlain's summary judgment motion. Dkt. 175. Moreover, UL 325 cannot be used for an inventorship challenge because it was prior art; recall that Defendants' used it for obviousness. *See* '404 patent at 1:25-39.

### A. OHD's Willful Concealment Is Accompanied by a Clear Record of Delay

OHD's actions, through its sworn witness testimony and discovery responses, reflect a clear record of misrepresentation and concealment. OHD admits to knowing of the '404 patent as early as February 2014. Day 2 Hr'g Tr. at 152:16-19. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Dkt. 364 at 2. Yet, when Mr. Kridel was asked, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Dkt. 348, Ex. 2 (Kridel Dep.) at 111:24-112:2.

This statement by the President of The Genie Company, Mr. Kridel, is false. The question was not whether the OHD products had been changed "in view of any of the Asserted Patents"[4] as rephrased by OHD. *See* Dkt. 364 at 11. Chamberlain was attempting to identify related products that OHD developed after learning of the '404 patent to ensure that Chamberlain prepared its case against all relevant products. Mr. Kridel thwarted this effort at honest discovery. This is not a pregnant omission or a half-truth; OHD affirmatively stated that its design had not changed. OHD's attempt to point to the definition of Accused Products is also fruitless. "Accused Products" was defined to include "[a]ny product or service that operates in materially the same manner are included within the scope of the Accused Products, regardless whether listed above" in Chamberlain's local patent rule disclosures. Dkt. 348, Ex. 6 at 3. The single-board product is one of them. Mr. Kridel did not reveal this product and necessarily ***delayed*** Chamberlain learning of it.

OHD corporate witness Mr. Krupke's testimony is similarly misleading. He was presented

---

[4] Indeed, OHD's counsel objected to that very question based on privilege. Dkt. 348, Ex. 2 at 110:13-111:4. OHD nonetheless submits a post-trial declaration from Mr. Kridel on this point. Dkt. 364, Kridel Decl. The fact that OHD requires a new statement from Mr. Kridel underscores that this information was unavailable to Chamberlain. If Chamberlain had truthful testimony from OHD during discovery, it could have used OHD's "two-processor" statements to destroy OHD's credibility.

5

with Chamberlain's list of Accused Products and asked: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 348, Ex. 3 at 74:25-75:10. He falsely replied: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* The question was not limited to "released" or "sold" products.[5]

These false statements permeate OHD's interrogatory responses. To identify relevant evidence in the more than 450,000 pages produced by OHD, Chamberlain propounded interrogatories seeking:

- May 18, 2021: Identification of products "used since March 10, 2015 that [are] capable of Connecting a Movable Barrier Operator to a Peripheral Alarm." Ex. 14 (OHD Resp. to Interrog. 1) at 6, 7, Attach. A.
- May 18, 2021: "[H]ow each Accused Product is able to determine whether to Close a Movable Barrier in Combination with Operating a Moving-Barrier Imminent Motion Notification." Ex. 14 (OHD Resp. to Interrog. 3) at 9-11, Attach. A.
- Aug. 23, 2021: Description of how the accused products "do not infringe." Ex. 15 (OHD Resp. to Interrog. 5) at 5-11.
- Aug. 23, 2021: Description of the "design [and] development" of the accused products. Ex. 16 (OHD Resp. to Interrog. 9) at 11.
- Sep. 28, 2021: Description of how Chamberlain's infringement contentions were not representative. Ex. 17 (OHD Resp. to Interrog. 26) at 5-7.
- Sep. 28, 2021: Description of how the source code implemented the accused features. *See* Ex. 17 (OHD Resp. to Interrog. 29) at 11-14.

In response to each of these interrogatories, OHD provided information about the two-board products, but never said a word about the single-board products or cited any of the documents that it now points to in its opposition.

The fact that some produced documents and source code include the words "single board" or "combo board" does not absolve OHD. The vast majority of the "hundreds of documents" OHD identifies in its screenshotted exhibits 11 and 12 are either entirely unrelated to the single-board

---

[5] OHD's assertion that "because of the timing of these product sales and the functionality of the combo board, the production of the combo board does not affect this case," is baseless. *See* Dkt. 364 at 3. The single-board product undermines OHD's two-board defense and was therefore critical to infringement at trial. OHD tellingly does not substantiate its claim that the product "does not affect this case." *Id.*

product, provide no context for Chamberlain to discern anything about it, or include only a passing reference to it. *See* Ex. 18 (OHD-TX-0030306) at 309 (document listed in OHD's exhibit 11 but unrelated to the single-board product; returned as a search result based on a single sentence: "Microprocessor based with relay motor controls on a ***single board***."); Ex. 19 (OHD-TX-0025725) (document from OHD's exhibit 12, which does not include the word "combo" or "single"). With respect to the code, OHD's software engineer hid the existence of the single-board code, stating that ███████████████████████████████████████████████████████████████████████ Ex. 20 (Rauscher Dep.) at 114:11-116:6. As he admitted during his deposition, ███████████████████████████████████████████████████████ *Id.* at 72:4-14.

Nor do the six documents cited by OHD excuse its conduct. For example, OHD's Exhibit 8 groups a future, "combo board" project with a number of other possible modifications to the system. This document does not say that OHD would actually produce a relevant product; at most it predicts ████████████████████████████████████████████████████████ r. ██████████████████████████████████ Ex. 21 (OHD-TX-0188918) at 919 (stating that █ ████████████████████████████████████ ). Indeed, Chamberlain never received—because OHD did not produce— anything other than a "very preliminary" draft of the specification for that product. Ex. 22 (OHD-TX-0214265) at 265. It defies logic that there are only six substantive documents in OHD's possession evidencing OHD's two-year effort for the single-board concept that was actually released as a product. None of the documents identified by OHD confirm that the single-board product was final and would be shipped. Clearly, OHD did not produce the majority of substantive documents about the single-board product in violation of the Court's rules.

OHD's bad faith merits sanctions under both Rule 37 and the Court's inherent powers. Under

7

Rule 37(b), OHD flouted this Court's discovery orders (Dkt. 101) requiring accurate discovery responses to interrogatories and deposition questions. *See Maxwell v. Bexar Cty Hospital Dist.*, Civ. No. SA-06-CA-368, 2007 WL 9710495, at *2 (W.D. Tex. June 20, 2007) (holding Rule 37 dismissal is appropriate where "failure to comply with the Court's Order result[ed] from willfulness [and] bad faith" on the part of the sanctioned party); *Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir. 2013) ("Plaintiffs were aware of the Court's rulings, and nevertheless failed to conduct themselves in accordance with them. This failure evidences a blatant disregard for the judicial process, and constitutes willful and contumacious conduct."); *RooR Int'l BV v. Stinky's Smoke Shop, LLC*, 2020 WL 7863545, at *2 (E.D. Tex. Dec. 30, 2020) ("Inherent power sanctions are essentially punitive, designed to penalize bad faith abuses of the litigation process.").

None of the case law OHD identifies is applicable. In *Jorge v. Atl. Hous. Found. Inc.*, sanctions were denied because "the delays in discovery are attributable to natural changes in this case, such as new information being revealed in discovery or the addition of claims through the amended complaint." No. 3:20-cv-02782, Dkt. 123 (N.D. Tex. Mar. 22, 2021). Bad faith sufficient to justify sanctions was not found in *Innovation Scis., LLC v. Amazon, Inc.* because Defendants were "unaware of any feature related to 'account linking' and that the tables were timely produced once Defendants were made reasonably aware of them." No. 4:18-CV-474, 2020 WL 4431875, at *3 (E.D. Tex. July 31, 2020). No case changes or lack of awareness by OHD justify its actions here. *See* Dkt. 364 at 1-2.

### B. OHD's Violation Is Attributable to at Least the Client

OHD's counsel admits that "every one of [OHD's] 30(b)(6) and fact witnesses" has long been aware of the single-board product. *See* Dkt. 364 at 1-3. After learning that OHD refers to the single-board product as the "combo board," Chamberlain identified documents showing that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 23 OHD-TX-0228860. There can be no question that

8

concealing this product is at least in part attributable to OHD.[6]

### C. OHD's Misconduct Substantially Prejudices Chamberlain

OHD's concealment of the single-board product substantially prejudiced Chamberlain at trial. OHD relied pervasively on its discredited two-board noninfringement defense, *i.e.*, because OHD's products used two boards rather than one, they did not infringe the '404 patent. App'x. A (collecting statements relating to the two-board defense). OHD now suggests that it made limited use of the two-board defense but cannot change what it argued to the jury. OHD's counsel explained that its products do not infringe because the Wi-Fi and non-Wi-Fi signals arrive on two separate boards. Day 1 Hrg. Tr. at 190:20-191:18 ("Let's take a look at how the '404 Patent shows this determining or deciding. . . . Our product, by contrast, has those two different boards."). Likewise, OHD explained that its products did not have a single processor making a determination because they use two separate boards. *Id.* at 192:24-193:8 ("We have two different processors. . . . The accused products on the other side have got two separate boards that do two separate things."). OHD repeated this defense daily throughout trial.

The prejudice suffered by Chamberlain infected the entire case. Had Chamberlain been allowed to explore the single-board product at trial it could have attacked OHD's core noninfringement theory (or theories according to OHD). Chamberlain would have also been able to expose the false testimony of OHD's fact and expert witnesses.[7] This imbalance critically damaged Chamberlain's

---

[6] OHD's counsel's denials as to its knowledge raises a number of serious unanswered questions. First, did OHD employees involved with deposition preparation and interrogatory responses in this litigation know of this product? Second, when did OHD's counsel first become aware of the single-board product? Third, since OHD produced documents regarding the single-board product, to what extent did OHD's counsel know of this product when they made contrary representations to the Court?

[7] Chamberlain's counsel alerted the Court during a sidebar that such cross examination would have been appropriate had Chamberlain had advance notice of the single-board product.

> He [Mr. Krupke] is telling me what a stand-alone board is and we're about to go into why those distinctions are really important. The three of us know that they're making a product

9

ability to combat OHD's entire trial presentation, particularly its invalidity defense, which was premised almost entirely on OHD's argument that Mr. Laird lacked credibility as compared with OHD's witnesses. *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1382 (Fed. Cir. 2004) (upholding sanctions striking all pleadings and entering judgment on liability for all plaintiff's claims where defendant's conduct only "affected one out of four claims" because defendant's conduct "cast a pall of doubt over all of his defenses.").

### D. No Less Drastic Sanction Would Achieve the Desired Deterrent Effect

A remedy less than *vacatur* of the verdict, an evidentiary hearing, and a new trial is insufficient to deter parties like OHD from misconduct in the future in light of the broader scope of the controversy between the parties. One day after the verdict, Genie began damaging Chamberlain's industry reputation by boasting to customers that a jury found it not liable based on a "thorough consideration of the facts." Ex. 24 (Genie Announcement of Mar. 12, 2022) at 1; *see also* Ex. 25 (Law360 Article) at 1 (quoting OHD CEO stating "[T]he entire lawsuit [w]as an effort to retaliate against us for pursuing the meritorious claims for patent infringement that we brought against Chamberlain in the [ITC]."). *See Monsanto*, 382 F.3d at 1830-31 (upholding sanctions entering judgment on liability where anything else would have benefitted the accused infringer and "trivialized the magnitude of the harm").

Without an immediate *vacatur* of the jury verdict and new trial in this matter, OHD will continue to tout an improper verdict against Chamberlain. As a result, OHD may never have to face the consequences of concealing evidence and trying a case to verdict based on falsehood.

---

> that has a single board and it works just the same. And the natural cross of this would be to bring the single board up, but I can't do that because they aren't the facts. So I'm objecting to this as contrary to fact in a way that I can't effectively cross-examine the witness.

Day 2 Hr'g Tr. at 178:24-179:7.

Date: March 21, 2022      Respectfully submitted,

By:    */s/ Ruffin B. Cordell*
Ruffin B. Cordell
cordell@fr.com
Texas Bar Number 04820550
Daniel R. Gopenko
Virginia Bar Number 83932
gopenko@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
Kathryn Quisenberry
Texas Bar Number 24105639
quisenberry@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Aamir A. Kazi
Georgia Bar Number 104235
kazi@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309
Telephone: (404) 724-2811

Betty H. Chen
Texas Bar Number 24056720
bchen@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070

Jared A. Smith *(Pro Hac Vice)*
California Bar Number 306576
jasmith@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400

**FILED UNDER SEAL**

San Diego, CA 92130
Telephone: (858) 678-5070

Scott M. Flanz (*Pro Hac Vice*)
New York Bar Number 5423801
flanz@fr.com
**FISH & RICHARDSON P.C.**
Times Square Tower, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Michael R. Rueckheim
(Texas State Bar No. 24081129)
MRuekheim@winston.com
Eimeric Reig-Plessis
(admitted Pro Hac Vice)
EReigPlessis@winston.com
**WINSTON & STRAWN LLP**
275 Middlefield Road,
Suite 205 Menlo Park, CA
94025 Telephone: (650)
858-6500
Facsimile: (650) 858-6559

M Brett Johnson
(Texas Bar No. 00790975)
MBJohnson@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Ste. 900
Dallas, TX 75201
Telephone: (214) 453-6416
Facsimile: (214) 453-6400

James Winn
(admitted Pro Hac Vice)
JWinn@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Dillon S. Kellerman
(admitted Pro Hac Vice)
DKellerman@winston.com
**WINSTON & STRAWN LLP**

**FILED UNDER SEAL**

101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**COUNSEL FOR PLAINTIFF THE CHAMBERLAIN GROUP LLC**

**FILED UNDER SEAL**

**CERTIFICATE OF AUTHORIZATION TO SEAL**

Per CV-5(a)(7)(B), the court already has granted authorization to seal confidential documents, and Chamberlain is filing under seal pursuant to the protective order entered in the case.

                                              */s/ Scott M. Flanz*
                                              Scott M. Flanz

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via email on this 21st day of March, 2022.

                                              */s/ Scott M. Flanz*
                                              Scott M. Flanz