# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, LLC, | § § | |
| Plaintiff, | § § | Case No. 2:21-cv-0084-JRG |
| v. | § § | |
| OVERHEAD DOOR CORPORATION and GMI HOLDINGS INC., | § § § § | |
| Defendants. | § § | |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR SANCTIONS**

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. NO DISCOVERY VIOLATION THAT WOULD SUPPORT A RULE 37
    MOTION......................................................................................................................4

III. NO CONCEALMENT OF THE COMBO BOARD DESIGN ...........................................7

IV. THE EXISTENCE OF THE COMBO BOARD DOES NOT AFFECT ANY
    ISSUE IN THIS CASE ................................................................................................9

V. CONCLUSION............................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Gonzalez v. Infostream Grp., Inc.*,
  No. 2:14-CV-906-JRG-RSP, 2016 WL 475172 (E.D. Tex. Feb. 7, 2016).................................. 7

*Innovation Scis, L.L.C. v. Amazon.com, Inc.*,
  No. 4:18-CV-474-ALM, 2020 WL 4431875 (E.D. Tex. July 31, 2020).................................... 7

*Jorge v. Atl. Housing Found. Inc.*,
  No. 3:20-CV-02782, D.I. 123 (N.D. Tex. Mar. 22, 2021) ......................................................... 7

*Yohey v. Collins*,
  985 F.2d 222 (5th Cir. 1993) ................................................................................................... 10

I.       **INTRODUCTION**

Chamberlain's motion was premised on the claim that that OHD concealed information related to its combo board design during discovery.  Motion at 1-3.  Chamberlain claimed that it had "***scoured*** the discovery produced by OHD in this case and can find no mention of this design" (*id*. at 2) and that "[i]f any of this had been disclosed during discovery, the entire litigation landscape would be different." *Id*.

As OHD explained, Chamberlain did know–*or should have known*–as Chamberlain now concedes in its Reply that:  1) Chamberlain had these documents all along, as OHD produced more than ***a thousand*** design and development documents related to the combo board design; 2) these documents were easily identifiable in OHD's production using basic search terms; 3) OHD's fact witnesses were listed as custodians or named on many of these design and development documents; 4) Chamberlain included at least one of these documents on its exhibit list, which explicitly states that the combo board would ▮▮▮▮▮▮▮▮▮▮ (*see* PTX-0768 (D.I. 364-10)); and 5) OHD produced source code for the combo board design, much of which had explicit "combo board" or "single board" identifiers on the relevant files.

Faced with those facts, Chamberlain now asks that it not be charged with knowing of all of the above because "OHD's counsel admitted that they were entirely unaware of it." Br. at 1. That mischaracterizes what counsel said to Chamberlain and the Court, which is that "today, we learned for the first time that Overhead Door ***introduced*** a new garage door opener model, and beginning sometime in December 2021 shipped several thousand units of this model." *See* D.I. 348-1.

Because Chamberlain now admits that OHD produced design and development documents and accompanying source code for the combo board project (which Chamberlain spent ***weeks***

1

reviewing), there is no Rule 37 basis for Chamberlain's requested relief, and Chamberlain cites no authority to support such its belated request for *vacatur*.

Instead of acknowledging the limitations of its "scouring," Chamberlain now changes the basis of its motion to incredibly argue that it had "no way of knowing what the 'combo board' project was or how it might be relevant." Reply at 1-2. *First*, the very document that Chamberlain included on its exhibit list spells out that the "Combo Board' design was to ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp., Ex. 8 (September 2020 Strategies Presentation), OHD-TX-0428752 at 754. That document—of which Chamberlain's counsel indisputably was aware—is clear on its face as to the nature and purpose of the combo board. *Second*, Chamberlain could have simply asked OHD's witnesses what the project was, particularly given the plethora of documents and source code produced for the project. Chamberlain's counsel either didn't review the documents, or did and made a strategic decision not to ask any questions about the combo board during depositions. Nor did Chamberlain reference the combo board design in its expert report, even though Chamberlain's experts spent ***almost four full weeks*** reviewing source code for the combo board. Chamberlain had every opportunity to take additional discovery and to develop such arguments, but failed to do so. OHD should not be punished for Chamberlain's former counsel's failure to review those materials or follow up on whatever significance they have to this case.

Chamberlain's attempts to excuse its own lack of diligence similarly fail. Chamberlain's claim that OHD identified "just six" design and development documents related to the combo board is wrong; OHD produced over ***1,220*** relevant documents–***along with corresponding source code***. And while Chamberlain again mischaracterizes OHD's 30(b)(6) witness deposition testimony and interrogatory responses, the full questions and answers asked during deposition and

2

the plain language of the relevant discovery responses show no concealment.

In any event, the combo board was not a magic bullet for Chamberlain that would have "extinguish[ed]" OHD's defenses (Motion at 1).  OHD presented not one, but two cogent noninfringement defenses at trial, neither of which required the iDCM and GDO components to be on two separate boards.  Opp. at 9-10.  This fact was confirmed by the testimony of both OHD's source code 30(b)(6) witness Mr. Brent Rauscher, and OHD's technical expert, who unambiguously testified that the system makes no determination–***even if one were to combine the GDO and iDCM together***.  Hyde Decl., **Ex. 1** (Rauscher Day 2 Tr.) at 234:3-7 

); *Id.*, **Ex. 2** (Leeb Day 3 Tr.) at 281:17-24 

).  Thus, the fact that the combo board "operates in the same way" does not "extinguish[]" OHD's noninfringement theories; it simply shows that the combo board likewise does not infringe the '404 patent.

Finally, Chamberlain's arguments that the combo board design would have allowed it to "counterbalance" OHD's attacks on Chamberlain's witness credibility also fail.  *See* Reply at 4, 9-10.  To start, Chamberlain had all the subject documents and source code at its disposal to question OHD's witnesses at deposition to challenge their credibility, but didn't.  Any alleged failure to counterbalance was Chamberlain's choice.  And in any event, the combo board has nothing to do with the invalidity theories presented in this case.  ***Nothing*** could "counterbalance" the volume of damaging admissions from Chamberlain's fact witnesses, including testimony from Mr. Laird, inventor of the '404 patent, that there is nothing "new" or "novel" about his invention in view of

UL 325.  *Id*., **Ex. 1** (Laird Day 2 Tr.) at 106:24-107:9.  Or testimony that it was entirely obvious to reduce nuisance.  *Id*., at 106:17-23.  Chamberlain cannot "counterbalance" a boulder with a grain of sand.

## II. NO DISCOVERY VIOLATION THAT WOULD SUPPORT A RULE 37 MOTION

Chamberlain's Rule 37 motion was based on the premise that OHD withheld information related to its combo board design throughout discovery.  Motion at 1-3.  These claims were plainly wrong; Chamberlain now *admits* that OHD produced design and development documents related to the combo board design, as well as source code.  Reply at 6-8.  Nor does Chamberlain dispute that these documents were readily identifiable in OHD's production with even basic search terms, or that many of these documents list a designated OHD 30(b)(6) witnesses as a custodian or explicitly name those individuals.  Chamberlain cannot explain why its former counsel were unable to locate any of these materials during discovery, or why its motion claimed that it couldn't even after it "*scoured*" OHD's production.  Motion at 2.

Instead, Chamberlain now presents entirely new sanctions theories, that it just had "no way of knowing what the 'combo board' project was or how it might be relevant."  Reply at 1-2.  Chamberlain then attempts to support this position by arguing that "even … OHD's counsel admitted that they were entirely unaware of it" (*id*. at 1 (discussing Mr. Callahan's March 6 email to the Court)) and further arguing that OHD's production was insufficient to put them on notice of the combo board project (*id*. at 4-8).  But Chamberlain mischaracterizes Mr. Callahan's email to the Court, which merely asserted that OHD's counsel had just learned that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 348-1.  As discussed in OHD's Opposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████ ████████████████

████████████████████████████████████████████. Opp. at 2-3. When OHD's counsel became aware of the products sold including these combo boards, they immediately notified the Chamberlain and the Court. *Id*.

Chamberlain's attempts to mischaracterize OHD's production also fails. ***First***, contrary to Chamberlain's assertions, OHD's Opposition did not cite to "just six documents" referencing the combo board. Reply at 4, 7. Instead, OHD's Opposition pointed to at least ***1,220*** documents related to the combo board design, and then walked through "***non-limiting examples***" of design and development documents that Chamberlain itself asserted "must have" existed. *Compare* Motion at 2 ("Moreover, engineering, design, and testing work must have preceded manufacturing by many more months, perhaps even years.") *with* Opp. at 4-6 (walking through "non-limiting" examples of combo board development documents spanning almost two years of development, including initial design specifications, project roadmaps, UL testing submissions, photographs, schematics, CAD drawings, and source code).[1]

Moreover, even if Chamberlain's representations that many of these documents only mention the combo board in "passing" were true (and they are not), it is reasonable to assume that counsel would at least flag for further review a design that was mentioned ***in over twelve hundred produced documents and accompanying source code***. *See, e.g.*, Hyde Decl. **Exs. 3-17** (additional exemplary design and development documents explicitly referencing OHD's combo board design). Not once during the lead up to trial did Chamberlain ever ask OHD for more discovery

---

[1] While Chamberlain claims that the ***more than twelve hundred*** other document hits related to "combo board" or "single board" in OHD's production "are either entirely unrelated to the single-board product, provide no context for Chamberlain to discern anything about it, or include only a passing reference to it" (*see* Reply at 6-7), Chamberlain provides no support for this statement beyond identifying just ***two*** false positives in the ***more than twelve hundred*** other documents identified by OHD. Reply at 7.

5

on the combo board, much less move the Court to compel further discovery. Nor did Chamberlain question a single 30(b)(6) witness about this design, although it included on its exhibit list a document explicitly discussing how the design would ███████████████████████ ███████████ *See supra* at 2 (discussing PTX-0768 (D.I. 364-10)).[2] In any event, OHD's production included combo board development documents spanning almost two years of development, including initial design specifications, project roadmaps, UL testing submissions, photographs, schematics, CAD drawings, and source code. *See supra* at 4-5.[3]

**Second**, while Chamberlain dismisses OHD's production of source code for the combo board because ████████████████████████████████████████ ████████ it bears emphasizing that Chamberlain's original basis for its Motion was the erroneous contention that OHD had produced ***no*** code for the combo board, not that the code was produced in a "confusing" manner. Reply at 6. Moreover, Chamberlain does not dispute that the "combo board" or "single board" identifier was included in a number of the relevant source code files. *Id*. Once again, one would think that Chamberlain–upon seeing reference to the combo board design ***in more than twelve hundred*** OHD internal documents–would check OHD's source code for any reference to the design, a simple task. Chamberlain did not do so. This is a particular

---

[2] Chamberlain even questioned OHD 30(b)(6) witness Mr. Ken Delaney regarding an email that explicitly mentions the "combo cost out board" and which attaches a presentation discussing the project–*but asked no questions about the combo board or presentation*. *See* Hyde Decl., **Ex. 18** (PTX-0021 **(**Delaney Ex. 10)); *see also id*. **Ex. 19** OHD-TX-0310889 (email attachment discussing ████████████████████████████ to ███████████████████████ ).

[3] Chamberlain further argues that OHD's significant production of combo board documents and source code should be dismissed because "[n]one of the documents identified by OHD confirm that the single-board product was final and would be shipped" and further because OHD purportedly "did not produce the majority of substantive documents about the single-board product…." But once again, Chamberlain could have asked any one of OHD's 30(b)(6) witnesses about this design to ascertain its status. It chose not to. And if Chamberlain believed that OHD's production was incomplete, it was free to file a motion to compel. Once again, it chose not to.

problem here, as this Court has recognized "in many cases source code is the best and most direct evidence of how a software or an internet feature functions." *Gonzalez v. Infostream Grp., Inc.*, No. 2:14-CV-906-JRG-RSP, 2016 WL 475172, at *2 (E.D. Tex. Feb. 7, 2016). Chamberlain's expert admitted as much, conceding that the relevant accused functionality " ▮

▮

▮ Hyde Decl., Ex. **20**, (Villasenor Supp. Rpt.) at ¶ 61.

In short, Chamberlain's counsel didn't: i) ask any deposition questions about that potential product; ii) request any further discovery on said products; iii) ask for any follow-up document production, to include the combo board as part of any expert report; or iv) use this information in forming its rebuttal to OHD's noninfringement defenses during summary judgment briefing. Chamberlain can't blame OHD for these failings. Nor can Chamberlain cite to a single case indicating that sanctions would be warranted under these circumstances, as courts routinely deny sanctions where a party produced documents in good faith. *See* Opp. at 12 (citing *Jorge v. Atl. Housing Found. Inc.*, No. 3:20-CV-02782, D.I. 123 (N.D. Tex. Mar. 22, 2021) (J. Godbey); *Innovation Scis, L.L.C. v. Amazon.com, Inc.*, No. 4:18-CV-474-ALM, 2020 WL 4431875, at *2 (E.D. Tex. July 31, 2020)). Because Chamberlain can point to no Rule 37 violation or bad faith in view of OHD's production, Chamberlain's Motion should be denied.

### III. NO CONCEALMENT OF THE COMBO BOARD DESIGN

Chamberlain's recycled allegations that OHD "concealed" the development of the combo board design similarly fail.

*First*, as pointed out in OHD's Opposition, Chamberlain mischaracterizes the testimony of Mr. Mike Kridel. Opp. at 7-8. During Mr. Kridel's deposition, counsel for Chamberlain repeatedly asked whether OHD had made changes to the Accused Products "in order to avoid infringing Chamberlain's patents." *See, e.g.*, D.I. 348-2. And while Chamberlain's attorney Mr.

7

Rueckheim adjusted his question to avoid privilege objections to "[h]as Overhead Door made any changes to the accused products *after learning about Chamberlain's patents at issue in this case*," the inference is the same: Chamberlain was asking whether OHD made changes to the Accused Products *in response to* learning of Chamberlain's patents. Mr. Kridel accurately testified that OHD did not, as further evidenced by his declaration in support of OHD's Opposition. Kridel Decl., ¶¶ 4, 8.

Chamberlain's allegations that Mr. Krupke concealed the combo board design similarly fail. Mr. Krupke accurately testified that there were no other residential Overhead Door garage door or gate operators that are able to selectively activate an imminent motion notification alert, as the models which temporarily included replacement combo boards did not even release until nearly two months after Mr. Krupke's deposition. *See* Opp. at 7-8. Nor would Mr. Krupke's answer have been any different had he known about the replacement boards – since they were used in models already identified on Chamberlain's list. *Compare* Kridel Decl., ¶ 5 (identifying replacement models) *with* Hyde Decl., **Ex. 21** (CGI's Infringement Contentions).[4]

***Second***, while Chamberlain provides a bullet point list of interrogatories it claims should have revealed the existence of OHD's combo board design, not one of these interrogatories actually relate to the combo board design. *See* Reply at 6. For example, Chamberlain's Interrogatory No. 1 asks for an identification of products "*used* since March 10, 2015 that [are] capable of Connecting a Movable Barrier Operator to a Peripheral Alarm" (*id*.), but Chamberlain does not dispute that the combo board design was not even included in any product until December

---

[4] Chamberlain's assertions that Mr. Rauscher "hid the existence of the single-board code" are likewise based on mischaracterizations of the relevant testimony. Again, Mr. Rauscher was testifying regarding the function of OHD's "residential operators," and once again no residential operator included the combo board until nearly two months after Mr. Rauscher's deposition.

8

2021. Tellingly, Chamberlain never complained during fact discovery (or indeed before trial) about the accuracy or completeness of OHD's responses to these interrogatories as allegedly failing to discuss the combo board. And Chamberlain did not propound a *single* interrogatory specifically asking about this design. *See supra* at 7. Chamberlain cannot make up for its lack of diligence by mischaracterizing OHD's deposition testimony and interrogatory responses.

## IV. THE EXISTENCE OF THE COMBO BOARD DOES NOT AFFECT ANY ISSUE IN THIS CASE

Chamberlain's arguments that the existence of the combo board "substantially prejudices Chamberlain" recycles the same specious assertions from Chamberlain's opening brief – i.e., that OHD's "sole" noninfringement defense for the '404 patent was that the Accused Products utilize two separate boards. Reply at 9-10. Chamberlain then cites to a number of examples during trial of when OHD's counsel or witnesses pointed to the use of two separate boards. *Id*. But Chamberlain's arguments are both irrelevant and demonstrably incorrect.

*First*, Chamberlain's arguments are irrelevant because Chamberlain had every opportunity to explore the function of the combo board during discovery and to question OHD's fact and expert witnesses regarding its design and the impact of that design on any of OHD's noninfringement theories. Or to present the combo board in its own expert reports. It did not do so. Chamberlain made a strategic choice and that choice is not OHD's fault.

*Second*, Chamberlain's arguments are demonstrably wrong. While OHD does not dispute that it pointed to the use of two separate boards as *additional* evidence that the "determination" and "processor" limitations are not met in the Accused Products, OHD's fact and expert witnesses both testified that these limitations were not present *even if the boards were combined together into one unit*. Hyde Decl., **Ex. 1** (Rauscher Day 2 Tr.) at 234:3-7; *Id*., **Ex. 2** (Leeb Day 3 Tr.) at 281:17-24. And as discussed in Mr. Rauscher's declaration, the combo board design operates in

9

materially the same (i.e., not making any determination). Rauscher Decl. ¶ 5. Thus, the combo board does not "extinguish[]" the jury's grounds for determining noninfringement.

Finally, Chamberlain's arguments that the existence of the combo board design would have allowed it to "counterbalance" OHD's attacks on Chamberlain's witness credibility is ill-founded. *See* Reply at 4, 9-10. The existence of the combo board has nothing to do with the jury's invalidity findings. OHD's invalidity theories—both inventorship and obviousness—had nothing whatsoever to do with using one or two boards. ***Nothing*** could "counterbalance" the sheer volume of damaging testimony from Chamberlain's fact witnesses, including testimony from Mr. Laird, inventor of the '404 patent, that there is nothing "new" or "novel" about his invention in view of UL 325. *Id.*, **Ex. 1** (Laird Day 2 Tr.) at 106:24-107:9. Or testimony from Mr. Fitzgibbon that the Asserted Patents have "nothing to do with safety" and further that Chamberlain did not invent using WiFi to control GDOs, or controlling GDO's over the internet – directly contradicting Chamberlain's opening trial themes *Id*. **Ex. 22** (Fitzgibbon Day 1 Tr.) at 256:21-25.

Finally, Chamberlain has no answer to the case law noting the mootness of this motion in light of the jury's invalidity finding. *See* Opp. at 15; Reply at *passim*. And Chamberlain's brand-new request for "*vacatur* of the verdict, an evidentiary hearing, and a new trial" (Reply at 10), does not avoid the mootness issue, comes too late, and has been waived. *See, e.g.*, *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("This Court will not consider a claim raised for the first time in a reply brief.") (internal citations omitted).

### V.     CONCLUSION

Because Chamberlain can point to no actual Rule 37 violation or bad faith in view of OHD's production, Defendants respectfully request that Chamberlain's Motion be denied.

Dated:  March 23, 2022

Respectfully submitted,

*/s/ David K. Callahan*

David K. Callahan
IL Bar No. 6206671
Kenneth G. Schuler
IL Bar No. 6226036
Marc N. Zubick
IL Bar No. 6308239
Raj Patel
IL Bar No. 6321274
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
david.callahan@lw.com
kenneth.schuler@lw.com
marc.zubick@lw.com
raj.patel@lw.com

S. Giri Pathmanaban
TX Bar No. 24074865
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Fax: (650) 463-2600
giri.pathmanaban@lw.com

Susan Y. Tull
D.C. Bar No. 992644
Gabriel K. Bell
D.C. Bar No. 987112
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
susan.tull@lw.com
gabriel.bell@lw.com

Stephen A. Maniscalco
NY Bar No. 5387063
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas

New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
stephen.maniscalco@lw.com

Bradley A. Hyde
CA Bar No. 301145
**LATHAM & WATKINS LLP**
650 Town Center Dr., 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 755-8041
Fax: (714) 755-8290
bradley.hyde@lw.com

Michael C. Smith
TX Bar No. 18650410
**SCHEEF & STONE, LLP**
113 East Austin Street
Marshall, TX 75670
Telephone: (903) 938-8900
michael.smith@solidcounsel.com

E. Leon Carter
TX Bar No. 03914300
Scott W. Breedlove
TX Bar No. 00790361
Nathan Cox
TX Bar No. 24105751
**CARTER ARNETT PLLC**
8150 N. Central Expy, 5th Floor
Dallas, TX 75206
Telephone (214) 550-8188
Fax: (214) 550-8185
sbreedlove@carterarnett.com
ncox@carterarnett.com

**ATTORNEYS FOR DEFENDANTS OVERHEAD DOOR CORPORATION AND GMI HOLDINGS INC.**

12

## CERTIFICATE OF SERVICE

I certify that on March 23, 2022 all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF System according to the applicable Federal Rules of Civil Procedure.

*/s/ David. K. Callahan*
David K. Callahan

## CV-5(a)(7) CERTIFICATION

Pursuant to CV-5(a)(7), a motion to seal the present briefing and certain exhibits has been filed.

*/s/ David. K. Callahan*
David K. Callahan

13