UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP LLC<br><br>    Plaintiff,<br>  v.<br><br>OVERHEAD DOOR CORPORATION and GMI HOLDINGS INC.,<br><br>    Defendants. | Case No. 2:21-cv-0084-JRG<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION TO STRIKE PORTIONS OF
DEFENDANTS' EXPERT REPORT REGARDING
UNDISCLOSED NONINFRINGING ALTERNATIVES AND PUTATIVE PRIOR ART**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 1

    A. Defendants Failed To Disclose During Fact Discovery Certain New Noninfringing Alternatives Theories Offered in Dr. Leeb's Report ....................... 1

    B. Defendants Failed to Disclose the Stealth and Phantom Garage Door Operators that Dr. Leeb Now Identifies as Alleged Prior Art Products ................................. 2

        1. Defendants Invalidity Contentions Identify Only a Pro Max Operator ...... 2

        2. Defendants Improperly Disclosed the Stealth and Phantom Operators for the First Time in Dr. Leeb's Opening Report ............................................. 3

III. LEGAL STANDARDS .......................................................................................................... 4

IV. ARGUMENT .......................................................................................................................... 5

    A. Defendants' New Noninfringing Alternative Theories Should Be Stricken .......... 5

    B. Defendants' New Invalidity Theories Relating to the Phantom and Stealth Operators Should be Stricken ................................................................................. 8

        1. Defendants Failed To Amend Their Invalidity Contentions to Include the Stealth and Phantom Operators .................................................................. 8

        2. The Prejudice of Defendants' Untimely Disclosure Is Substantial ............ 9

        3. Defendants Have No Explanation for Their Failure to Disclose Their own Phantom and Stealth Operators as Alleged Prior Art Systems ................. 10

V. CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Computer Acceleration Corp. v. Microsoft Corp.*,
  503 F. Supp. 2d 819 (E.D. Tex. 2007) ................................................................................... 5

*ContentGuard Holdings, Inc. v. Amazon.com*, Inc.,
  No. 2:13-CV-1112-JRG, 2015 WL 4944514, (E.D. Tex. Aug. 19, 2015) ............................... 10

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-CV-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ...................... 4, 5, 6, 7

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791 (E.D. Tex. Oct. 16, 2017) .................... 4, 5

*iFly Holdings LLC v. Indoor Skydiving Germany GmbH*,
  Civ. No. 2:14-cv-01080-JRG-RSP, 2016 WL 3854070 (E.D. Tex. Mar. 22, 2016) ............. 5, 6

*L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*,
  No. 6:11CV599, 2013 WL 7937026 (E.D. Tex. Oct. 11, 2013) ............................................... 8

*LML Pat. Corp. v. JPMorgan Chase & Co.*,
  No. 2:08-CV-448, 2011 WL 5158285 (E.D. Tex. Aug. 11, 2011) .......................................... 10

**Other Authorities**

Fed. R. Civ. P. 37(c)(1) .................................................................................................................. 5

Local Patent Rule 3-3(a) ..................................................................................................... 1, 2, 8

I.  **INTRODUCTION**

Plaintiff The Chamberlain Group LLC ("Plaintiff" or "Chamberlain") respectfully moves the Court to strike (1) certain untimely expert opinions relating to alleged noninfringing alternatives, and (2) certain untimely evidence and expert opinions related to putative prior art systems, both set forth for the first time by Defendants' Overhead Door Corporation and GMI Holdings, Inc. ("Defendants" or "OHD") in the most recent expert reports of Dr. Steven B. Leeb. On the first issue, Chamberlain requested the details of any alleged noninfringing alternatives via interrogatory served on August 23, 2021. On the second issue, Defendants were required to disclose all putative prior art systems as part of their Local Patent Rule 3-3(a) disclosures on June 28, 2021. Now, nearly a year later, Defendants have advanced new theories in each respect. Defendants' late disclosure has robbed Chamberlain of the opportunity to test these theories by questioning Defendants' witnesses, inspecting the putative prior art systems, or otherwise seeking relevant discovery to rebut these new theories. In light of the prejudice to Chamberlain, and Defendants' inexcusable delay, this untimely evidence and expert opinions should be stricken.

II.  **FACTUAL BACKGROUND**

    A.  **Defendants Failed To Disclose During Fact Discovery Certain New Noninfringing Alternatives Theories Offered in Dr. Leeb's Report**

Chamberlain's Interrogatory No. 7 sought information relating to Defendants' alleged noninfringing alternatives, asking Defendants to "identify and describe each allegedly suitable noninfringing alternative, the facts Defendants contend show the suitable alternatives to the Accused Products, [and] the facts Defendants contend show it is noninfringing," among other things. Ex. A (Chamberlain's Second Interrog. to Defendants) at 8. Defendants did not provide a complete response until October 21, 2021, and at that point they merely pointed to non-accused products and unidentified hypothetical products said to be without the accused features, or which

1

did not meet certain limitations. Ex. B (Defendants' June 23, 2022 Resp. to Chamberlain's Second Interrogs.) at 26-27. For example, Defendants identified products sold by third-party Nortek found not to infringe claim 11 of the '404 patent in International Trade Commission Investigation No. 337-TA-1118. Defendants did not, however, identify their own eDCM products or products where their own iDCM module is mounted outside a head unit. Defendants also did not supplement their response to Interrogatory No. 7 to include either of these alleged alternative implementations. In fact, Defendants' only supplement was to incorporate certain deposition testimony "and the forthcoming expert reports of Dr. Leeb and Mr. Tate." *Id*. at 28.

Despite not disclosing Defendants' own eDCM products or products where their own iDCM module is mounted outside the head unit in response to Chamberlain's written discovery request, Dr. Leeb identified these new implementations as alleged noninfringing alternatives in his expert report (identifying them as "examples" of alternatives that are similar to the Nortek products). Ex. C (Leeb Second Noninfringement Rpt.) ¶¶ 324, 327-29.

### B. Defendants Failed to Disclose the Stealth and Phantom Garage Door Operators that Dr. Leeb Now Identifies as Alleged Prior Art Products

#### 1. Defendants Invalidity Contentions Identify Only a Pro Max Operator

In their Local Patent Rule 3-3(a) disclosures, Defendants identified as a prior art system: "Prior art Garage Door Operators systems made, used, sold, or otherwise invented by Genie/Overhead Door." Ex. D (June 28, 2021 Invalidity Contentions) at 59. This was charted in Defendants' invalidity contention charts as being a manual for a single Genie operator, the Pro Max operator. Ex. E (June 28, 2021 Invalidity Claim Chart Exhibit-C-07) at 1. When Defendants supplemented their invalidity contentions less than two months later, it was to disclose two more references—not to identify a Stealth or a Phantom operator. Defendants also did not amend their invalidity contentions thereafter to identify any system other than the Pro Max operator.

2

Despite relying on the Stealth and Phantom operators in Dr. Leeb's invalidity report, Defendants never sought leave to supplement their invalidity contentions to identify those alleged prior art systems. By contrast, after the Court vacated the jury's verdict regarding the '404 patent, Chamberlain sought leave to amend its own infringement contentions. That motion was denied.

### 2. Defendants Improperly Disclosed the Stealth and Phantom Operators for the First Time in Dr. Leeb's Opening Report

To Chamberlain's surprise, Dr. Leeb's second invalidity report, served on June 23, 2022, relies on alleged prior art garage door openers that are new to the case. Specifically, Dr. Leeb asserted that he had purchased two used Genie-brand garage door operators on eBay: the "Stealth" Model GPS 1200IC and the "Phantom" Model 777CD. Ex. F (Leeb Second Invalidity Report) ¶¶ 227-53. Chamberlain was offered no opportunity to inspect these operators or otherwise test the assertions about them in Dr. Leeb's report. During his deposition, Dr. Leeb conceded that he does not know whether the sellers were an individual or corporation, or whether they were even the original owners. Ex. G (Leeb 7-11-2022 Dep.) at 46:14-24; 47:6-10; 51:17-20. Dr. Leeb also does not know whether the garage door openers have been modified by the previous owner(s). Ex. G (Leeb 7-11-2022 Dep.) at 46:14-24; 47:6-10; 51:21-25. He admitted that the garage door openers that he received did not have all of their original parts, *id.* at 47:11-17, and that the eBay sellers did not provide user manuals for these operators, *id.* at 47:18-21.

Dr. Leeb also asserted that he had purchased on eBay several garage door opener accessories: two safety beam modules, an "Intellicode" wireless remote control, and a "New Old Stock" Intellicode remote. Ex. F (Leeb Second Invalidity Report) ¶¶ 233, 249. In his report, Dr. Leeb discusses testing that he performed on the systems followed by his opinion that the combination of the Stealth or Phantom operators with the UL 325 Standard would render the asserted claims of the '404 patent obvious. Ex. F (Leeb Second Invalidity Report) ¶¶ 227-253,

345-346, 355-56, 360-61, 370-71, 375-76, 381-82, 390-91, 395-96, 402-03, 407-08, 412-13, 416, 419, 428-29, 433-34, 438-39, 444-45, 452-53, 458-59, 463-64, 469-70, 477-78, 482-83, 487-88, 493-94.  Because the Stealth and Phantom operators were not previously disclosed to Chamberlain by Dr. Leeb or Defendants, this constitutes an entirely new invalidity opinion.

After Defendants served Dr. Leeb's opening report on invalidity, Chamberlain filed its reply in support of its motion to amend infringement contentions.  In the reply, Chamberlain put Defendants on notice that Chamberlain objected to Defendants' improper attempt to supplement its invalidity theories without seeking leave of the Court to do so, and without identifying those new theories during fact discovery.  Dkt. 419 at 1 n.1.  Defendants took no action in response.

### III.   LEGAL STANDARDS

"The purpose of interrogatories is not only to ascertain facts but also to determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved.  Discovery and pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2017 WL 5137401, at *14 (E.D. Tex. Nov. 4, 2017).  When a party fails to provide a complete answer to an interrogatory—contention or otherwise—during fact discovery, that failure may be used as a basis to strike an expert's opinion regarding the same.  *Id*. at *11-14.  A party cannot justify withholding of its theories or their factual underpinnings until expert reports; doing so would frustrate the purpose of discovery.  *Id*. at *13.

"Local Patent Rule 3-3 requires a party charged with infringement to identify each item of prior art that allegedly anticipates each asserted claim or renders it obvious." *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00055-JRG-RSP, 2017 WL 4619791, at *1 (E.D. Tex. Oct. 16, 2017).  "Like interrogatory responses, contentions narrow issues and set boundaries for trial." *Id.*

4

at *2. If a party fails to follow the local rules for disclosure, the Court "may impose any just sanction ... including refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." *Id.* at *1.

In deciding whether to impose sanctions to exclude expert testimony for violation of a discovery order, a party that fails to comply with Rule 26(e) bears the burden of showing its failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *iFly Holdings LLC v. Indoor Skydiving Germany GmbH*, Civ. No. 2:14-cv-01080-JRG-RSP, 2016 WL 3854070, at *1 (E.D. Tex. Mar. 22, 2016). The Fifth Circuit considers four factors in this evaluation: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Ericsson*, 2017 WL 5137401, at *13.[1]

### IV.  ARGUMENT

#### A.  Defendants' New Noninfringing Alternative Theories Should Be Stricken

Defendants' new noninfringing alternative theories should be stricken because every factor weighs in favor of exclusion. First, the prejudice to Chamberlain is substantial. Defendants' untimely disclosure deprived Chamberlain of the ability to thoroughly rebut Defendants' noninfringing alternative theories. Defendants supplemented their response to Interrogatory No. 7 once during the renewed discovery period (on June 23, 2022) but made no mention of their own eDCM product implementation or hypothetical products where their own iDCM module is mounted outside the head unit of one of their own operators. Because both an eDCM implementation and a product in which Defendants' iDCM is mounted outside their head unit were

---

[1] The Court may also strike an expert report under Fed. R. Civ. P. 16(f) for untimely disclosure pursuant to the case schedule, analysis of which includes similar factors. *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (striking portions of plaintiff's infringement expert report under Rule 16(f)).

never disclosed to Chamberlain as alleged non-infringing alternatives, Chamberlain did not question Defendants' fact witnesses about such implementations as alternatives to the accused integrated WiFi operators, or include a complete analysis of those alternatives in their technical and damages reports. Inexplicably, Defendants' Rule 30(b)(6) witness on the topic of noninfringing alternatives, Mr. Krupke, testified that he was "not aware of any other noninfringing alternatives to the '404 patent other than the eight enumerated items here in [Defendants' response to Interrogatory No. 7]." Ex. H (Krupke 6-02-2022 Dep.) at 82:17-83:2. Mr. Krupke was certainly familiar with OHD's own products and implementations, and yet he did not identify them when testifying on behalf of Defendants during his deposition.

Had Chamberlain understood that Defendants would propose those alternatives, Chamberlain would have questioned Mr. Krupke about, *e.g.*, the costs and time to change-over Defendants' current WiFi-integrated products and the alleged commercial acceptability of these alternatives. Chamberlain was deprived of that opportunity, and so the prejudice to Chamberlain is substantial. *Id*. at *14. This factor weighs strongly in favor of exclusion.

The three remaining factors also strongly weigh in favor of exclusion. A continuance would not cure the prejudice to Chamberlain but would rather delay trial to the benefit of Defendants. Trial is less than two months from today. A continuance would impose additional expense and delay on Chamberlain, and impede Chamberlain's ability to have these issues timely tried by a jury. *See, e.g.*, *iFly Holdings LLC v. Indoor Skydiving Germany GmbH*, 2:14-CV-01080-JRG, 2016 WL 3854070, at *3 (E.D. Tex. Mar. 22, 2016) (refusing to grant continuance three months before trial). Defendants also have no explanation for their failure to disclose these new theories as to additional, alleged noninfringing alternatives. The parties have now been through two fact discovery periods in this case. Defendants had every opportunity to disclose these

alternatives. In fact, Defendants recently supplemented their response to Interrogatory No. 7 and chose not to include these two alleged alternatives. Finally, the importance of the evidence is outweighed by the Defendants' delinquent disclosure. Defendants identified eight other allegedly noninfringing alternatives that Defendants could have pursued at trial. Ex. B at 26-27. Further, non-infringing alternatives are not nearly "as important as a defense that would result in a finding of no liability." *Ericsson*, 2017 WL 5137401, at \*13 (internal citation omitted).

Defendants' disclosure of the "Nortek products found not to infringe claim 11 of the '404 patent by the ITC" is irrelevant. As an initial matter, Mr. Krupke testified that he understood the Nortek products are "not commercially acceptable" because they "alert for unattended and attended operations." Ex. H (Krupke 6-02-2022 Dep.) at 91:6-15. As explained by Mr. Krupke, the OHD eDCM products and products where an iDCM is mounted outside the head unit would not be examples of the Nortek alternative. *Cf.* Ex. C (Leeb Noninfringement Rpt.) at ¶ 324 (generally arguing the opposite[2]). This inconsistency highlights the prejudice to Chamberlain resulting from Defendants' belated disclosure. Moreover, Defendants would not be similarly prejudiced if limited to only their disclosed "Nortek product" alternative because Dr. Leeb treats each of the "Nortek products," the "eDCM products," and the "products where an iDCM is mounted outside the overhead unit" separately (*see* paragraphs 325-29 of Dr. Leeb's Second Noninfringement Report), and it would be simple to strike everything other than his opinions as to the disclosed Nortek product alternative specifically.

---

[2] For example, Dr. Leeb opines the Nortek products do not infringe because the "wall station, not the head unit, received the WiFi signals." Ex. C (Leeb Noninfringement Rpt.) at ¶ 325. But Dr. Leeb's argument with respect to the products in which the iDCM is mounted outside the head unit is that the products could be modified "simply by removing the iDCM from the plastic casing of the overhead unit and extending a wire between the iDCM and GDO." *Id.* at ¶ 327.

### B. Defendants' New Invalidity Theories Relating to the Phantom and Stealth Operators Should be Stricken

The prejudice of Defendants' untimely disclosure of the Phantom and Stealth operators so close to trial, and the lack of a reasonable explanation for the failure to disclose, are dispositive. They warrant striking the relevant portions from Dr. Leeb's report.

#### 1. Defendants Failed To Amend Their Invalidity Contentions to Include the Stealth and Phantom Operators

As a preliminary matter, Defendants' failure to amend their invalidity contentions to include the Stealth and Phantom operators warrants striking this theory from Dr. Leeb's expert report. Local Patent Rule 3-3(a) requires Defendants to identify "[n]ot later than 35 days after the Initial Case Management Conference" "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." L. Pat. R. 3-3(a). Portions of expert reports that rely on prior art that was not disclosed in the invalidity contentions are regularly stricken in this District.[3] *See, e.g.*, *L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Ltd.*, No. 6:11CV599, 2013 WL 7937026, at *5 (E.D. Tex. Oct. 11, 2013).

Moreover, Defendants cannot argue that the Stealth and Phantom operators were included in their invalidity contentions simply because the invalidity contentions generically reference "Prior art Garage Door Operator systems made, used, sold, or otherwise invented by Genie/Overhead Door." Ex. D (June 28, 2021 Invalidity Contentions) at 59. The relevant invalidity claim chart accompanying Defendants' invalidity contentions only identifies information regarding a Pro Max operator manual. Ex. E (June 28, 2021 Invalidity Claim Chart

---

[3] The Court recently denied Chamberlain's motion for leave to amend its infringement contentions to add allegations against Defendants' Aladdin Connect System. For at least the same reasons, Defendants should be precluded from offering evidence or opining regarding their own Stealth and Phantom operator systems—particularly having done so without notice and without a corresponding motion for leave to supplement their invalidity contentions.

8

Exhibit-C-07) at 1. There is no mention of a Stealth or a Phantom operator in Defendants' invalidity contentions or in any of Dr. Leeb's prior expert reports. Nor did Dr. Leeb discuss the Stealth or Phantom operator at the first trial. The first mention of the Stealth and Phantom operators is in Dr. Leeb's expert report served on June 23, 2022, where they are listed as alleged prior art systems separate from the previously-disclosed Pro Max operator manual.

Further, the Stealth and Phantom operators could not be contemplated by Defendants' identification in June 2021 of the generic "Prior art Garage Door Operator systems" placeholder because Dr. Leeb did not possess the operators until a full year later. Although these operators are allegedly publically available, prior art systems, Dr. Leeb testified that he had not purchased the Stealth and Phantom operators or otherwise relied on them for his original set of reports in support of his March trial testimony. Ex. G (Leeb 7-11-2022 Dep.) at 53:4-7. Neither Dr. Leeb, nor Defendants claim to have been in possession of these new operators during the original discovery period, and neither claims to have performed any relevant testing of these new operators at the time of invalidity contentions. Simply put, these new operators cannot be said to have been fairly disclosed to Chamberlain prior to their inclusion in Dr. Leeb's June 2022 invalidity report.

### 2. The Prejudice of Defendants' Untimely Disclosure Is Substantial

Defendants' untimely disclosure deprives Chamberlain of the opportunity to thoroughly rebut Defendants' obviousness theories based on the Phantom and Stealth operator systems. Having no notice of the Phantom and Stealth operators, Chamberlain did not seek discovery regarding these products or testimony from OHD witnesses during the fact discovery period. For example, when Chamberlain deposed Messrs. Krupke and Rauscher, Chamberlain could have asked questions to undermine the authenticity, availability, and alleged operation of the Phantom and Stealth operator systems purchased by Dr. Leeb on eBay. However, because Chamberlain had no notice of the Phantom and Stealth operators, Chamberlain missed its opportunity during the

fact discovery period to explore critical issues regarding these alleged Genie prior art systems. This factor weighs strongly towards finding the untimely disclosure is not harmless to Chamberlain. Even if Defendants make some showing that the Phantom and Stealth operators are important, striking the untimely evidence and expert opinion is warranted to "adequately deter future violation of the Patent Rules and rectify the unfair prejudice to Plaintiff." *LML Pat. Corp. v. JPMorgan Chase & Co.*, No. 2:08-CV-448, 2011 WL 5158285, at *6 (E.D. Tex. Aug. 11, 2011).

### 3. Defendants Have No Explanation for Their Failure to Disclose Their own Phantom and Stealth Operators as Alleged Prior Art Systems

Defendants cannot claim to have only recently discovered the Phantom and Stealth openers. Indeed, the untimely disclosure is especially egregious considering ***Defendants allegedly manufactured the Phantom and Stealth operators***. While Defendants argued that "CGI was not diligent in accusing the eDCM products" because "CGI began testing OHD's eDCM products in 2015," Dkt. No. 409 at 1, 6, Defendants have ostensibly been aware of their own products for more than a decade. They have offered no justification as to why these products could not have been identified nearly a year ago at the invalidity contention disclosure deadline. This factor weighs strongly towards finding the untimely disclosure is not justified. *See ContentGuard Holdings, Inc. v. Amazon.com*, Inc., No. 2:13-CV-1112-JRG, 2015 WL 4944514, at *2 (E.D. Tex. Aug. 19, 2015), *aff'd sub nom. ContentGuard Holdings, Inc. v. Apple Inc.*, 701 F. App'x 957 (Fed. Cir. 2017) (excluding prior art references where defendants sought to add the references late in the litigation and had known about the references for over a year).

### V. CONCLUSION

For the foregoing reasons, Chamberlain respectfully requests that the Court strike the following paragraphs of Dr. Leeb's noninfringement report addressing the untimely evidence and opinions regarding the eDCM and modified iDCM noninfringing alternatives: ¶¶ 327-29 and the

last sentence of ¶ 324. Chamberlain also respectfully requests that the Court strike the following paragraphs of Dr. Leeb's June 23, 2022 invalidity report addressing the untimely evidence and opinions regarding the Stealth and Phantom operators:  ¶¶ 227-29, 232-53, 345-346, 355-56, 360-61, 370-71, 375-76, 381-82, 390-91, 395-96, 402-03, 407-08, 412-13, 416, 419, 428-29, 433-34, 438-39, 444-45, 452-53, 458-59, 463-64, 469-70, 477-78, 482-83, 487-88, 493-94.

Date:  July 13, 2022

Respectfully submitted,

By: */s/ Daniel R. Gopenko*
Ruffin B. Cordell
cordell@fr.com
Texas Bar Number 04820550
Daniel R. Gopenko
Virginia Bar Number 83932
gopenko@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
Kathryn Quisenberry
Texas Bar Number 24105639
quisenberry@fr.com
Karrie Wheatley
Texas Bar Number 24098605
wheatley@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Aamir A. Kazi
Georgia Bar Number 104235
kazi@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309
Telephone: (404) 724-2811

11

Betty H. Chen
Texas Bar Number 24056720
bchen@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: 650-839-5070

Scott M. Flanz (*Pro Hac Vice*)
New York Bar Number 5423801
flanz@fr.com
**FISH & RICHARDSON P.C.**
Times Square Tower, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257


**COUNSEL FOR PLAINTIFF THE CHAMBERLAIN GROUP LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via email on this 13th day of July 2022.

/s/ Daniel R. Gopenko

## CERTIFICATE OF AUTHORIZATION TO SEAL

Per CV-5(a)(7)(B), the court already has granted authorization to seal confidential documents, and Chamberlain is filing under seal pursuant to the protective order entered in the case.

/s/ Daniel R. Gopenko

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), I hereby certify that on July 12, 2022, counsel for Plaintiff The Chamberlain Group LLC met and conferred telephonically and over e-mail with counsel for Defendant Overhead Door Corporation and GMI Holdings Inc. concerning the subject of this motion. The parties have been unable to resolve their dispute.

/s/ Daniel R. Gopenko