**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 2:21-cv-0084-JRG |
| v. | § | |
| | § | |
| OVERHEAD DOOR CORPORATION and | § | |
| GMI HOLDINGS INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' OPPOSITION TO THE CHAMBERLAIN GROUP LLC'S RENEWED MOTION TO COMPEL DEFENDANTS' PROTECTED COMMUNICATIONS

## TABLE OF CONTENTS

I. ARGUMENT ..................................................................................................................3

    A. CGI's Pattern Of Incorrect Statements ....................................................3

    B. There Are No "Inconsistent" Statements From OHD To Resolve .........................4

    C. CGI's New Conspiracy Theory Is Baseless .............................................................4

    D. CGI's Additional Arguments On Waiver Fail ........................................................6

    E. CGI's Request For In-Camera Review Should Be Denied.....................................7

    F. CGI's Request For *Additional* Privilege Logging and In-Camera Review
       Should Also Be Denied..........................................................................................8

    G. CGI's Incredible Request For Further Sanctions Should Be Denied,
       Particularly In View Of Its Own Conduct During Its Renewed Motion .................9

II. CONCLUSION.............................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-CV-72 DF, 2009 WL 10679839 (E.D. Tex. Nov. 13, 2009),
   *order clarified*, 2010 WL 11541529 (E.D. Tex. Feb. 8, 2010) ................................................................. 7

*In re Itron, Inc.*,
   883 F.3d 553 (Fed. Cir. 2007) ................................................................................................... 6

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) ................................................................................................. 6

*Shields v. Sturm Ruger & Co.*,
   864 F.2d 379 (5th Cir. 1989) .................................................................................................... 7

CGI's "renewed" motion to compel asserts that OHD broadly waived privilege in view of: 1) the testimony of Mr. Steve Janas; 2) OHD's March 6 email to the Court; and 3) "chicanery" by OHD and its counsel.  D.I. 511 at *passim*.  But these are the same bases for waiver that CGI presented in its original motion to compel, as to which the Court already found ***no*** broad waiver of privilege.  *See* D.I. 458 at 1-2; 7-12-22 Hr. Tr. at 30:18-20 (finding no "blanket waiver of privilege.").  Thus, the Court should deny CGI's renewed motion as cumulative of its prior request.

Indeed, the only new basis CGI offers for the Court to deviate from its prior order is an entirely new conspiracy theory – that OHD revealed the combo board project to the Court and CGI only after CGI "inadvertently purchased a 'combo board' version of an accused product as a demonstrative to use at trial."  Ex. 1 (CGI's originally filed renewed motion to compel, D.I. 505 (now stricken)) at 4.  To support this new conspiracy theory, CGI's *originally filed* renewed motion claimed that "[a]fter Chamberlain's counsel received Mr. Callahan's email, it inspected the Model 3155 D garage door opener it had purchased ***and found that it contained a 'combo board' configuratio***n."  *Id*. (emphasis added).  As evidence for this incredible new revelation, CGI included the declaration of one of its counsel of record, who represented to the Court that "Ahead of the March 7, 2022 trial in this case, counsel for Chamberlain purchased a 3155 D Genie garage door opener.  Upon further inspection of this garage door opener, counsel for Chamberlain ***determined it was a combo board configuration***."  Ex. 2 (Original Quisenberry Decl., D.I. 505-1 (now stricken)) at ¶ 10 (emphasis added).

Surprised by these new representations, and confused why CGI had not previously raised them, counsel for OHD immediately emailed CGI's counsel asking to confirm the serial number of the product CGI claimed was the combo board version it had in its possession on March 6, and to further explain why it waited more than five months to make this accusation and provide proof

for its claim.  Ex. 3 (9:05 am PST email from B. Davis).  Within 90 minutes, CGI responded that the sworn statements in its pleading were "***inadvertent error.***"  Ex. 4 (10:30 am PST email from K. Quisenberry).  Minutes after that, CGI filed a "corrected" version of its motion and declaration with ***completely opposite*** representations as its first filings, instead now asserting that they inspected the model 3155 D on their exhibit list and determined it *was **not*** a combo board version. *See* D.I. 511 at 4; D.I. 511-1 at ¶ 10.  The redline shows the difference between CGI's original and "corrected" claims:

March 6), Chamberlain believes the "combo board" product was only revealed to the Court and Chamberlain because Chamberlain inadvertently purchased a **model with** "combo board" ~~version of an accused product~~**versions** as a demonstrative to use at trial. Chamberlain's counsel

Callahan's email to the Court followed shortly thereafter. *Id.*; Dkt. 348-1. After Chamberlain's counsel received Mr. Callahan's email, it inspected the Model 3155 D garage door opener it had purchased and found that it ~~contained~~**did not contain** a "combo board" configuration. Ex. A (Declaration of K. Quisenberry) at ¶ 10. **However, other subsequently purchased Model 3155 D GDOs did contain combo board configurations.** *Id*. When asked whether, prior to his trial

10.     Ahead of the March 7, 2022 trial in this case, counsel for Chamberlain purchased a 3155 D Genie garage door opener. Upon further inspection of this garage door opener, counsel for Chamberlain determined it was **not** a combo board configuration**, but other subsequently purchased Model 3155 D GDOs did contain combo board configurations**.

While CGI asserts that this was all "inadvertent error," it strains credulity that CGI could accidently get wrong the ***central premise*** of its renewed motion – that OHD "came clean" on March 6 only because CGI purchased a unit with the combo board configuration.  Indeed, the edited paragraphs only carry any weight if the now withdrawn false allegations had been true –

i.e., it is of zero relevance that CGI *later* bought Model 3155D GDOs that included combo boards.

CGI's "corrected" filing raises a number of troubling questions, including: 1) how such "inadvertent error" could have passed what likely included internal review by CGI's counsel of record;  2) how, after receiving OHD's email, CGI was able to verify the statement was a mistake, respond confirming the mistake, and file a corrected briefing and declaration all in less than two hours; and 3) whether CGI would have maintained these representations if OHD had not asked for the serial number of the alleged March 6 "combo board" product?

Regardless of the answers to these questions, the central basis for CGI's conspiracy theory is wrong, and its "corrected" filing offers the Court no reason to deviate from its previous order finding no waiver.

## I.    ARGUMENT

### A.    CGI's Pattern Of Incorrect Statements

As an initial matter, CGI's latest "inadvertent error" is not its first,  CGI's opening sanctions briefing having incorrectly asserted that "Chamberlain has scoured the discovery produced by OHD in this case and can find no mention of this design."  *See* D.I. 348 at 2.  But OHD pointed out, it had produced more than 1,200 documents related to the project, as well as source code.  *See* D.I. 364 at 2-8.  And while CGI argued that the combo board project would change the entire litigation landscape and eviscerate OHD's defenses (D.I. 348 at 2-3), CGI finally admits what OHD argued all along – the combo board products function in the same way as OHD's two-board designs, including two separate *pre-determined paths*.  *See* D.I. 441 (OHD's MSJ of non-infringement) at 4.  While OHD is not seeking to re-litigate the sanctions motion, the Court already granted CGI *substantial* relief based on CGI's misrepresentations, and it entitled to no more.

## B.      There Are No "Inconsistent" Statements From OHD To Resolve

CGI opens its renewed motion with what it purports to be a telling of OHD's "inconsistent statements to the Court," arguing that: 1) OHD's privilege log showing first disclosure of the combo board project in November of 2021 confirms OHD lied to the Court about first learning of the project on March 6; and 2) OHD lied to the Court about finding out about sales of the combo board project from Mr. Steve Janas.  D.I. 511 at 1-2. But CGI misrepresents the facts.

First, CGI misrepresents OHD's March 6 email to the Court.  OHD's March 6 email did *not* state it lacked prior knowledge of the combo board project's existence – only that it just became aware of *sales* of products including the component.  *See* D.I. 403 at 1-4.  OHD's counsel arrived at Court the next morning with two binders full of material related to the combo board project that OHD long ago produced to CGI.  *Id*.  And OHD's opposition briefing to CGI's sanctions motion detailed the volume and diversity of materials relating to the combo board project that OHD's counsel collected, reviewed, and produced during the prior discovery period.  *See* D.I. 364 at 2-7. OHD's privilege log showing disclosure of the combo board to counsel in November of 2021 as part of ongoing document collections adds nothing to these facts.

Second, CGI quibbles over the fact that OHD represented that it found out about sales of the combo board project during witness preparation of Mr. Janas, claiming that, in reality Mr. Janas did not initially know whether there were sales and needed to call Mr. Mike Kridel to confirm.  D.I. 511 at 2.  But that is irrelevant.  There is no dispute that counsel for OHD found out about the *sales* of the combo board project for the first time during the witness preparation of Mr. Janas, and thus counsel's representations to the Court were entirely accurate.

## C.      CGI's New Conspiracy Theory Is Baseless

Following its mischaracterizations of OHD's prior representations, CGI presents an entirely new conspiracy theory as primary support for its renewed motion to compel:  That OHD

*and its counsel* "intentionally withheld discovery on the 'combo board' product because it showed the weakness of their noninfringement argument."  D.I. 511 at 3.  As discussed above, CGI originally supported this new conspiracy theory with a declaration that was admittedly wrong on the key fact underlying its renewed motion; its claim that it inspected the model 3155 on its exhibit list and found it to be a combo board variant.  *Supra* at 1-3.  Having withdrawn those incorrect claims, CGI has no support for its new theory.

For example, CGI's allegation that OHD intentionally withheld discovery on the combo board because it showed the weakness of OHD's non-infringement contentions is demonstrably wrong in view of CGI's retrial infringement contentions – which now admit that, like OHD's two-board products, the combo board products include two separate *pre-determined paths* (one for local signals, and one for remote signals).  *See* D.I. 441 at 4.  Thus, neither the two-board, nor the combo board versions of the Accused Products have the capability of satisfying the "determination" limitations of the asserted claims.  *Id.* at 13-18.  Indeed, CGI's expert treats the combo board products the same as the two-board products for his infringement analysis, referring to them collectively as the "Accused Products."  *See, e.g.*, *id*. at 4-8.  Thus, the combo board did not change the infringement analysis in this case.

The remaining allegations related to CGI's new conspiracy theory similarly fail.  First, CGI misrepresents the facts when it argues that OHD's production of "37,493 documents" during renewed discovery proves OHD withheld substantial materials relating to the combo board project.  *See* D.I. 511 at 3.  While OHD had already produced source code and technical materials on the combo board project during prior discovery, OHD agreed to provide *expansive* email discovery during the retrial discovery process.  Hyde Decl. ¶ 7.  And since email discovery has a separate set of procedures according to the Court's ESI Order (D.I. 56), none of these emails would have been

produced during the prior discovery period absent service of formal requests by CGI identifying the relevant custodians and search terms (*id*. at 2-4).  Nor did CGI make use of this voluminous retrial production, as CGI's expert reports and retrial exhibit list include virtually none of the new emails produced.

Second, while CGI argues that the Court should find waiver of privilege in view of OHD's purported "chicanery," CGI raised this same legally erroneous argument in its prior motion.  *See*, *e.g.*, D.I. 421-1 at 2-4 (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374-75 (Fed. Cir. 2007)).  And the Court already disagreed.  *See* D.I. 458 at 1-2; *see also* 7-12-22 Hr. Tr. at 30:18-20 (finding no "blanket waiver of privilege.").  As discussed previously, CGI's reliance on *In re Seagate* is inapposite, as it dealt with the application of privilege in shielding opinions of counsel in circumstances where the privilege is used as both sword and shield.  497 F.3d at 1372.  Courts have thus only applied the *In re Seagate LLC* decision to extend waiver to trial counsel in unique circumstances affecting the integrity of opinions of counsel, such as where the same attorneys who prepared the opinion of counsel or prosecuted the patent-in-suit are also acting as trial counsel.  *See* D.I. 433 (discussing cases applying *In re Seagate*).  As discussed in OHD's prior opposition briefing, waiver of the shield of privilege is only appropriate if a party is attempting to use privilege as a sword.  *See* D.I. 403 at 5 (citing *In re Itron, Inc.*, 883 F.3d 553, 560 (Fed. Cir. 2007)).

### D.    CGI's Additional Arguments On Waiver Fail

CGI further argues that waiver is appropriate due to: 1) Mr. Janas's deposition testimony about his communications with counsel; and 2) OHD's purported inconsistent representations to the Court.  But there is nothing inconsistent about Mr. Janas's deposition testimony and the representations OHD previous made to the Court.  *Supra* at 4.  Regardless, Mr. Janas testifying that he needed to confirm whether any sales occurred, and further that he never discussed the combo board project with counsel prior to March 6, cannot possibly support the broad waiver CGI

6

seeks, including waiver of privilege for communications prior to March 6 (for which Mr. Janas had no knowledge), or unrelated communications with any other individuals *after* Mr. Janas spoke with counsel. And as discussed above, *supra* at 4, CGI's telling of "inconsistent" statements by OHD misrepresent the facts. CGI is not entitled to OHD's protected communications to test the veracity of its own mischaracterizations.

Nor does CGI's cited case law compel a different result. First, while CGI relies on *Shields v. Sturm Ruger & Co*. for the presumption that "privilege is waived 'when the attorney discloses the information to the court voluntarily'" (D.I. 511 at 8), there the Court was discussing waiver of work-product protections*, not attorney-client privilege* (864 F.2d 379, 382 (5th Cir. 1989)), and this Court has already ruled that there was no broad waiver (*supra* at 1). And while CGI relies on *Flashmark Techs. LLC v. GTECH Corp*. for the presumption that waiver occurs where there is 'disclosure of any significant portion of a confidential communication,'" there the Court recognized that this waiver applied to prevent misuse of privilege. No. 2:06-CV-205, 2007 WL 9724333, at *3 (E.D. Tex. Aug. 1, 2007). As discussed above, *supra* at 5-6, OHD did not gain any tactical advantage from its disclosure of the combo board to the Court, and thus waiver does not apply. *DataTreasury Corp. v. Wells Fargo & Co*., No. 2:06-CV-72 DF, 2009 WL 10679839, at *2 (E.D. Tex. Nov. 13, 2009), *order clarified*, 2010 WL 11541529 (E.D. Tex. Feb. 8, 2010) (citations omitted).

### E.     CGI's Request For In-Camera Review Should Be Denied

Given that CGI's arguments on waiver are legally and factually erroneous, CGI's request that OHD submit its privileged communications for *in-camera* inspection should be denied. Indeed, CGI presents only two arguments supporting its request for *in-camera* review: 1) that OHD's privilege log showing "proper efforts to collect documents" does not comport with the large number of documents produced during the retrial; and 2) some of the privilege entries

mention both discussion of damages and the combo board, and therefore OHD *must* have known the combo board project was relevant to this ligation's damages analysis in advance of the March 6 disclosure.  *See* D.I. 511 at 5-6.  Neither argument provides a legal basis for waiver.

First, as discussed above, *supra* at 5-6, the large production of documents during the retrial process related to additional email discovery OHD provided in an abundance of caution in view of the Court's prior sanctions order.  Indeed, much of the relevant technical materials and source code had already been produced to CGI during the prior discovery period.  *See* D.I. 364 at 2-8.

Second, CGI's inferences that OHD's privilege log confirms OHD previously knew the combo board was relevant to damages in this case are baseless.  Without disclosing the privileged contents of the communications, OHD represents that these communications included discussion of potential non-infringing alternatives, and discussed the combo board only in relation to how potential code changes may be implemented in OHD's future products.  Hyde Decl. ¶ 8.  CGI's *mere speculation* as to some nefarious intent does not provide a legal basis for the Court to find waiver, or justify asking the Court to divert resources to perform an *in-camera* review of materials which are well within the scope of attorney-client privilege and work-product protections.

## F.    CGI's Request For *Additional* Privilege Logging and In-Camera Review Should Also Be Denied

Despite previously arguing that it was only narrowly seeking communications related to OHD's first disclosure of the combo board project to counsel (D.I. 427 at 4), CGI's renewed motion now asks the Court for *additional* privilege logging of materials created on March 6, as well as submission of these materials for *in-camera* review.  D.I. 511 at 6-8.  But while CGI argues that the Court's prior order mandates such logging, the Court's order states that OHD was only to produce a privilege log for any protected communications "responsive to Interrogatory No. 6" (D.I. 458 at 2), and the plain text of Interrogatory No. 6 only asks OHD to "[i]dentify the date of

Your first awareness of each of the Newly Disclosed Accused Products and your first disclosure of the Newly Disclosed Accused Products to Latham & Watkins LLP." D.I. 396-1.  CGI is thus wrong that OHD was required to also log March 6 communications.

Next, CGI's argues that it needs these materials to flush out the inconsistencies between whether counsel for OHD learned about sales of the combo board component from Mr. Janas, or during a subsequent phone call with Mr. Janas and Mr. Kridel.  D.I. 511 at 6-8.  But this is no inconsistency at all – counsel for OHD learned of sales of the component during witness preparation of Mr. Janas (*supra* at 4), and CGI should not be allowed to keep expanding its request for OHD's privileged communications just because its original fishing expedition failed.

### G.    CGI's Incredible Request For Further Sanctions Should Be Denied, Particularly In View Of Its Own Conduct During Its Renewed Motion

Despite CGI  basing its renewed motion on a now withdrawn factually erroneous declaration, CGI concludes its renewed motion with a request that the Court further sanction *Defendants*, including requesting a jury instruction that OHD committed intentional litigation misconduct.  D.I. 511 at 9.  As discussed above, CGI's allegations of litigation misconduct are baseless, and its request for *further* sanctions is baseless.  Moreover, CGI's request goes directly against the parties Agreed MIL No. 13, which precludes any argument, testimony, or reference to "the March 2022 trial in this case, any purported discovery violations, or the Court's sanctions order." D.I. 499 at 3.  CGI's request for further sanctions should be denied.

## II.    CONCLUSION

Because the central bases of CGI's renewed motion is based on now withdrawn factual misrepresentations, and further because CGI's arguments regarding waiver are legally erroneous, OHD respectfully requests that the Court deny CGI's renewed motion to compel.

Dated:  August 25, 2022

Respectfully submitted,

*/s/ David. K. Callahan*

David K. Callahan
IL Bar No. 6206671
Kenneth G. Schuler
IL Bar No. 6226036
Marc N. Zubick
IL Bar No. 6308239
Raj Patel
IL Bar No. 6321274
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Fax: (312) 993-9767
kenneth.schuler@lw.com
david.callahan@lw.com
marc.zubick@lw.com
raj.patel@lw.com

S. Giri Pathmanaban
TX Bar No. 24074865
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 328-4600
Fax: (650) 463-2600
giri.pathmanaban@lw.com

Susan Y. Tull
D.C. Bar No. 992644
Gabriel K. Bell
D.C. Bar No. 987112
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Fax: (202) 637-2201
susan.tull@lw.com
gabriel.bell@lw.com

Stephen A. Maniscalco
NY Bar No. 5387063
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas

10

New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
stephen.maniscalco@lw.com

Bradley A. Hyde
CA Bar No. 301145
**LATHAM & WATKINS LLP**
650 Town Center Dr., 20th Floor
Costa Mesa, CA 92843
Telephone: (714) 755-8041
Fax: (714) 755-8290
bradley.hyde@lw.com

Michael C. Smith
TX Bar No. 18650410
**SCHEEF & STONE, LLP**
113 East Austin Street
Marshall, TX 75670
Telephone: (903) 938-8900
michael.smith@solidcounsel.com

E. Leon Carter
TX Bar No. 03914300
Scott W. Breedlove
TX Bar No. 00790361
Nathan Cox
TX Bar No. 24105751
**CARTER ARNETT PLLC**
8150 N. Central Expy, 5th Floor
Dallas, TX 75206
Telephone (214) 550-8188
Fax: (214) 550-8185
lcarter@carterarnett.com
sbreedlove@carterarnett.com
ncox@carterarnett.com

**ATTORNEYS FOR DEFENDANTS
OVERHEAD DOOR CORPORATION
AND GMI HOLDINGS INC.**

11

## CERTIFICATE OF SERVICE

I certify that on August 25, 2022 all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF System according to the applicable Federal Rules of Civil Procedure.

*/s/ David K. Callahan*
David K. Callahan