**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| THE CHAMBERLAIN GROUP LLC, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00084-JRG |
| | § | |
| OVERHEAD DOOR CORPORATION, GMI | § | |
| HOLDINGS INC., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM ORDER AND OPINION**

Before the Court is the Motion for a Finding That This is an "Exceptional Case" Under 35 U.S.C. § 285 and Attorneys' Fees (the "Motion") filed by Plaintiff The Chamberlain Group LLC ("Plaintiff" or "Chamberlain"). (Dkt. No. 620.) Having considered the Motion, and for the reasons stated herein, the Court finds that it should be **GRANTED-IN-PART**.

## I.     BACKGROUND

Chamberlain filed a Complaint on March 10, 2021, alleging infringement by Defendants Overhead Door Corporation and GMI Holdings Inc. (collectively, "Defendants or "OHD") of U.S. Patent Nos. 8,587,404 (the "'404 patent"); 9,644,416 (the "'416 patent"); 7,852,212 (the "'212 patent"); and 8,144,011 (the "'011 patent") (collectively, the "Original Asserted Patents"). (Dkt. No. 1.) Chamberlain accused of infringement certain garage door openers sold by Defendants (the "Original Accused Products"). (*See generally id.*)

As part of pre-trial motion practice, the Court heard argument on Defendants' Motion for Summary Judgment of Non-Infringement of the '404 patent (the "'404 MSJ") (Dkt. No. 164) on February 14, 2022. (*See* Dkt. Nos. 322, 323.) The '404 patent teaches selectively providing a notification that a movable barrier (*e.g.*, a garage door) is about to move. (Dkt. No. 164 at 1.) Since

this decision may depend on where the signal to open or close the garage door originated from—*i.e.*, whether the operation is "attended" or "unattended"—the '404 patent further teaches providing a notification for unattended closes (*e.g.*, where the command comes from a user closing the door using her smart phone out of sight of the barrier) while not providing a notification for attended closes (*e.g.*, where the command comes from a "clicker" typically kept in a car). (*Id.*) Each asserted claim, either expressly or in view of the Court's Claim Construction Order, requires "determining" whether to close a movable barrier in combination with operating an "imminent motion notification" (*i.e.*, an alarm), based on some aspect of a transmitted signal. (*Id.* at 2–3.) The Original Accused Products can be operated by a wall console, a radio frequency ("RF") remote, or a mobile device application. (*Id.* at 3–4.) The overhead unit of the Original Accused Products contains a motor and motor control circuit board (together, the garage door opener, or "GDO") and an integrated door control module (the "iDCM"). (*Id.*)

In connection with its '404 Motion for Summary Judgment ("'404 MSJ") (Dkt. No. 157), Defendants argued that the GDO and the iDCM of the Original Accused Products are separate and independent—both structurally and functionally—and thus the Original Accused Products do not contain a *single* "processor" which performs all the functions recited in the claims of the '404 patent. (*See* Dkt. No. 164 at 6 n.3 ("[T]he GDO and iDCM are separate printed circuit boards and function independently.").) Defendants represented that all the Original Accused Products are configured and operate in this manner. (*Id.* at 8–9.)

The Court granted the '404 MSJ with respect to Claims 4, 6–9, and 16–20 of the '404 patent, finding Chamberlain had failed to identify a factual dispute as to whether the Original Accused Products make any determination regarding whether to alarm or not alarm in combination with opening the garage door. (Dkt. No. 331 at 3.) The Court denied the '404 MSJ with respect to

Claim 11, however, finding that Chamberlain's infringement theory presented a genuine issue of material fact appropriately decided by a jury. (*Id.*) Specifically, the Court found that Claim 11's recitation of a "processor"—which was not construed by the Court and was governed by its plain and ordinary meaning—created a material question of fact as to whether some processing or logic in the head unit of the Original Accused Products performs the "determining" step. (Dkt. No. 322 at 107:5–108:5.) As a result of its ruling, the Court instructed the parties that, of the claims asserted in the '404 patent, only Claim 11 would be tried to the jury. (*Id.* at 107:25–108:5.)

A jury trial was set to begin on March 7, 2022. (Dkt. No. 349.) The evening before, on March 6, 2022, counsel for Defendants sent the following email to Chamberlain and the Court:

> In connection with preparing a witness for trial who arrived in Marshall today, we learned for the first time that Overhead Door introduced a new garage door opener model, and beginning sometime in December 2021 shipped several thousand units of this model. This was the first time this information was communicated to Latham & Watkins, Scheef & Stone or Carter Arnett. We do not have any detailed technical information about this product, but understand that it operates in the same way as the products at issue in this case, *except that the GDO processor and iDCM processor (separate processors) exist on the same mechanical board*.

(Dkt. No. 348-1 at 1) (emphasis added). Chamberlain filed a sanctions motion (the "Motion for Sanctions") a few hours after receiving this information. (Dkt. Nos. 348, 348-1.) In the Motion for Sanctions, Chamberlain argued that Defendants' "willful concealment of evidence until less than 24 hours before jury selection irreparably change[d] the landscape of this case," and sought an order: (1) finding infringement of the '404 patent; (2) setting a Show Cause Hearing; and (3) allowing Chamberlain to explain Defendants' litigation misconduct to the jury. (*Id.* at 3.)

The Court held a conference with the parties on the morning of March 7, 2022, before jury selection, to discuss the Motion for Sanctions and the appropriate course forward. The Court informed the parties that it intended to carry the Motion for Sanctions until after completion of the jury trial. The Court also instructed the parties not to refer in any way to the newly disclosed

"single board" products before the jury. Instead, the trial would be limited to the previously disclosed Original Accused Products—all of which use a separate board for the GDO and iDCM components. The jury trial proceeded as instructed by the Court (the "2022 Trial"), and on March 11, 2022, the jury returned a verdict finding that Defendants did not infringe any claim of the Original Asserted Patents and that Claim 11 of the '404 patent and Claim 1 of the '011 patent were invalid. (Dkt. No. 354.)

Following the completion of the 2022 Trial, the Court took up Chamberlain's Motion for Sanctions. (*See* Dkt. Nos. 348, 371, 383.) The Court found that the 2022 Trial "would have turned out differently had Chamberlain been able to develop testimony and argument regarding the single board design and commercialization of the same." (Dkt. No. 386 at 12.) Particularly, the Court determined that Chamberlain was prevented from attacking Defendants' non-infringement defenses because it was unaware of the single board products until literally the eve of trial. (*Id.*) Chamberlain was further "precluded from exploring the technical functionality of the single board products and developing the same through its experts' reports." (*Id.*) Indeed, the Court found that the mere existence of the single board products—combined with Defendants' argument that those products 'operate[] in the same way as the products at issue in [the 2022 Trial]' (Dkt. No. 348-1 at 1)—[was] probative of Chamberlain's excluded DOE argument that the accused two-board design is substantially equivalent to the single board design." (*Id.*; *see also* Dkt. No. 364-1 ¶ 5, Declaration of Brent Rauscher, engineer at Overhead Door, stating that the source code for the single board operates materially the same way as the two-board configuration.)

The Court awarded Chamberlain's requested fees and costs—in the amount of $1,134,578.74—and also found that a new trial was warranted on all issues related to the '404 patent and as to invalidity of Claim 1 of the '011 patent. (Dkt. No. 386 at 15.) The Court vacated

the '404 MSJ and verdict against Chamberlain in the 2022 Trial as to the '404 patent (as to both infringement and invalidity) and as to invalidity of Claim 1 of the '011 patent. (*Id*.) Chamberlain was permitted to re-try all its previously asserted claims stemming from the '404 patent—not just Claim 11. (*Id*.)

A new trial on the '404 patent commenced on January 23, 2023 (the "2023 Trial").[1, 2] (*See, e.g*., Dkt. Nos. 595, 596, 597, 598, 602, 610, 611, 612, 614, 615, 616.) On January 27, 2023, the jury returned a verdict finding that Defendants infringed Claims 4 and 20 of the '404 patent, that Defendants' infringement was not willful, and that the Asserted Claims are not invalid as obvious or for improper inventorship. (Dkt. No. 599.) The jury awarded $43.4 million in damages, $2.7 million of which represents a running royalty. (*Id*.)

Chamberlain filed the instant Motion on March 2, 2023, urging the Court to find this case exceptional and award fees and costs associated with the "second round of discovery, dispositive motion briefing, and trial" from April 1, 2022 onward. (Dkt. No. 620 at 1, 3.) In opposition, OHD contends that Chamberlain has "already obtained exceptional relief" related to the combo board product and that any further "'unreasonable' litigation positions Chamberlain identifies as warranting an exceptional case finding were merely hard fought legal and factual disputes which were supported by substantial record evidence." (Dkt. No. 630 at 1.) OHD also argues that "[b]asing an enhancement or award of attorneys' fees on misconduct that has previously been sanctioned would be unnecessarily cumulative and inequitable." (*Id*. at 3 (citing *Mass Engineered Design, Inc. v. Ergotron, Inc*., 633 F. Supp. 2d 361, 391–91 (E.D. Tex. 2009)).)

---

[1] On January 18, 2023, Chamberlain notified the Court via email that it intended to proceed to trial only on Claims 4 and 20 of the '404 patent (the "Asserted Claims") at the 2023 Trial. Defendants narrowed their invalidity theories accordingly on January 21, 2023, which was also communicated to the Court via email.

[2] The products accused in the 2023 Trial were identified in Chamberlain's Supplemental Practicing Products Disclosure for the '404 patent (Dkt. No. 401-4), which included products that were not accused in the 2022 Trial, *i.e.*, "the 'combo' board and two-board accused WiFi-integrated GDO products." (Dkt. No. 401 at 1; *see also* Dkt. No. 452 at 41:3–5; Dkt. No. 529) (the "Accused Products").

## II.     LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc*., 572 U.S. 545, 554 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane*, 572 U.S. at 554. "[F]or example, . . . district courts [may] consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554, n.6 (citation omitted). Additional "factors relevant to the inquiry include the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." *Comput. Docking Station Corp. v. Dell, Inc*., 519 F.3d 1366, 1379 (Fed. Cir. 2008). Similarly, "[i]f the patentee prolongs litigation in bad faith, an exceptional finding may be warranted." *Id*. A party's unreasonable conduct need not be independently sanctionable to warrant a finding of exceptionality. *Octane*, 572 U.S. at 555.

Ultimately, "[t]he matter of attorney fees rests, of course, within the sound discretion of the trial judge, who is in the best position to determine whether, ... [and to what extent], they should be awarded." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984).

## III.     DISCUSSION

Chamberlain argues that "[n]ot only did OHD's actions require the parties to conduct fact and expert discovery, dispositive motion briefing, and trial twice, [OHD] litigated the case in a way that ensured the process was as problematic as possible." (Dkt. No. 620 at 2.) Chamberlain additionally argues that OHD took "unreasonable litigation positions" and engaged in further "vexatious conduct" with regard to representativeness of the Combo Board vis-à-vis the Original Accused Products as well as in "relitigating issues resolved at the first trial." (*Id*.) According to Chamberlain, "OHD made material misrepresentations about the operation of its products by arguing that its products did not infringe because the iDCM and the GDO components were located on separate printed circuit boards." (*Id*. at 13.)

OHD contends that Chamberlain has "already obtained exceptional relief related to the combo board, including a retrial on all '404 patent issues, and $1,134,578.74 in fees and costs." (Dkt. No. 630 at 1.) OHD also argues that the retrial "confirmed that OHD consistently told this Court the truth: [] that the combo board functions in the same way as OHD's two-board designs for the purposes of evaluating infringement; and [] that OHD never tried to hide the combo board from Chamberlain." (*Id*.) Indeed, OHD contends "there would have been no basis for a retrial at all had Chamberlain admitted from the start what OHD claimed all along (and what Chamberlain itself emphasized at trial): that the combo board did not change the infringement analysis." (*Id*.) Finally, OHD urges that any "unreasonable" tactics identified by Chamberlain misrepresent the record and the parties' positions, including "Chamberlain's own misconduct." (*Id*. at 1, 2.)

### a.  Discovery

Chamberlain contends that leading up to the 2023 Trial, OHD "continued to conceal facts surrounding its disclosure of the Combo Board product, including information about OHD's disclosure of the Combo Board product to counsel, why it withheld the Combo Board product in the first place, and the reason for its ultimate decision to disclose the Combo Board product to the Court and Chamberlain on the eve of trial." (Dkt. No. 620 at 1.) Chamberlain contends that the information it has been able to gather on the subject "came only after three motions to compel, two hearings, and countless hours of meet and confers and email correspondence." (*Id*.)

OHD contends that the "majority" of the purported "litigation misconduct" identified in Chamberlain's Motion relates to OHD's disclosure of the combo board products, for which this Court "already granted Chamberlain significant relief." (Dkt. No. 630 at 3.) Moreover, OHD argues that "even had Chamberlain not already received significant relief on this issue," many of Chamberlain's accusations against OHD "misrepresent[] the record." (*Id*.)

### i. Discrepancy in Documents

In response to Chamberlain's Motion for Sanctions, OHD "repeatedly insisted" that it had produced documents relating to the combo board and that "it was Chamberlain's fault for failing to decipher the meaning of the phrase 'combo board' in OHD's internal documents." (Dkt. No. 620 at 2 (citing Dkt. No. 364 at 1).) Chamberlain argues that in the renewed discovery period, OHD produced "over 37,000 documents" relating to the Combo Board product compared to the "roughly 1,200 documents" that OHD produced prior to the 2022 Trial. (Dkt. No. 620 at 2.) Chamberlain contends that such discrepancy "shows that OHD [did] not actually search for, or instead intentionally withheld, documents relating to the Combo Board product." (*Id*.)

OHD contends that Chamberlain's argument misrepresents the record, as the "vast majority of OHD's retrial production were emails, which carry a separate set of procedures for production

8

… and thus would not have been produced during the prior discovery period absent formal requests by Chamberlain identifying the relevant custodians and search terms." (Dkt. No. 630 at 3) (citations omitted). OHD further argues that prior to the Court's Sanctions Order, OHD had "already produced source code for the combo board project, along with software specifications, photographs of the hardware, schematics, and a host of other technical and business planning documents related to the project." (*Id.*) OHD contends that such evidence "confirmed the truth of OHD's March 6, 2022 statement to the Court that the combo board operates the same as the dual board for the purposes of analyzing infringement." (*Id.*)

### ii.  The Specification

One of Chamberlain's "key" pieces of infringement evidence in the 2023 Trial was the "Software Functional Specification for Combo WiFi Boards" (the "Specification"). (Dkt. No. 620 at 3; *see also* JTX-4.) The Specification lists the '404 patent as a "Reference" for the accused combo board products. (Dkt. No. 620 at 3.) Chamberlain alleges that, although OHD created the document in April 2020, OHD "withheld it during the original discovery period." (*Id.*) Chamberlain contends that the "importance of [the Specification] cannot be understated." (*Id.*)[3] Chamberlain urges that Overhead Door produced a prior version of this document during the original fact discovery period but "notably withheld the version listing the '404 patent." (*Id.*) Chamberlain contends that the Specification "indisputably should have been disclosed during the original fact discovery period." (*Id.* at 13 (citing *LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d

---

[3] During the 2023 Trial, Chamberlain referenced the Specification in opening and closing statements and questioned OHD's witnesses about the document. (Dkt. No. 620 at 3 (citing Dkt. No. 610 at 146:5–24; Dkt. No. 612 at 126:17–128:18; Dkt. No. 614 at 295:23–299:8; Dkt. No. 615 at 73:8–20).) Though quoting above Chamberlain's actual statement, the Court considers it to have been intended to convey that the importance of the Specification cannot be *overstated*—not understated.

444, 462 (W.D.N.C. 2014) (finding case exceptional where defendant did not produce key documents until court issued second order compelling production)).)

OHD contends that Chamberlain's claim that OHD withheld relevant documents is "belied by the fact that it relied on virtually none of these documents" during the 2023 Trial. (Dkt. No. 630 at 3.)[4] As to the Specification, which Chamberlain identified as a "key" piece of evidence at the 2023 Trial, OHD contends that Chamberlain "mischaracterizes" how the document was used. (*Id*. at 3–4). Specifically:

> This [S]pecification was *not* used to show OHD's products practiced the asserted claims; Chamberlain never argued any description of the product contained in that document proved infringement. Instead, Chamberlain used this document to argue that OHD knew of the '404 patent and allegedly copied the '404 patent, without ever trying to map the product description contained therein to the '404 patent.

(*Id*. at 4) (emphasis in original). Indeed, OHD contends that Dr. Villasenor, Chamberlain's infringement expert, "never relied on the document in his testimony on infringement." (*Id*.) OHD notes that the jury heard the evidence regarding the Specification "and rejected Chamberlain's contentions that OHD willfully infringed, refuting Chamberlain's argument that this was a 'key piece of evidence.'" (*Id*. (citing Dkt. No. 615 at 128:15–20).)

### iii.   Discovery Into Failure to Disclose Combo Board

"Following the Court's Sanctions Order and reopening of discovery, Chamberlain sought discovery into when OHD itself first became aware of the Combo Board product, and when it first disclosed the existence of the Combo Board product to its counsel." (Dkt. No. 620 at 4 (citing Dkt. No. 396).) In response to Chamberlain's interrogatory on the topic, OHD "provided information about the date on which it first disclosed the sale of the Combo Board product to counsel, but not the existence of the product." (Dkt. No. 620 at 4 (citing Dkt. No. 396-1).) Chamberlain contends

---

[4] OHD argues that there is "no dispute that Chamberlain had a full and fair opportunity to rely on all retrial discovery during the subsequent trial—*and chose to rely on virtually none of it*. (Dkt. No. 630 at 4, n.1) (emphasis in original).

that OHD also "refused" to provide responsive documents to Chamberlain's requests, claiming privilege but failing to produce a privilege log. (Dkt. No. 620 at 4 (citing Dkt. No. 396 at 2–3).)

In response to Chamberlain's motion to compel, the Court ordered OHD to supplement its interrogatory response and to produce a privilege log listing the withheld documents. (Dkt. No. 458.) Chamberlain contends that OHD's response to the interrogatory, as well as its privilege log entries, "revealed that OHD's counsel was not forthright in its representations to the Court" about its awareness of the Combo Board product and why the product was ultimately disclosed by OHD. (Dkt. No. 620 at 4.) Following two renewed motions to compel and an *in camera* review by the Court, it was revealed that OHD first discussed the Combo Board product with counsel on July 26, 2021—which Chamberlain contends contrasts with OHD's counsel's email to the Court which represented that March 6, 2022 was the first time they were learning that "Overhead Door introduced a garage door opener model and beginning sometime in December 2021 shipped several thousand units of this model." (*Id*. at 4–6.)

Chamberlain contends that OHD's supplemented privilege log contained entries from November 23, 2021—*i.e.*, before OHD served its damages report—indicating that OHD and its counsel "were discussing the Combo Board in the context of damages." (Dkt. No. 620 at 6.) Chamberlain argues that this makes "clear [that OHD] understood its relevance and yet continued to withhold its existence." (*Id*.)

Chamberlain argues that even after the renewed discovery period, "neither OHD nor its counsel have ever provided a full, truthful explanation" as to why OHD's counsel revealed the Combo Board product to the Court. (Dkt. No. 620 at 6.) As an example, in OHD's March 6, 2022 email, OHD represented to the Court that it learned of the Combo Board product while preparing

a witness (Mr. Janas) for trial. (*Id*.) At his deposition before the 2023 Trial, Chamberlain contends

that Mr. Janas disputed the accuracy of that statement. (*Id*. (citing Dkt. No. 511-6 at 108:2–6).)

During the renewed discovery period, Chamberlain theorized that OHD's counsel revealed

the combo board product to the Court because Chamberlain purchased two Genie GDOs to use as

demonstratives at trial, both of which were sold with a combo board configuration beginning in

December 2021. (Dkt. No. 620 at 6–7.) In other words, Chamberlain believes that upon disclosure

of the serial numbers of the intended demonstratives, OHD "revealed the Combo Board out of

concern that Chamberlain might raise the issue first." (*Id*. at 7.) OHD dismissed Chamberlain's

conjecture as a "conspiracy theory," but Chamberlain contends that renewed discovery "confirm[s]

this is the only logical explanation for the timing [of] the disclosure." (*Id*.) In particular,

Chamberlain cites to an email thread between Mr. Janas and Mr. Mike Kridel with the serial

numbers of the intended demonstratives that, when forwarded to OHD's counsel after disclosure

to the Court, stated that "neither are combo board units." (*Id*.) According to Chamberlain, in his

2023 deposition, Mr. Janas confirmed that he understood the serial number email to relate to

OHD's counsel being "made aware of sales of the combo board in some products" and to make

sure the Court was aware of the same. (*Id*. at 7–8.)

Finally, as it relates to OHD's conduct during the renewed discovery period, Chamberlain

contends that counsel for OHD, Mr. Hyde, "threatened" Chamberlain's counsel, Ms. Quisenberry,

by implying that she perjured herself through a filing error—previously addressed by the

Court—regarding "whether the garage door openers Chamberlain purchased ahead of the March

2022 trial contained Combo Board or dual-board configurations." (Dkt. No. 620 at 9 (citing Dkt.

No. 541; Dkt. No. 553 at 56:9–11).)

OHD responds that Chamberlain's conduct during the renewed discovery period was a "fishing expedition." (Dkt. No. 630 at 5–9.) Indeed, OHD argues that such "expedition" was unsuccessful and that Chamberlain's Motion "omits key facts," including that:

> 1) The Court rejected Chamberlain's broad claims of waiver; 2) Chamberlain was forced to refile its renewed motion to compel after being caught misstating key facts; 3) the Court reviewed all of OHD's pre-March 6 combo board documents *in-camera* and ordered none of them produced; and 4) the handful of documents that were produced off of OHD's privilege log actually confirmed OHD's good faith.

(*Id*. at 5.) OHD focuses largely on Chamberlain's second motion to compel, which set forth a "theory of 'chicanery,' asserting that OHD's counsel personally conspired to conceal the combo board project, and only revealed the combo board project to the Court because Chamberlain 'inadvertently purchased a 'combo board' version of an accused product as a demonstrative to use at trial.'" (*Id*. (citing Dkt. No. 541-2; Dkt. No. 505).) OHD notes that Chamberlain supported its "new conspiracy theory" with a sworn declaration claiming that after Chamberlain received the March 6, 2022 email, it inspected the garage door opener it purchased and "found that it contained a 'combo board' configuration." (Dkt. No. 630 at 5 (citing Dkt. No. 531-2).) OHD argues that it promptly asked Chamberlain's counsel to confirm the serial number of said garage door opener and, in response, Chamberlain claimed that "the sworn statements in its pleading were 'inadvertent error'" and subsequently filed a "corrected" motion to compel with a declaration that stated that Chamberlain inspected the purchased garage door opener "and determined it was *not* a combo board version." (Dkt. No. 630 at 6 (citing Dkt. No. 511 at 4; Dkt. No. 511-1).)

Chamberlain contends this discrepancy was a mistake made as a result of Chamberlain's counsel confusing two of the garage door openers it purchased. (Dkt. No. 620 at 9.) However, OHD contends that Chamberlain did "not even try" to explain how such "mistake" "could have escaped both the declarant and every other attorney who reviewed the motion and declaration."

13

(Dkt. No. 630 at 11–12.) Indeed, OHD contends that the change in the submitted motions to compel and accompanying declarations—*i.e.*, from "contained a 'combo board' configuration" to "did not contain a 'combo board' configuration"—changed the "central factual premise" for Chamberlain's declaration and brief. (*Id.* at 12 (citing Dkt. No. 541 at 2).) OHD argues that Chamberlain "offers no credible evidence that its sworn declaration was a 'mistake.'" (Dkt. No. 630 at 11.)

Further, in response to the various competing motions to compel filed by the parties, the Court reviewed both parties' disputed privileged materials *in camera*. (Dkt. No. 554.) OHD notes that the Court "allowed Chamberlain to hand-pick documents on OHD's privilege log for its *in-camera* review" and ordered none of the pre-March 6 documents produced, which OHD contends "refut[es] Chamberlain's contentions that these earlier documents would evidence prior concealment of the combo board, or that OHD's counsel had engaged in any 'chicanery.'" (Dkt. No. 630 at 6 (citing Dkt. No. 565).) OHD also argues that the documents that *were* ordered produced "confirmed" OHD's good faith by evidencing OHD's "contemporaneous understanding of the facts relating to the combo board issue" and "confirm[ing that] OHD had been telling the truth all along with respect to the disclosure of the combo board product." (Dkt. No. 630 at 6–7 (citing Dkt. No. 579-2).)

OHD contends that Chamberlain's third motion to compel, which sought another round of depositions of OHD's senior leadership team, were meant to "vet out [Chamberlain's] conspiracy theory that OHD only disclosed the combo board project to the Court because it had been 'caught' by Chamberlain's inadvertent purchasing of combo board models prior to trial." (Dkt. No. 630 at 7.) Instead, OHD contends that the resultant depositions of Genie's CEO Mr. Kridel and Genie's VP of Sales, Mr. Janas, confirmed that senior OHD leadership was not aware of the combo board project "being discussed in relation to any litigation with Chamberlain" and that OHD's outside

counsel "found out about the limited sales of the combo board component for the first time on March 6." (*Id.* at 7–8 (citing Dkt. No. 630-6; Dkt. No. 630-7).)

OHD further argues that OHD's March 6 email "did not state it lacked prior knowledge of the combo board project's existence—only that it just became aware of sales of products including the components." (Dkt. No. 630 at 9.)[5] OHD contends that the "volume and diversity of materials relating to the combo board project that OHD's counsel collected, reviewed, and produced during the prior discovery period" were "consistent" with the materials produced, and the representations made, by OHD during the renewed discovery period. (*Id.*)

OHD first addresses Chamberlain's accusations that entries OHD's privilege log "discuss[ed] the combo board project in the context of damages in November of 2021." (Dkt. No. 630 at 10.) OHD contends that "these communications related to potential non-infringing alternatives and discussed the combo board only in relation to how potential code changes may be implemented in OHD's future products." (*Id.*) OHD also notes that OHD previously made this argument in relation to Chamberlain's motion to compel and the "Court ordered none of [those documents] produced." (*Id.* (citing Dkt. No. 541-1; Dkt. No. 565).)

Second, as it relates to Mr. Janas's deposition, OHD contends that Chamberlain "selectively quotes" his testimony to assert that counsel for OHD lied to the Court about the date of first knowledge of the combo board. (Dkt. No. 630 at 10.) OHD contends that "Mr. Janas did not dispute that counsel for OHD first became aware of combo board sales during his witness preparation session, he just *further* testified that he did not initially know whether there were sales and needed to call Mr. Mike Kridel to confirm." (*Id.* (citing Dkt. No. 511-5 at 106:1–7; 108:2–6).)

---

[5] OHD also notes that its counsel "notified the Court of the limited combo board sales…before receiving confirmation that the demonstratives on Chamberlain's exhibit list were not combo board variants," further confirming OHD's "good faith" disclosure to the Court. (Dkt. No. 630 at 11.)

According to OHD, Mr. Janas's testimony, "[i]f anything," confirmed that "even OHD's senior leadership was unaware of the limited sales of combo board components." (Dkt. No. 630 at 10.)

In sum, OHD argued that "[a]t best, these discovery fights were hotly contested legal and factual disputes between the parties, none of which can support an exceptional case finding against OHD." (Dkt. No. 630 at 8.) OHD also argued that a party should not be "subjected to an exceptional case finding for rightly defending against overbroad motions to compel." (*Id.* (citing *Acorn Semi, LLC v. Samsung Elecs. Co.*, 2022 WL 489947, at *4 (E.D. Tex. Feb. 17, 2022)).)

### b. Representativeness

"From the outset of OHD's disclosure that it failed to disclose the Combo Board product during discovery, OHD represented that the Combo Board product 'operates the same way as the [Dual Board] products at issue in this case.'" (Dkt. No. 620 at 10.) Despite such repeated representations, Chamberlain contends that "OHD refused to agree to representativeness among the products, resulting in unnecessary motion practice and disputes." (*Id.*) As an example, OHD moved to strike Chamberlain's damages report because it failed to "split out its damages theories between products." (*Id.* (citing Dkt. No. 454).) OHD also "insisted on including separate infringement and damages questions for each product type" and "maintained this position through the majority" of the 2023 Trial. (Dkt. No. 620 at 10, 14 (citing *Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410, 414–15 (E.D. Tex. 2019) (finding case exceptional where defendant maintained unreasonable litigation positions throughout the case, only to withdraw them just before adjudication)).)

OHD contends that "Chamberlain's own conduct in this litigation precludes an exceptional case finding against OHD." (Dkt. No. 630 at 13.) OHD argues that it is "now clear that Chamberlain's [M]otion for [S]anctions was based on the false claim that the combo board was

not, as OHD's March 6 letter claimed, substantially the same as the dual board." (*Id*.) OHD urges that "while Chamberlain argued that the combo board project would change the entire litigation landscape and eviscerate OHD's defenses," Chamberlain "now admits what OHD argued all along: that the combo board products operate in materially the same way for analyzing infringement as OHD's two-board designs." (*Id*. (citing Dkt. No. 348 at 2–3; Dkt. No. 613 at 87:21–88:6).) Accordingly, OHD contends that it never "refused to stipulate to representativeness" because it "argued all along that the combo board operated in materially the same way as its two-board products for the purposes of infringement analysis." (Dkt. No. 630 at 14.)

### c.  Litigation Conduct

Chamberlain argues that OHD has taken "objectively unreasonable" positions during this litigation that have caused unnecessary expenditure of time and resources on briefing and oral arguments, specifically as it relates to marking and *limine* practice. (Dkt. No. 620 at 11.)

OHD contends that after using the late disclosure of the combo board to "obtain *vacatur* and a 'do-over' at trial," OHD argues that "Chamberlain abandoned the claim that the combo board was different and moved for (and obtained) judgment as a matter of law that the two product versions operate in materially the same way." (Dkt. No. 630 at 13 (citing Dkt. No. 615 at 250:5–24; 263:25–264:3).)

In view of Chamberlain's "own conduct," OHD contends that Chamberlain is not entitled to an exceptional case finding because "there would have been no basis for a retrial in this case had Chamberlain admitted from the start what OHD stated all along: that the combo board did not change the infringement analysis." (Dkt. No. 630 at 14.)

### i.  Marking

During the 2022 Trial, "OHD agreed with Chamberlain that Chamberlain offered sufficient evidence for finding as a matter of law that Chamberlain complied with the requirements of 35 U.S.C. § 287." (Dkt. No. 620 at 11.) Despite this, on June 3, 2022, "OHD sent a letter to Chamberlain, purporting to 'notify Plaintiff of certain unmarked patented articles.'" (*Id*. (citing Dkt. No. 446-2).) OHD raised the same issue in its damages report. (Dkt. No. 620 at 11.) In response, Chamberlain informed OHD on July 11, 2022 that it would move for summary judgment "seeking a finding it was entitled to pre-suit damages based on compliance with the marking statute." (*Id*.) OHD indicated that it opposed such motion, but never filed a response on the record. (*Id*.) Chamberlain's motion was granted as agreed. (*Id*. (citing Dkt. No. 589 at 59:7–14; 59:25–60:4; Dkt. No. 592 at 2).)

OHD contends that Chamberlain's argument—that it was unreasonable for OHD to assert a marking defense in the 2023 Trial because OHD did not oppose Chamberlain's motion for judgment as a matter of law of pre-suit marking at the 2022 Trial—ignores the fact that "the Court ordered a retrial on 'all' '404 patent issues." (Dkt. No. 630 at 14.) OHD argued at the 2022 Trial that Chamberlain failed to meet its burden to prove its compliance with § 287 but later dropped its marking defense. (*Id*.) OHD contends that reasserting the defense in the retrial was proper and not a basis for an exceptional case finding. (*Id*. at 14–15.)

### ii.  Motions *in Limine*

Based on statements made by OHD's counsel during the 2022 Trial, Chamberlain filed motions *in limine* ("MILs") for the 2023 Trial "seeking to preclude reference to the jurors, Court, or citizens constituting the jury pool as 'yahoos' or other derogatory references" and "seeking to preclude references to Chamberlain as a 'patent factory' or its case as 'fake news.'" (Dkt. No. 620 at 11 (citing Dkt. No. 500).) Chamberlain represents that it was "shocked by OHD's refusal to

agree to these motions, given the clearly inappropriate nature of the comments." (Dkt. No. 620 at 11–12.) Subsequently, the Court issued its Standard *Limine* Orders and ordered the parties to re-file no more than five additional MILs per side. (Dkt. No. 560.) The Court's Standard *Limine* Orders preclude disparaging remarks, references to political beliefs, and use of pejorative terms. (*See* Dkt. No. 562.) Despite this, OHD still opposed Chamberlain's "yahoo" and "patent factory" MILs. (Dkt. No. 620 at 12.)

In response, OHD argues that it was "not seeking to disparage the jury pool, but was instead seeking to fairly represent the objective weakness of Chamberlain's case" and also argues that there was a "plethora of evidence justifying OHD's characterization of Chamberlain as a 'Patent Factory.'" (Dkt. No. 630 at 15.) Further, despite opposing the MILs during pretrial proceedings, OHD contends that its compliance with those MILs at the 2023 Trial "warrants against an exceptional case finding." (*Id.* (citing *Ultravision Techs., LLC v. GoVision, LLC*, 2021 WL 5154156, at *7 (E.D. Tex. Sep. 24, 2021)).)

### d. Reasonableness

Chamberlain seeks $3,129,302.04 in attorneys' fees, $767,659.52 in expert fees, and $97,310.42 in trial costs between April 1, 2022 and the end of the 2023 Trial. (Dkt. No. 620 at 15.) Chamberlain confirms that it does not seek any fees or costs associated with the 2022 Trial, as those were awarded as part of the Court's Sanctions Order. (*Id.* (citing Dkt. No. 376 at 5, 16).) Moreover, for the 2023 Trial, Chamberlain seeks only "costs for food, lodging, trial space, and equipment." (Dkt. No. 620 at 15.) Chamberlain urges that its request is reasonable and notes that this Court has already found Chamberlain's counsel's fees and costs reasonable. (*Id.*)

OHD does not respond to the amount of Chamberlain's requested fees and costs but instead argues that because OHD's positions were "reasonable and supported by the record evidence," any

fee award in this case would be nothing more than a "penalty for failure to win a patent infringement suit." (Dkt. No. 630 at 15 (citing *Octane*, 572 U.S. at 548).)

## IV.    ANALYSIS

Section 285 permits the Court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." As there is no dispute that Chamberlain is the prevailing party in this case, (*see* Dkt. No. 600), the Court proceeds to consider "whether [this] case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1757.

The Court has already sanctioned OHD for the conduct that preceded the 2022 Trial. (*See* Dkt. No. 386.) Further, much of the conduct Chamberlain complains of would not give rise to an exceptional case status if considered alone and separately but the Court finds that taken together within the totality of the circumstances, this case stands out and is exceptional. When the Court ordered a retrial on all issues related to the '404 patent, it could not have foreseen the significant, contentious motion practice that would have continued to flow from the conduct that led to the retrial. As an example, the discovery disputes regarding the knowledge of OHD and its counsel of the combo board product were both voluminous and unnecessarily combative. The parties and the Court were forced to dedicate substantial resources in preparing and deciding three separate motions to compel, including conducting two hearings on the same.

Particularly egregious in the Court's view is OHD's withholding of the Specification despite this Court's broad document production rules. While OHD quibbles with how Chamberlain used the Specification at trial, OHD does not—and cannot—dispute that the Specification was not timely produced in its most relevant form—*i.e.*, the version that lists the '404 patent as a reference.

Such violates this Court's Discovery Order, which requires prompt production of "*all documents*, electronically stored information, and tangible things in the possession, custody, or control of the party that are *relevant to the pleaded claims or defenses involved in this action*." (Dkt. No. 46) (emphasis added).

OHD's allegation of "perjury" by Chamberlain's counsel is also troubling to the Court. Chamberlain and its counsel repeatedly stated, under penalty of perjury, that the discrepancy between its declarations was an honest mistake. (See, e.g., Dkt. No. 553 at 56:9–11; Dkt. No. 620 at 9.) That OHD's counsel raised the same during a deposition of an OHD witness and questioned the witness about the truthfulness of Chamberlain's counsel was entirely inappropriate and unwarranted.

Accordingly, the Court finds this case exceptional. However, the Court is mindful that it has previously sanctioned OHD's conduct by ordering the 2023 Trial and awarding fees to Chamberlain. Therefore, in this instance, the Court awards 25 percent of Chamberlain's requested fees and costs. Chamberlain seeks $3,129,302.04 in attorneys' fees, $767,659.52 in expert fees, and $97,310.42 in trial costs between April 1, 2022 and the end of the 2023 Trial. (Dkt. No. 620 at 15.) Such amounts to $3,994,271.98 in requested fees and costs, 25 percent of which amounts to $998,567.99.

## V.      CONCLUSION

For the reasons stated above, Chamberlain's Motion (Dkt. No. 620) should be **GRANTED-IN-PART**. The Court hereby orders that Chamberlain recover from OHD the amount of $998,567.99 in attorneys' fees, expert fees, and trial costs. Such award will be reflected in this Court's Final Judgment, entered subsequent hereto.

**So ORDERED and SIGNED this 4th day of April, 2023.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE